UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| VIRGINIA ELIZONDO, <br><br>*Plaintiff*, <br><br>v. <br><br>SPRING BRANCH INDEPENDENT SCHOOL DISTRICT, CHRIS GONZALEZ, PAM GOODSON, KAREN PECK, JOSEF D. KLAM, MINDA CAESAR, CHRIS EARNEST, J. CARTER BREED, in their official capacity as members of the Board of Trustees of Spring Branch ISD. <br><br>*Defendants*. | CIVIL ACTION NO. _____ <br><br>Complaint for Declaratory Judgment and Injunctive Relief |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

### I. INTRODUCTION

1. No person of color has ever served on the Board of Trustees of Spring Branch Independent School District (SBISD, "Spring Branch", or "the District").

2. Section 2 of the Voting Rights Act, 52 U.S.C. Section 10301 *et seq*. (Section 2 of the Voting Rights Act of 1965, as amended) prohibits enforcement of any voting qualification, prerequisite to voting, standard, practice, or procedure that results in the denial or abridgment of the right to vote on account of race, color, or language minority status.

3. This suit is brought under the Voting Rights Act to challenge the "at-large" election system used by Spring Branch ISD to elect its Trustees, which has deprived tens of thousands of minority voters in SBISD of their voting rights guaranteed by law.

### II. PARTIES

4. The Plaintiff is Dr. Virginia Elizondo. Dr. Elizondo, a registered voter in SBISD who lives in a minority community that is sufficiently compact and numerous to elect a candidate

1

who is the choice of the minority community in SBISD should single-member districts be created.

5. Dr. Elizondo has consistently voted in SBISD elections since moving to the District. She has masters and doctorate degrees in Education Leadership, with a special focus on bilingual education. She is a fluent Spanish speaker who has taught thousands of English Language Learners to read and write English. She has been an active and vocal member of the SBISD volunteer community, serving on several leadership committees, including LEAD SBISD and Visioning for the Future. Both committees play important roles in developing plans for the future education of SBISD students.

6. Dr. Elizondo also is an SBISD parent. Her son is a Spring Branch student.

7. As a teacher, parent, and community leader. Dr. Elizondo has advocated for the needs of District students on the autism spectrum.

8. Dr. Elizondo has run for trustee of SBISD twice, unsuccessfully, because of the at-large system of electing SBISD school board trustees.

9. Dr. Elizondo has standing to seek relief in this suit as a minority District voter who is experiencing the injury of vote dilution because of the SBISD at-large system for electing members of its Board of Trustees.

10. Defendant Spring Branch ISD is a Texas public school district. It is a political and geographical subdivision of the State of Texas encompassing portions of the City of Houston and the Memorial Villages. It may be served through its Superintendent, at 955 Campbell Rd., Houston, Texas 77024.

11. Defendant Chris Gonzalez is the President of the Board of Trustees of Spring Branch ISD and was elected at-large from "Position 2". She is an Anglo Texan. She is sued in her official capacity only as President of the Board of Trustees for SBISD. She may be served at 955 Campbell Rd., Houston, Texas 77024.

12. Defendant Pam Goodson is the Vice President of the Board of Trustees of Spring Branch ISD and was elected at-large from "Position 6". She is an Anglo Texan. She is sued in her official capacity only as Vice President of the Board of Trustees for SBISD. She may be served at 955 Campbell Rd., Houston, Texas 77024.

13. Defendant Karen Peck is the Secretary of the Board of Trustees of Spring Branch ISD and was elected at-large from "Position 7". She is an Anglo Texan . She is sued in her official capacity only as Secretary of the Board of Trustees for SBISD. She may be served at 955 Campbell Rd., Houston, Texas 77024.

14. Defendant Josef D. Klam is the Trustee of "Position 1" for SBISD. He is a third generation Anglo resident of Spring Branch., He is sued in his official capacity only as a Trustee of SBISD for Position 1. He may be served at 955 Campbell Rd., Houston, Texas 77024.

