IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **VIRGINIA ELIZONDO,** | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **Case No.  4:21-cv-01997** |
| | § | |
| **SPRING BRANCH** | § | |
| **INDEPENDENT SCHOOL** | § | |
| **DISTRICT, CHRIS** | § | |
| **GONZALEZ, PAM GOODSON,** | § | |
| **KAREN PECK, JOSEF D.** | § | |
| **KLAM, MINDA CAESAR,** | § | |
| **CHRIS EARNEST,** | § | |
| **J. CARTER BREED** | § | |
| | § | |
| | § | |
| *Defendants* | § | |

**APPLICANT'S MOTION TO INTERVENE AS DEFENDANT/
INTERVENOR AND INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................. 3

CERTIFICATE OF
CONFERENCE...................................................................................11

ARGUMENT......................................................................................12

I.    The Court Should Permit the Applicant Intervenors to Intervene Under
      Civil  Rule 4(a)(2)...…………………………………………………12

A.    The Applicant Intervenors have important interests that relate to the
      subject of this action……….. …………………………………………….. 12

B.    Disposition of this action will impair the Applicant Intervenors'
      interests………………………………………………………………… 13

C.    The parties cannot show that they adequately represent the Applicants'
      Intervenors' interests………………………………………………… 14

D.    This request to intervene is timely…..………………………………… 14

II.   Alternatively, the Court should permit the Applicant Intervenor to
       Intervene Under Civil Rule 24(b)(1)(B) ………………………………… 15

CONCLUSION ................................................................... 17

CERTIFICATE OF SERVICE ........................................................... 18

## INTRODUCTION

1.      Applicant Intervenor Jenny Morace ("Applicant" or "Morace") ("Applicant") hereby respectfully submits this Motion to Intervene as Defendant-Intervenor and Incorporated Memorandum of Law and moves this Honorable Court for leave to intervene in this action as of right, pursuant to Federal Rule of Civil Procedure 24(a)(2) or, alternatively, in permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(1)(B).

2.      Applicant Morace is a long-time resident, faithful taxpayer, active registered voter, and concerned parent who lives with the political boundaries of the Spring Branch Independent School District ("SBISD").  Her neighborhood is zoned for Housman Elementary, which has a significant Hispanic student population. In addition, Applicant Morace is an aspiring candidate for election to the SBISD Board of Trustees. The next uniform election date for SBISD Trustee elections is scheduled in May of 2022, and the candidate filing period commences in January of 2022. In the meantime, Morace is actively meeting and contacting potential supporters in an effort to gauge her potential candidacy and for the purpose of getting up to speed on the various policy and administrative matters that Trustees may face in the coming years.  To be clear, Morace has not yet announced her candidacy, but will, in the coming weeks and months, determine the viability of her potential campaign.  Once a definitive decision is made to go forward, Morace will file a designation of

campaign treasurer before raising or spending any money and will also comply with all financial and reporting requirements as required by federal, state and local laws.

3.      In order for Morace to make an informed decision about whether to run, Applicant has a significant interest in knowing the following things:

(i) will the upcoming May 2022 election for three (3) seats on the SBISD Board of Trustees be governed by the current at-large system, or will Applicant Morace be placed within the political boundaries of a single-member district?;

(ii) even if the May 2022 election is governed by an at-large electoral boundary, what about subsequent elections for re-election?;

(iii) if the current parties to this lawsuit were to decide to avoid a trial on the merits and instead announce a resolution of this dispute, and present an agreed-upon SBISD district configuration for one or more single-member districts, will Applicant Morace be placed within the political boundaries of a single-member district, or will the geography surrounding her neighborhood remain in an at-large district?;

(iv) in the event of a consensus remedial plan submitted by the parties in a settlement context, will the boundaries be solely determined by the law, or will there be political gerrymandering involved (which is non-justiciable in the federal courts and therefore not fixable) to increase the likelihood of incumbent re-election and to simultaneously diminish the political opportunities of new female conservative Caucasian candidates such as Applicant Morace?;

(v) if the parties are unable to resolve their differences and the Court fashions its own remedial interim plan, will Applicant Morace be placed within the political boundaries of a single-member district, or will the geography surrounding her neighborhood remain in an at-large district?;

(vi) will the Defendants vigorously defend the current SBISD system of at-large elections, or simply use the threat of litigation as an excuse to propose one or more single-member districts without regard to

