IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| VIRGINIA ELIZONDO, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| vs. § | Civil Action No. 4:21-cv-01997 |
| § | |
| SPRING BRANCH INDEPENDENT § | |
| SCHOOL DISTRICT, CHRIS § | |
| GONZALEZ, PAM GOODSON, KAREN § | |
| PECK, JOSEF D. KLAM, MINDA § | |
| CAESAR, CHRIS EARNEST, J. § | |
| CARTER BREED, in their official § | |
| capacity as members of the Board of § | |
| Trustees of Spring Branch ISD § | |
| § | |
| *Defendants.* § | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
APPLICATION FOR PRELIMINARY INJUNCTION**

Defendants Spring Branch Independent School District ("SBISD") and Chris Gonzalez, Pam Goodson, Karen Peck, Josef D. Klam, Minda Caesar, Chris Ernest and J. Carter Breed in their official capacity as members of the Board of Trustees of Spring Branch ISD (collectively, "Defendants") file the following response to Plaintiff's Application for Preliminary Injunction [Dkt. 27].

**Introduction/Facts**

1. Plaintiff Virginia Elizondo filed this lawsuit after she ran for trustee in the May 2021 SBISD school board election and lost. She brings this suit under the Voting Rights Act to challenge the "at-large" system used by SBISD to elect its trustees. See Dkt. 3.

2. This Court entered its scheduling order in November 2021. Dkt. 22. As allowed by this order, discovery is on-going through at least March 30, 2022, with each of the current board of

trustees members being deposed during the week of February 14. Plaintiff has just recently designated her experts and disclosed their reports, and the Defendants' expert designations/reports are not yet due. And, critically, docket call for the bench trial is scheduled for June 6, 2022 – a mere three months from now.

3. As noted in Plaintiff's application for injunction [Dkt. 27], SBISD elects its seven-member school board "at-large," with the trustees elected to three year terms by place. The election for places 5, 6, and 7 (three of the seven board positions) is currently scheduled for May 7, 2022 – approximately one month before the trial of this suit.

4. Plaintiff filed her application for preliminary injunction on February 1, 2022, and it has been placed on the Court's February 22, 2022 motion docket. Plaintiff's application asks for a preliminary injunction prohibiting SBISD from conducting the school board trustee election currently scheduled for May 7, 2022, arguing that "[a]bsent an injunction, trustee elections improperly will go forward utilizing the current 'at-large' method of electing school board members." Dkt. 27, p. 1. According to Plaintiff's application, "[a]t this stage, SBISD should be enjoined from proceeding with the May 2022 election for two [sic] Trustee positions under an at-large system, but it may conduct the election provided that it implements a district plan that complies with the Voting Rights Act." Dkt. 27, p. 27.

5. More specifically, Plaintiff asks that the Court enter the following preliminary injunction:

> Accordingly, it is hereby ORDERED that Defendants and all their respective officers, agents, servants, employees, attorneys, and persons acting in concert or participation with them are enjoined from using the current at-large election system for the 2022 SBISD trustee election now and in the future.
>
> In addition, the Defendants and Plaintiff are ordered to meet, confer and present a proposed remedy or remedies for use during the 2022 election cycle that comply with federal law for this Court's consideration, within two weeks.

Dkt. 27-2, p. 2.

6.     As more fully discussed below, Defendants oppose the preliminary injunction requested by Plaintiff.

## Response to Plaintiff's Request

7.     Plaintiff spends a considerable amount of her application arguing that a preliminary injunction is proper because she has a substantial likelihood of success on the merits of her Voting Rights Act claim. See Dkt. 27, pp. 8-25. Defendants do not intend to respond to this argument at this time because it is too early for them to be able to adequately do so – discovery, both fact and expert discovery, is still-ongoing and will not be completed at least until March 30. Instead, Defendants will fully and vigorously defend the merits of Plaintiff's claim at the upcoming trial.

8.     However, with respect to the merits, Defendants do note that, contrary to the implied conclusion offered by Plaintiff's argument, "at-large election schemes are not *per se* violative of minority voters' rights." *Thornburg v. Gingles,* 478 U.S. 30, 48 (1986). See also *Westwego Citizens for Better Government v. Westwego,* 872 F.2d 1201, 1204 (5th Cir. 1989) (at-large voting schemes "are not per se violations of section 2"). This is because at-large systems suppress factionalism; at-large elected candidates are more likely to work toward the best result for the whole school community rather than pander to the specific demands of only parts of the school community.[1] In fact, recent scholarly (peer reviewed) research shows, for example, that "African Americans actually do *better* in at-large systems. Although this minority group may have been disadvantaged by at-large districts 30 years ago, they have since overcome these hurdles and now appear to be better off under this type of electoral structure in the case of school board elections." Meir, Kenneth

---

[1] As noted by the Fifth Circuit, unlike those elected from single member districts, board members elected on a district-wide, or at-large, basis are "responsive to all voters." *Corder v. Kirksey,* 639 F.2d 1191, 1196 (5th Cir. 1981).

J. and A. Rutherford, Partisanship, Structure and Representation: The Puzzle of African American Education Politics, *The American Political Science Review,* Vol. 108, No. 2, p. 265 (May 2014), https://doi.org/10.1017/S0003055414000148.