15. Defendant Minda Caesar is the Trustee of "Position 3" for SBISD. She is an Anglo Texan. She is sued in her official capacity only as a Trustees for SBISD. She may be served at 955 Campbell Rd., Houston, Texas 77024.

16. Defendant Chris Earnest is the Trustee of "Position 4" for SBISD. He is an Anglo Texan.  He is sued in his official capacity only as a Trustee for SBISD. He may be served at 955 Campbell Rd., Houston, Texas 77024.

### III.   JURISDICTION AND VENUE

17.   Plaintiffs' complaint arises under the United States Constitution and federal statutes. This Court has jurisdiction over this action under 28 U.S.C. §§1331, 1343(a)(3) & (4) and 42 U.S.C. §§ 1983, 1988.

18. Venue is proper in the Southern District of Texas. 28 U.S.C. §1391(b)(1) because all defendants reside in this district.

19. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

IV.   FACTS

   A.  The District

20. SBISD is a political subdivision of the State of Texas that has a growing population of Latino, African American, and Asian students. It also has a growing population of minority voters.

21. The District was founded in 1946 and contains portions of the City of Houston and the Memorial villages. Spring Branch ISD was organized as an independent school district in the spring of 1946. Located in Western Harris County, SBISD is comprised of parts of the City of Houston and six Memorial villages.

22. SBISD reached its peak enrollment of approximately 41,000 in 1976, with the District opening campuses at the rate of nearly one per year. In the 1980's, District enrollment declined by 41%, In recent years the District's enrollment has increased to a consistent level of 35,000+ students. This enrollment increase was fueled by Latino families moving into SBISD so that their children could have the opportunity to realize the American Dream that an excellent education makes possible.

23. Spring Branch is a high functioning school district that represents the best of Texas and American public school education. Its classrooms and teachers provide an excellent education to its students. District classrooms, teachers, and administrators reflect the vast diversity of Houston, Harris County, and our Country.

24. Unfortunately, the reality of the District's diverse citizen and student populations has not yet been reflected in the elected leadership of the SBISD Board of Trustees. That fact is both regrettable and remediable.

25. In the 2010 Census, SBISD was a minority-majority District, with a total population of 178,140. The Latino population was 78,534 or 44.08% of the total. The Anglo population totaled 78,588 or 44.1%. The African American population was 4.3% of the total.

4

26. District population statistics remain similar today. According to the 2014-2018 American Community Survey (ACS), a population survey published by the U.S. Census bureau, Spring Branch has 183,846 people. Anglo Texans are estimated to be 43% of SBISD's population and Latinos are estimated to be approximately 42% of the total population.

27. The student population demographics in SBISD are very different. According to the Texas Education Agency, SBISD has 33,288 students enrolled for the 2020-2021 school year, of which 19,335 are Latino or Hispanic, 58% of the student population. By contrast, white students make up 27% of the total.

28. SBISD's student body therefore is overwhelmingly majority minority.

29. SBISD's total population is likewise majority non-Anglo.

30. According to the 2014-2018 ACS, Latinos make up roughly 24.9% of the Citizen Voting Age Population (CVAP) of SBISD. Anglos make up 60.2%.

**B. SBISD's Election System**

31. The Spring Branch ISD Board of Trustees is composed of seven members elected on an at-large basis, in non-partisan contests, by all voters within the District's geographic boundaries.

32. Members of the Board serve staggered three-year terms and are elected annually on the May uniform election date.

33. In 2021, Positions 3 & 4 were up for election. Trustee Positions 5, 6, and 7 will be on the Spring Branch ISD ballot on May 7, 2022.

34. To be eligible to be a candidate for Trustee, a person must be a U.S. Citizen, 18 years of age or older, not mentally incapacitated, not finally convicted or felony, a Texas resident continuously for 12 months, resident in the District for 6 months, and registered to vote.