4

whether such district configuration(s) are legally required by Section 2 of the Voting Rights Act?;

(vii) should the current Defendants lose this case, will they nevertheless appeal and request a stay towards implementation of any new redistricting plan until after the upcoming May elections in 2022?;

(viii) although having filed an Answer which purports to dispute the Plaintiff's entitlement to single member districts, was the current Defendants' failure to assert any affirmative defenses or present any Rule 12b motions a signal that they do not actually intend to vigorously defend the current method of at-large elections for the SBISD Trustees, and hold the Plaintiff to her burden of proof?;

(ix) will the current Defendants elect not to vigorously defend the current at-large election system for reasons that have nothing to do with compliance with the federal Voting Rights Act and/or the United States Constitution, but are instead the result of self-interest, namely: (a) reluctance to oppose single-member districts due to political pressure associated with the fear of being falsely labeled as racist; (b) redistricting in a manner which is designed to protect incumbents from electoral defeat; and (c) ramming through a single member redistricting plan quickly even though not legally required to do so in to avoid a potential political shift in the majority sentiments of the Board due to the fact that three incumbent Trustees of seven total Trustees will likely face significant election challenges by potential candidates like Applicant Morace in May of 2022 and be replaced by more conservative Trustees?.

4.     Applicant Morace and her undersigned counsel readily acknowledge the skill and professionalism of the attorneys for the respective Plaintiff and Defendants in this case.  Having said that, Applicant avers that the SBISD is, at the end of the day, an inherently biased political body, and are susceptible to the temptation to use this lawsuit as "judicial cover" to permanently impose their personal preferences on district governance. Current incumbent SBISD Trustees

understandably want to protect their electoral chances for re-election, which as a practical reality, makes their view of the at-large or single member district debate riddled with personal bias. Furthermore, school district board leadership throughout the State of Texas find themselves in the middle of some very emotionally and politically charged issues, such as COVID-19 mask mandates and critical race theory curriculum and training, just to name two. It is no surprise, therefore, that an incumbent SBISD Trustee would strive mightily to avoid being labeled unfairly as racist, as being branded as anti-minority is a terrible and stressful accusation to bear. Inasmuch as the SBISD cannot act or take a position in this lawsuit without a majority of incumbent Trustees agreeing to do so, Trustee bias is imbued to the SBISD as a whole. Simply put, the Defendants' counsel must respect the wishes of their clients, biased or not.

5.     Applicant Morace readily concedes that she has her own bias, as she is an aspiring candidate for election to the SBISD Board of Trustees. But she is not currently on the Board of Trustees, and she owes no political favors to any of those Trustees or to any of their constituents. Nor did she endorse the failed candidacy of the Plaintiff, as did six of the seven Trustees at the time, five of whom are still on the SBISD Board of Trustees as of right now. Nor is she currently able to vote on matters coming before the Board, including any potential plan for redistricting the current at-large districts for each Trustee to one or more single-member districts.

Unlike Morace, current Trustees have strong political incentives to engage in political horse trading, such as "I will support this plan if you will support this policy initiative I care about," and the like.  Moreover, because the Defendants' political incentive to permanently change the composition of the Board of Trustees in favor of their political allies on their way out the door, and under the adage of "never waste a good crisis," settling this lawsuit provides an avenue to achieve their political goals.

6.      The Voting Rights Act was not passed to protect incumbents.  Nor was the United States Constitution. Under our color-blind system of laws, race and ethnicity are not supposed to be used as a weapon to dilute the voting strength of any racial or ethnic group, whether those diluted voters happen to be Black, Latino or White.  To the contrary, redistricting is supposed to dictate map-drawing outcomes *in spite of*—***not because of***—race or ethnicity.  In order to avoid race-conscious map drawing, other neutral considerations and criteria should be considered, such as compactness, contiguity, equal population, preservation of existing political communities, partisan fairness, and yes, racial fairness.  To be sure, minority majority districts may be legally required in a particular redistricting dispute, but only upon an adequate showing that the three-prong test of *Gingles* and the totality of the circumstances test are satisfied.  But that is not at all a foregone conclusion for the at-large SBISD district in this case.  Indeed, no concrete evidence has yet to

have been developed to prove any violation(s) of Section 2 of the Voting Rights Act. Should this Intervention be permitted, then Applicant Morace will undertake to demonstrate the virtues of at-large districts, which, among other healthy things, require each individual Trustee to consider the needs of all of the SBISD residents, not just a small sliver of a subgroup of residents, when voting their conscience on matters of vital importance to the SBISD.   Furthermore, Applicant Morace will develop evidence which demonstrates the absence of one or more prongs of the *Gingles* test.