9. However, notwithstanding the validity of SBISD's current "at-large" system, because this lawsuit is on the eve of the trial on the merits, Defendants are nevertheless ***not opposed*** to the Court ordering the May 2022 school board election be delayed until November 2022[2], so long as the election scheme used for this delayed election is not determined or ordered until *after* the trial on the merits – assuming the Court determines that SBISD's current "at-large" system is permissible after a trial on the merits, there will be no need to hold that election as a single member district election as requested by Plaintiff.

10. Defendants are not opposed to a simple delay of the May election until after the trial because the current board has overseen the litigation/defense strategy in this suit since it was originally filed and it is in SBISD's best interest, *this close to the June trial*, to continue to have its current board of trustees, whose members are all defendants in this suit in their official capacities, oversee and participate in the defense of this suit through trial.  Conducting the school board election in May could result in three new members being elected, which could potentially materially disrupt the current defense strategy and trial tactics only a few weeks before trial. Here, to use an old phrase, "it is not a good idea to change horses in midstream."[3]  Allowing the current board to remain through trial (and until a November election) will best assure the continuity of the school district's defense in this suit.  This is in the school district's best litigation interest.

---

[2] According to Texas Election Code §41.001(a), each general or special election of board members shall be on one of the following dates: (1) the first Saturday in May, or (2) the first Tuesday after the first Monday in November.

[3] The idiom "change horses in midstream" means "to choose a different leader or policy during a time when serious problems are being dealt with."  *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/change%20horses%20in%20midstream.

11.     Further, it appears to be a better solution to simply delay rather than, potentially, later void the entire May school board election should the Court determine after a trial on the merits that SBISD's current at-large election system is impermissible.  See, e.g., *United States v. Brown*, 561 F.3d 420, 435 (5th Cir. 2009) ("voiding entire elections is a drastic remedy requiring sufficient need").

12.     Importantly, although they are not opposed to delaying the May 2022 school board election until November 2022, Defendants *do oppose* Plaintiff's requested injunction that requires a single member district plan be submitted by SBISD, in consultation with Plaintiff, to the Court prior to the upcoming trial on the merits. First, such a plan is premature *unless and until*, after completed discovery and a final trial on the merits, the Court finds that SBISD's "at-large" election scheme actually violates the Voting Rights Act. Assuming the trial on the merits occurs in June 2022, this leaves adequate time to then create any potentially required remedial plan prior to a November election, should such a plan eventually be necessary.  ***Again, to be clear, Defendants do not concede that SBISD's "at-large" election of its trustees violates the Voting Rights Act, and they intend to vigorously defend this system at the June trial.***

13.     In addition, assuming, *arguendo*, that any remedial plan becomes necessary after a full trial on the merits, it would be an abuse of discretion to require Defendants to "meet and confer" with Plaintiff concerning any proposed remedial plan. Rather, the Fifth Circuit requires that the governmental body – here, SBISD's board of trustees – **alone** be given the "first pass" at devising an appropriate remedy. See, e.g., *Veasay v. Abbott,* 830 F.3d 216, 270 (5th Cir. 2016) (en banc) ("Indeed, when feasible, our practice has been to 'offer governing bodies the first pass at devising' remedies for Voting Rights Act violations.") See also *Jones v. Lubbock,* 727 F.2d 364, 387 (5th Cir. 1984) ("For the sake of future courts, we reiterate briefly some of the principles that the district

court should bear in mind. Apportionment is principally a legislative responsibility. A district court should, accordingly, afford to the government body a reasonable opportunity to produce a constitutionally permissible plan. If the governmental body does submit a plan, the court should, before rejecting it, determine that the substitute plan itself is unlawful."); *Rodriguez v. Bexar County,* 385 F.3d 853, 870 (5th Cir. 2004) ("The primary responsibility for correcting Voting Rights Act deficiencies rests with the relevant legislative body. Both the Supreme Court and this court have admonished district courts to afford local governments a reasonable opportunity to propose a constitutionally permissible plan and not haphazardly to order injunctive relief.").

14. Defendants therefore oppose (1) any order requiring SBISD to submit a proposed future remedial plan prior to the trial on the merits, and (2) any order requiring that SBISD "meet and confer" with Plaintiff concerning any such potential future remedial plan should such a plan become necessary.

## Conclusion

15. For these reasons, Defendants oppose the preliminary injunction requested by Plaintiff.

Respectfully submitted,

**ABERNATHY, ROEDER, BOYD & HULLETT, P.C.**

*/s/Charles J. Crawford*
**Charles J. Crawford**
State Bar No. 05018900
SD Tex. Bar No. 335298
ccrawford@abernathy-law.com
**Lucas C. Henry**
State Bar No. 24101901
SD Tex. Bar No. 3727871
lhenry@abernathy-law.com
1700 Redbud Blvd., Suite 300

                    McKinney, Texas  75069
                    Telephone: 214-544-4000
                    Facsimile: 214-544-4040

                    **ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

On February 15, 2022 I electronically served this response on all counsel and amicus of record by the Court's ECF system.

                    */s/Charles J. Crawford*
                    Charles J. Crawford