35. Texas law does not mandate that school board trustees be elected districtwide, as

SBISD has historically done. To the contrary, Texas law expressly authorizes school districts to adopt plans calling for the election of trustees from single-member districts, following a few statutory parameters. *See* TEX. EDUC. CODE §11.052.

36. No person of color has ever been elected or served as a Trustee for SBISD.

### C.  SBISD's Latino Community

37. The Latino or Hispanic population of the SBISD is sufficiently large and geographically compact to constitute a majority of the voting-age population in two single-member districts under an illustrative seven-district plan.

### D.  Racially-Polarized Elections

38. Texas School board elections are marked by a pattern of racially-polarized voting.

39. Voting in SBISD school board elections likewise is racially-polarized.

40. Latinos are politically cohesive in SBISD elections and vote as a bloc for Latino-preferred candidates.

41. African Americans are politically cohesive in SBISD elections and vote as a bloc for African American-preferred candidates.

42. Minorities like Latinos, African Americans, and Asian Americans are politically cohesive together in SBISD elections and vote as bloc to elect minority-preferred candidates.

43. In Texas and in SBISD, Anglos (White Non-Hispanics) vote sufficiently as a bloc to enable them, in the absence of special circumstances (e.g. single-member districts), to defeat the minority voters' preferred candidates of choice.

44. Throughout SBISD as a whole, Anglos vote as a politically cohesive bloc against minority-preferred candidates.

45. In SBISD, minority voting power is not protected through the creation of minority-majority Trustee districts.

### E. Totality of Circumstances

#### i. History of Discrimination

46. Texas has a despicable and regrettable history of racism.

47. SBISD's neighborhoods also evidence a troubling history of residential segregation and racial conflict.

48. Throughout the 1970s, Harris County public schools were racially segregated. In Texas public schools today, school populations continue generally to reflect the racial segregation of the past.

49. The same is true in SBISD, where significant patterns of residential segregation exist and there have been instances of schools being defaced with hate speech graffiti and spray-painted racial slurs.

50. Latinos, African Americans, and Asian Americans have each historically suffered from official discrimination affecting their right to vote.

#### ii. Racial Polarization

51. In the State of Texas, Harris County, and SBISD, Anglos support different candidates than either Latinos or African Americans.

52. Elections in SBISD are deeply racially polarized.

53. Throughout Texas, federal courts have found that Texas elections bear the taint of racial polarization. "Regardless of methodology, … experts [have] found that general election and primary election voting in Texas is highly polarized along racial-ethnic lines." *Perez, et al v. Abbott, et al.,* No. 5:11-cv-00360-OLG-JES-XR at ¶ 690 (W.D. Texas March 10, 2017) (Fact Findings General and Plan C185).

54. "Hispanic voters are politically cohesive in general and primary elections. African-American voters are politically cohesive in general and primary elections. With the exception of

Travis County, Anglo voters are politically cohesive in general elections in support of the Republican candidate, regardless of the candidate's race." *Id.* at ¶¶ 703, 704, and 707.

55. Federal courts have recently found that elections in Harris County also evidence strong signs of racial polarization. "[T]he Latino community does not merely vote straight party ticket, instead they are bloc voting Latino surnamed candidates…..Moreover, when Anglos have the opportunity to choose between a Latino Republican candidate or an Anglo Republican candidate, they tend to choose the Anglo Republican candidate. Thus, the evidence shows that race is playing a factor in the decisions of both Anglos and Latinos in their selection of candidates." *Rodriguez v. Harris Cnty.,* 964 F. Supp. 2d 686, 777 (S.D. Tex. 2013).

  iii. **Existence of Any Electoral Mechanisms that Enhance the Opportunity for Minority Vote Dilution**

56. In the past decade, the State of Texas has erected several barriers to minority participation which enhance minority vote dilution.

57. In 2011, Texas enacted one of the most stringent voter qualification laws of the United States. Voter ID was the law of the land until enjoined because of violations of Section 2 of the Voting Rights Act and the 14th Amendment. Initially, Texas also was found to have intentionally racially discriminated against minority voters by the enactment and enforcement of its Voter ID law.