7.     Applicant Morace has retained the services of the undersigned attorney, Andy Taylor, to assist the parties and the Court in making sure that whatever decision is made is in full and complete accord with the law.   The undersigned attorney has significant redistricting experience, as he served as the lead counsel for the State of Texas and also for the Legislative Redistricting Board during multiple rounds of redistricting litigation over several decades.   Having practiced election law for over 34 years, the Applicant's counsel continues to counsel members of Congress and state leadership on matters of legislative redistricting, including Congressional redistricting.   Having worked with demographers, political scientists, fact and expert witnesses, and tried dozens of redistricting lawsuits in both state and federal court, Applicant Morace respectfully suggests that her counsel's involvement would promote, rather than  impede, a lawful redistricting outcome.

8.     Applicant Morace's Motion to Intervene is timely because this litigation is in its early stages.  The Defendants' Original Answer was only filed two (2) weeks ago, and the first Court conference in this case is not until November, over 3 months away.  No discovery has occurred.  No scheduling order has been suggested or entered.  No Rule 26 conference or any other activity has transpired. Thus, Applicant's Intervention will not create any delay. Nor will this Intervention by the Applicant at this juncture prejudice the existing parties.  In addition, census data has only been made publicly available for a few short weeks.  It takes a considerable amount of time to download, categorize and analyze that data.  It takes even more time to hire demographers and expert witnesses to assist in the creation of demonstration maps, and to analyze such maps for compliance with the Voting Rights Act and the United States Constitution.  That work has yet to be performed. Indeed, even for the most aggressive proponents of redistricting, map drawing is truly in the infancy stage.

9.     The Applicant has a substantial legal interest in the subject matter of the action because it raises issues of concern to her and for which she has "skin in the game."   As a longtime resident, voter, taxpayer, and parent of a children attending school there, Applicant has an interest in how the SBISD Board of Trustee members are elected, and whether all current members will be accountable to her and the other voters living in the SBISD at-large boundaries, or whether only one or

more elected Trustees can be voted in or out of their elected positions by her and others living nearby.

10.    The Applicant's interests are not adequately protected by the existing parties to the litigation.  For over a year now, the SBISD Board of Trustees have met in executive sessions to discuss the at-large versus single member district debate. Now that litigation has ensued, those discussions will continue to occur in private and outside of public view. Although several members of the Board of Trustees have refrained from making their view public, one or more members have stated publicly their support for single member districts.  Applicant avers that there appears to be a lack of political resolve on the part of the current Board Trustees to vigorously defend the current at-large system, for the three main reasons mentioned previously. Because the Applicant has no vested interest in incumbent protection, the current incumbent members of the SBISD Board of Trustees will not adequately represent her view.  In addition, because the Applicant publicly supports at-large boundaries, and desires that every Trustee be politically accountable to the entire district boundary voters at-large, those Trustees who wish to shrink the size of their specific district to make campaigning and re-election easier by reducing the size and diversity of the political views of those segmented voters, cannot and will not adequately represent her view.  Further, because Applicant Morace is politically conservative, she has a unique interest in protecting and maintaining political at-large boundaries

to elect female candidates of conservative beliefs. All too often women are disenfranchised as a result of single member redistricting. Finally, Morace wants to ensure that her constitutional right to vote is not illegally infringed or diluted, using race or ethnicity as an excuse to change the political opportunities for female conservatives to be elected, especially since political gerrymandering is not justiciable in a federal court. For these reasons, Applicant Morace's interests do not necessarily align with the interests represented by any of the Defendants, and certainly are not aligned with those of the Plaintiff.

11.    The Applicant also satisfies the requirements for permissive intervention because her defenses to the Plaintiff's claims against the SBISD Defendants have questions of law and fact in common with the claims and facts at issue in the main action, and the action raises significant issues concerning the legality of at-large elections for the SBISD Trustees. See Fed. R. Civ. P. 24(b)(2).