58. Also in 2011, Texas enacted several redistricting plans, many of which violated the 14th Amendment and Section 2 of the Voting Rights Act. A three-judge panel found that in adopting those plans, Texas had intentionally discriminated against minority voters.

59. In 2019, Texas instituted a voter purge of its voting rolls, supposedly targeting non-citizen voters. However, Texas was enjoined before enacting its purge because Texas had in actuality haphazardly removed more citizens than non-citizens from its rolls. Texas settled these claims before a court could make a determination of the legality of Texas' intent.

60. Harris County, itself, has had a troubling history of voter disfranchisement. "In 2008, a number of Latino residents reported that the Harris County Tax Assessor's Office, which is responsible for voter registration, was not timely processing the voter registration applications of Latino citizens….The Harris County Tax Assessor–Collector and Registrar of Voters, Paul Bettencourt, used his position in 2008 to slow the dramatic rise in voter registrations that year among younger, mostly minority, applicants." *Rodriguez v. Harris Cnty.*, 964 F. Supp. 2d 686, 781 (S.D. Tex. 2013).

61. And, in the recent past, Harris County also failed to provide bi-lingual voting materials that would assist non-English-speaking voters.

62. SBISD's at-large method of electing school board trustees is yet another practice and procedure that has had the result of impairing Latino and other minority's electoral opportunities. These practices include, but are not limited to, the conduct of at-large elections, staggered terms, and off-year elections.

    **iv.**     **Socio-Economic Disparity**

63. In Harris County and in SBISD, a strong and consistent correlation exists between socio-economic welfare and race, such that Latinos and African Americans are more likely to be economically disadvantaged than their Anglo peers.

64. Anglos have a mean per capita income of $45,278, which is almost three times the $14,511 mean per capita income for Latinos. Moreover, median income for Anglo households is more than twice that of Latino households, with median income of Anglos totaling $75,124, compared to the $38,916 median household income of Latinos. African Americans in Harris County have an unemployment rate of 10.9%, which is more than twice the unemployment rate of Anglos. In Harris County, the per capita income for African Americans is $22,511, which is less than half the Anglo median income.

65. The American Community Survey (ACS), a data project of the U.S. Census Bureau, indicates that Latinos have a higher incidence of poverty than do Anglos. According to the ACS, 9.2% of Anglos earn less than 150% below the poverty level, but 34.5% of Latinos earn less than 150% of the poverty level. The African American poverty rate in Harris County is 15.9%.

66. Latinos in Harris County also are substantially more likely to have received less education than Anglos: the ACS indicated that 28.3% of Latinos over the age of 25 had completed nine or fewer years of education, whereas only 1.8% of Anglos over the age of 25 had completed nine or fewer years.

67. Under the de facto segregated public school system in Harris County, thousands of children were not provided appropriate educational resources necessary to learn the English language. Today, those children are adults with limited English proficiency. These limited-English-proficient adults do not possess the requisite language skills to facilitate their participation in the democratic process..

68. Economically disadvantaged people tend to become disaffected, believing that government does not and will not respond to their needs. This also lowers their participation in elections.

69. The socioeconomic disparities which exist in Harris County and in SBISD impact the ability of the minority community to influence state officials, state elections, and state educational policy, as a whole.

  v.  **Racial Appeals in Political Campaigns**

70. Political campaigns in SBISD and Harris County have been characterized by overt and subtle racial appeals.

  vi.  **Success of Minority Candidates in SBISD**

71. No person of color has ever been elected a trustee in SBISD.

72. Minority-preferred candidates were rarely successful or not ever successful in trustee elections in SBISD.

    **vii.    Tenuousness of the policy of At-Large Elections**

73. The at-large system of election is not mandated by state law. In fact, hundreds of Texas school systems elect their trustees from single member districts.