### CERTIFICATE OF CONFERENCE

12.    Pursuant to Local Rule 7.1(D), counsel for the Applicant conferred with counsel for all other parties via email on September 3, 2021 concerning the Applicant's Motion to Intervene as a Defendant. Counsel for Plaintiff did not respond by the time of this filing. Counsel for the Defendants did respond, but noted that both he and his clients will need some time to consider whether they are opposed/unopposed to this Motion. Accordingly, because one of the elements for

successful Intervention is timeliness, Intervenor hereby files this Motion and, in an abundance of caution, lists both the Plaintiff and all of the Defendants as opposed. If and when the current parties state that they are not opposed, then Movant will update this Certificate of Conference accordingly.

## ARGUMENT

## I.   The Court Should Permit the Applicant's to Intervene Under Civil Rule 24(a)(2). 12.

13.     Under the Federal Rules of Civil Procedure, a non-party must be allowed to intervene (1) when it has an interest relating to the subject of the action and (2) disposing of the action may practically "impair or impede" that interest, (3) unless the parties "adequately represent" that interest. Fed. R. Civ. P. 24(a)(2). The Applicant should be able to intervene as a matter of right because they satisfy all three requirements.

## A.   The Applicants' Intervenors have important interests that relate to the subject of this action.

14.     The Fifth Circuit has said before that courts may not define the requisite interest for intervention purposes "too narrowly." Ford v. City of Huntsville, 242 F.3d 235, 240 (5th Cir. 2001). The Applicant has a "direct, substantial, legally protectable interest." In re Lease Oil Antitrust Litig., 570 F.3d 244, 250 (5th Cir. 2009) (quotation omitted). With those cases guiding this inquiry, it is clear that

Applicant possesses a unique, divergent, and substantial interest in the outcome of this litigation and her interests are related to that litigation.

15.     The Applicant seeks to protect the current system of at-large elections. In the alternative, should one or more single-member districts be created, then Applicant seeks to make sure those districts are not drawn with illegal race-based considerations, but rather, are drawn to comply with neutral redistricting criteria, and to ensure that no political gerrymandering occurs to preserve incumbents or incumbent political allies or to lessen the opportunities for female conservatives to be elected. This lawsuit is the vehicle through which such protections will be obtained.

**B.     Disposition of this action will impair the Applicant Intervenor's interests.**

16.     The Applicant must also show "that disposing of the action may as a practical matter impair or impede" their interests.  Fed. R. Civ. P. 24(a)(2). That does not require a would-be intervenor to demonstrate that a judgment in the action would have binding effect on the would-be intervenor. All that matters is whether the judgment "may" have a "practical" impact on the would-be intervenor's interest. See Atlantis Dev. Corp. v. United States, 379 F. 2d 818, 828-29 (5th Cir. 1967). A decision to forego any or all at-large districts in favor of single-member districts will not only forever implicate the interests of this Applicant, but such a monumental decision will likewise implicate the interests of future candidates, SBISD Board of

Trustees, parents, students, teachers, residents, and voters throughout the SBISD geographic territories, forever.

17.    When compared to the current composition of the SBISD Board of Trustees, and because of her political aspiration to explore her potential candidacy, the threat to Applicant's interests are unique to those of Morace. As such, her interests deserve protection. Intervention should be granted.

**C.    The Parties cannot show they adequately represent the Applicant/ Intervenor's interests.**

18.    The third element to justify intervention of right is inadequate representation of the proposed intervenor's interest by existing parties to the litigation. This element is satisfied if the proposed intervenor "shows that representation of his interest 'may be' inadequate." Chiles, 865 F.2d at 1214 (citing Tribovich v. United Mine Workers of America, 404 U.S. 528, 538 n. 10 (1972)). While the Defendants in this case may commit their time, energy and resources to this dispute – the Applicant, as well as the other residents, taxpayers, voters and parents living within the SBISD footprint are the ones who will have to live with the consequences of the Court's and the existing Parties' actions for the foreseeable future. Applicant is entitled to have her concerns addressed in a timely matter prior to a decision or settlement is made in this matter.

**D.    The request to intervene is timely.**

19.    Finally, this Motion to intervene is "timely." Fed. R. Civ. P. 24(a). The
Fifth Circuit has noted that Rule 24's timeliness inquiry "is contextual; absolute
measures of timeliness should be ignored." Sierra Club v. Espy, 18 F.3d 1202, 1205
(5th Cir. 1994).  The Plaintiff first filed her lawsuit on June 18, 2021, and with the
impact of COVID-19, even the most nimble of courts have seen their docket move
at a far slower pace compared to previous years. The Applicant does "not seek to
delay or reconsider phases of the litigation that ha[ve] already concluded." Wal-Mart
Stores v. Tex. Alcoholic Beverage Comm'n, 834 F.3d 562, 565 (5th Cir. 2016).
Applicant has timely requested the right to intervene and should be afforded the
opportunity to participate.