74. No sound policy reason or rationale exists for the continued use of the at-large system for electing SBISD Trustees.

75. In totality, the at-large method of electing the Trustees of Spring Branch ISD dilutes the voting strength of Latinos and other racial or language minorities.

    **V.   CAUSE OF ACTION - SECTION 2 OF THE VOTING RIGHTS ACT**

76. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

77. The choice by SBISD to elect is its Board of Trustees through an at-large process is an election practice that results in the denial or abridgement of the right to vote of the individual plaintiff on account of her race, color, or ethnicity, by having the effect of canceling out or minimizing the individual voting strength as minorities in Texas. This election system does not afford the individual plaintiff an equal opportunity to participate in the political process and to elect representatives of her choice, and denies the right to vote in elections without distinction of race, color or previous condition of servitude in violation of 52 U.S.C. §10301 *et seq*.

78. Under the totality of circumstances, the current at-large method of electing the SBISD Board of Trustees violates Section 2 of the Voting Rights Act, 52 U.S.C. §10301, because it results in the District's Latino and minority citizens having less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

79. Unless enjoined by order of this Court, Defendants will continue to violate Section 2 of the Voting Rights Act by administering, implementing, and conducting future elections for the SBISD using an at-large method of election.

## VI. REQUEST FOR INJUNCTIVE RELIEF

80. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

81. At trial, Plaintiff will likely succeed on the merits, because SBISD's at-large election system has the force and effect of diluting minority voting strength in SBISD elections. There is a sufficiently large and compact community of minority voters within SBISD that vote as a cohesive bloc. Anglos in SBISD vote as a bloc against minority-preferred candidates.

82. Plaintiff will suffer immediate and irreparable injury if SBISD is allowed to continue utilizing an at-large election system, which will diminish the right to vote in trustee elections in the near term and injures federally-protected voting rights.

83. There is no harm to SBISD by allowing the plaintiff and other voters the ability to elect trustees in specified single-member districts, which will allow all voters the right to cast a meaningful vote in SBISD trustee elections.

84. An injunction is in the public interest, because the right to cast a meaningful vote is the foundation upon which all other rights and freedoms are based. The right to vote for the educational leadership of a public school district is granted by statute, protected by federal and state law, and guaranteed by the U.S. and Texas Constitutions. It is in the public interest of SBISD to protect the right of every person to cast a meaningful vote to elect leaders to public office.

85. Plaintiff has no other adequate, plain, or complete remedy at law other than enjoining the at-large trustee election system of SBISD.

86. Plaintiff requests that the Court enter a permanent injunction prohibiting Defendants from using its current at-large election system because of its immediate and irreparable harm to minority voters.

**VII.  CONCLUSION AND REQUESTS FOR RELIEF**

87. For the foregoing reasons, Plaintiff respectfully requests that Defendants be cited to appear and answer and that the Court take the following actions and grant the following relief:

A. Appropriate preliminary and permanent injunctive relief to which Plaintiff shows herself entitled;

B. Entry of a declaratory judgment as described above;

C. Attorneys' fees and court costs; and,

D. Any other or further relief, in law or equity that the Court determines that plaintiff is entitled to receive.

 **DATED**: June 18, 2021

Respectfully submitted,

| | |
|---|---|
| /s/ Barry Abrams | /s/ Martin Golando |
| Barry Abrams | The Law Office of Martin Golando, PLLC |
| State Bar No. 00822700 | Texas Bar No. 24059153 |
| SD Tex. Bar No. 2138 | 2326 W. Magnolia |
| BLANK ROME LLP | San Antonio, Texas 78201 |
| 717 Texas Avenue, Suite 1400 | Office: (210) 471-1185 |
| Houston, Texas 77002 | Fax: (210) 405-6772 |
| (713) 228-6606 | Email: martin.golando@gmail.com |
| (713) 228-6605 (fax) | *Pro Hac Vice Pending* |
| babrams@blankrome.com | |

**ATTORNEYS FOR PLAINTIFF**