## II.    Alternatively, the Court should Permit the Applicant to Intervene Under Civil Rule 24(b)(1)(B).

20.    If the Court does not grant the Applicant/Intervenor's Intervention as
of right – which the Applicant respectfully requests of the Court – it should grant the
Motion for permissive intervention because the Applicant/Intervenor's position and
this suit have a common question of law or fact. See Fed. R. Civ. P. 24(b)(1)(B) ("on
a timely motion, the court may permit anyone to intervene who . . . (B) has a claim
or defense that share with the main action a common question of law or fact.").

21.    To obtain permissive intervention under Rule 24, the Applicant must
demonstrate that: (1) the motion to intervene is timely; (2) its claim or defense has a
question of law or fact in common with the existing action; and (3) intervention will

not delay or prejudice adjudication of the existing parties' rights. Id. see United States v. LULAC, 793 F.2d 636, 644 (5th Cir. 1986) ("Although the court erred in granting intervention as of right, it might have granted permissive intervention under Rule 24(b) because the intervenors raise common questions of law and fact."). The Applicant satisfies each of these factors.

22.    First, as stated above, the Applicant's Motion is timely. Second, because the Applicant filed the Motion before the initial discovery sought is due under the Civil Rules, the granting of this Motion will not cause any delay or prejudice to the existing parties' rights to litigate this case. Third, the Applicant's case shares common questions of law and fact with the main action brought by Plaintiff.

23.    In considering whether to grant permissive intervention, the Court may also consider "(1) whether an intervenor is adequately represented by other parties; and (2) whether intervention is likely to contribute significantly to the development of the underlying factual issues." Marketfare (St. Claude), L.L.C., v. United Fire & Cas. Co., Nos. 06-7232, 06-7641, 06-7639, 06-7643, 06-7644, 2011 WL 3349821, at *2 (E.D. La. Aug. 3, 2011).

24.    These factors provide additional support for granting permissive intervention in this case. As already discussed, the Applicant's undersigned attorney has significant redistricting experience.  Further, the Applicant is not in favor of

16

incumbent protection, political gerrymandering, or vote dilution based on race-conscious redistricting disguised as empirical evidence necessitating the creation one or more minority majority single-member districts.

25.   Thus, even if the Court concludes that the Applicant is not entitled to intervene as of right, it should grant her request for permissive intervention.

## CONCLUSION

The Court should grant the Applicant's Motion to intervene as of right or, alternatively, to intervene permissibly, and grant her all the same rights and responsibilities as a party to the lawsuit, and grant leave to Defendant/Intervenor to file her own separate Original Answer to Plaintiff's First Amended Complaint.

Dated: September 3, 2021

> Respectfully submitted,
> BY:  _/s/ Andy Taylor_____
> Andy Taylor
> State Bar No. 19727600
> **ANDY TAYLOR & ASSOCIATES, P.C.**
> 2628 Highway 36S, #288
> Brenham, Texas 77833
> 713-222-1817 (telephone)
> 713-222-1855 (facsimile)
> ataylor@andytaylorlaw.com
>
> **ATTORNEYS FOR JENNY MORACE**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was electronically filed with the Court's electronic filing system on September 3, 2021, and that a copy has been served upon all counsel of record identified below.

Barry Abrams
Blank Rome LLP
717 Texas Avenue, Suite 1400
Houston, Texas 77002
(713) 228-6606
(713) 228-6605 (fax)
babrams@blankrome.com
Attorneys for Plaintiff

Martin Golando
The Law Office of Martin Golando, PLLC
2326 W. Magnolia
San Antonio, Texas 78201
Office: (210) 471-1185
Fax: (210) 405-6772
martin.golando@gmail.com
Attorneys for Plaintiff

Christopher B. Gilbert
cgilbert@thompsonhorton.com
Stephanie A. Hamm
shamm@thompsonhorton.com
Thompson & Horton LLP
3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6767
Facsimile: (713) 583-8884
Attorneys for Defendants

/s/ Andy Taylor<br>Andy Taylor