## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| VIRGINIA ELIZONDO, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:21-cv-01997 |
| SPRING BRANCH INDEPENDENT | § | |
| SCHOOL DISTRICT, CHRIS GONZALEZ, | § | |
| PAM GOODSON, KAREN PECK, JOSEF D. | § | |
| KLAM, MINDA CAESAR, CHRIS | § | |
| EARNEST, J. CARTER BREED, in their | § | |
| official capacity as members of the Board of | § | |
| Trustees of Spring Branch ISD. | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S REPLY IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION

### I.    INTRODUCTION

Like many school districts in Texas, the Spring Branch Independent School District ("SBISD" or "the district") often holds its trustee elections in May. But it has not always done so. In the Spring of 2020, for example, SBISD faced a choice. Holding an election in May 2020 meant requiring voters and election workers to vote, largely in person, during the COVID-19 pandemic. On March 30, 2020, the SBISD board of trustees chose to move its 2020 election date to November. (Attachment A). This move was not met with opposition by any affected party. No SBISD citizen or trustee candidate filed suit hyperbolically claiming that a brief postponement in the election date from May to November in some manner "completely destroyed" any voter's rights or would result in the "total disenfranchisement" of any anyone's "right to vote."[1]

---

[1]    *See* Amicus Jenny Morace's Response to Plaintiff's Motion for Preliminary Injunction and Reply to Defendant SBISD's Response to Plaintiff's Motion for Preliminary Injunction, ¶13 (Dkt 33)("Morace Response").

Today SBISD faces a similar choice: whether to maintain an election system that is deleterious to the voting rights of minorities throughout SBISD[2] or proceed with an election that likely violates federal law. While claiming that it is too soon for the district to respond to Plaintiff's comprehensive proof that she has a substantial likelihood of success on her Voting Rights Act claim,[3] SBISD has chosen not to oppose postponing the May 2022 trustee election until November (as it did in 2020), so that this Court may render its judgment after the trial on the merits and resolve whether or not SBISD's "at-large" election system violates the rights of SBISD minority voters.[4]

Although SBISD claims it is *too soon* for the Court to evaluate Plaintiff's proof that it has violated the Voting Rights Act, by improperly diluting the voting strength of the district's minority voters, amicus Morace on the other hand, claims that Plaintiff's request for an injunction postponing the May 2022 election comes *too late*.[5] As discussed below, the Morace response contains no facts and little argument, while virulently arguing that the election should move forward. To be clear, the *Purcell* line of cases Morace cites[6] do not bar an injunction generally or on the facts present here. And, as discussed below, the remainder of the Morace arguments

---

[2] It is undisputed that in its 75 year history, no person of color has ever been elected or appointed to the SBISD board of trustees.

[3] *See* Defendants' Response to Plaintiff's Application for Preliminary Injunction, ¶7 (Dkt 32)("Defendants do not intend to respond to this argument at this time because it is too early for them to be able to adequately do so . . . .").

[4] *Id.*, ¶("Defendants are . . . **not opposed** to the Court ordering the May 2022 school board election be delayed until November 2022, so long as the election scheme used for this delayed election is not determined or ordered until **after** the trial on the merits . . . .")(emphasis in original, footnote omitted).

[5] Morace Response, ¶18 (Complaining that Plaintiff's filing her Application for Preliminary Injunction on February 1, 2022 (two months earlier than when the SBISD board of trustees postponed the May 2020 election and before any ballot has been printed or cast) "is nothing more than an attempt to create an eleventh-hour emergency of Plaintiff's own making."). See the discussion on pages 5-6 concerning the district's conduct which explains why Plaintiff's Application for Preliminary Injunction was not filed before February 1, 2022.

[6] Morace Response, ¶19 (citing, *inter alia*, *Purcell v. Gonzalez*, 549 U.S. 1 (2006)).

2

concerning the merits of the injunction are equally baseless.

It is neither "too early" nor "too late" for this Court to address the legality of SBISD's at-large system of electing its trustees. It is precisely the right time to do so. This Court should enjoin SBISD's May 2022 trustee election.

**II.   ARGUMENT**

Neither the Defendants nor Morace presents any evidence to controvert Plaintiff's proof that she has a substantial likelihood of success on the merits of her Voting Rights Act claim. In addition, precious little law has been brought forward to combat the grounds for preliminary injunctive relief.  The District makes no attempt to do so and Morace mixes up the standards of evidence for trial and preliminary relief, confuses the difference between liability and remedy under the Voting Rights Act, and devotes much attention to casting non-factual aspersions on the motives attributed to both the Plaintiff and the Defendants. This Court should reject these overtures and instead focus on the controlling legal standards and Plaintiff's uncontroverted proof.

**A.   *Purcell* and its progeny do not bar temporary relief at this time.**

The *Purcell* principle disallows federal courts, in some instances, from changing election rules during the period of time immediately before an election because doing so could confuse voters and create problems for officials administering the election. *Purcell* does **not** empower individual voters to deny temporary relief to which the election jurisdiction has acquiesced. The reason for this is obvious, *Purcell* and its progeny are grounded in the need to prevent voter confusion and election maladministration.

Morace has not submitted any evidence that postponing the May trustee election to November would create voter confusion. Indeed, she cannot credibly do so, because SBISD moved its election from May to November in 2020 without any such effect. It would be improbable that an SBISD voter could be confused by election date change that mirrors exactly the action taken by

the jurisdiction just two short years ago.[7] Also, Morace has provided this Court **no** evidence of the possibility of electoral misadministration. To the contrary, SBISD has stated its willingness to again move the May trustee election to November and made no suggestion that will result in any possible administrative problems. Absent such a showing, no evidentiary basis exists to deny temporary relief at this time.

Instead of providing facts that this Court may rely upon in adjudicating Plaintiff's application, Morace string cites a litany of cases that she contends prevent temporary relief "close to an election."[8] First and foremost, Plaintiff's application is not "close to any election." The election is scheduled on May 7, 2022. No ballots have been printed. No mail ballots have been mailed. No votes have been cast. The earliest possible in-person early vote will not occur until April 25, 2022. There is no chance of disruption at this time, just as there was no such disruption, confusion or maladministration in 2020, when SBISD chose on March 30, 2020 to postpone the May 2020 election, thirty-seven days closer to that election than now. Plaintiff requested this Court to postpone the May 2020 election fully 95 days before Election Day. As of February 22, 2022, Election Day is 72 days away. The relief that has been requested is both timely and proper or the Defendants would have opposed it – which they have not done. To the contrary, Defendants have expressly stated that they are "***not opposed*** to the Court ordering the May 2022 school board election be delayed until November 2022 . . . ."(emphasis in original).

More importantly, the federal cases cited by Morace were decided far closer to the election than the pending application.

---

[7] Ultimately the November 2020 election was later cancelled after the district elections secretary certified that the candidates for the open positions were no longer opposed. Featured News - Spring Branch Independent School District (springbranchisd.com)

[8] Morace Response, ¶19.

| Case | Decision Date | Days to Election |
|------|---------------|------------------|
| *Democratic Nat'l Comm. v. Wis. State Legislature,* 141 S. Ct. 28, 31 | 10-26-2020 | 8 days before election |
| *In re Hotze, 627 S.W.3d 642* | 10-07-2020 | 27 days before election |
| *Republican Nat'l Comm. v. Democratic Nat'l Comm.,* 140 S. Ct. 1205 | 04-06-2020 | 5 days before the scheduled election |
| *Purcell v. Gonzalez,* 549 U.S. 1 | 10-20-2006 | 18 days before election |

The various state cases Morace cites are inapplicable, non-binding on this Court, and materially distinguishable. *In re Francis* and *In re Gamble* were both candidate eligibility cases involving partisan elections and a swiftly-approaching primary. None of the litigants in any of those cases sought to postpone the election and those cases do not stand for proposition cited. Moving those elections would have affected dozens of other candidates for other offices up and down the ballot. This is plainly not the case in this matter, because Plaintiff seeks only to enjoin SBISD trustee elections and no others. The recent Texas Supreme Court, *In re Khanoyan*, likewise sought to enjoin a partisan election, which would have affected dozens of candidates. In this election, SBISD trustees will be the sole offices on the ballot and SBISD is the sole jurisdiction affected by an injunction – which it does not oppose. The state cases Morace cites therefore are inapplicable and do not bar this Court from acting. And to be sure, this and other Federal Courts are not barred from moving the dates of primary elections when necessary to comply with federal law and the U.S. Constitution. *See e.g. Perez, et al. v. Perry, et al.*, No. 11-cv-00788-OLG-JES-XLR, Dkt 145 (March 1, 2012).

Finally, Morace criticizes Plaintiff for engaging in what she suggests was an "inexplicable delay" in seeking injunctive relief and contends that is a basis for denying relief. The Plaintiff has not delayed her prosecution of her case, which was timely filed on June 18, 2021. Nor has she improperly delayed the filing of her request for preliminary injunctive relief, as Morace falsely asserts. The timing of Plaintiff's application for injunctive relief is the direct result of multiple delays resulting from the Defendants' actions.

5

➢ First, as the Court knows, because SBISD possesses all of the relevant trustee election data, Plaintiff was dependent upon the district to provide that information before it could be analyzed.

➢ Second, Defendants initially requested that Plaintiff delay depositions of the district's corporate representatives then scheduled to occur on November 30, 2021, based upon a District-initiated proposal and agreement that the parties confer about the potential for resolution of the litigation.

➢ Third, the District thereafter reneged on its own agreement and Defendants' counsel filed their motion to withdraw on December 7, 2021, stating that "the issues in this litigation are too important for the focus to become the law firm, and not the lawsuit" and that counsel believed it "their duty to withdraw,"[9] and Defendants secured new litigation counsel, which resulted in additional delays, with the SBISD corporate representative depositions occurring on December 28-30, 2021, a month after they had initially been set. Testimony from the SBISD representatives was both relevant and material to proof of certain aspects of the *Gingles* preconditions and the Defendant-caused delay in securing that testimony also resulted in a delay in the completion of Plaintiff's expert's reports.

➢ Finally, and most recently, Plaintiff deferred the filing of her application for preliminary injunction at the behest of the Defendants, whose counsel requested that deferral so that they could consult with their clients concerning their position on the requested relief, at an SBISD board executive session on January 31, 2022.

➢ When Defendants' counsel reported on February 1, 2022 that Defendants opposed the requested injunction, Plaintiff promptly filed her application for preliminary injunctive relief on February 1, 2022.

Therefore, the minimal delays which occurred in the filing of Plaintiff's application for preliminary injunctive relief were not caused by the Plaintiff and they do not provide any basis for this Court to deny the relief requested.

**B. Plaintiff has proven that she is likely to succeed on the merits.**

To obtain injunctive relief, Plaintiff has the evidentiary burden to prove the *Gingles* preconditions and the "totality circumstances" or Senate factors. To satisfy this burden, Plaintiff has presented sworn expert evidence from Drs. Robert Stein and Andres Tijerina.

---

[9] *See* Motion to Withdraw and Substitute Counsel for Defendants (Dkt 24).

i.     Plaintiff has met the *Gingles* Preconditions.

In *Gingles*, 478 U.S. at 34, the Supreme Court set out three "preconditions" that must be met for a challenge under Section 2 of the Voting Rights Act to be successful:

1)  the minority group must be sufficiently large and geographically compact to constitute a majority in a single-member district;

2)  the minority group must be politically cohesive and vote as a bloc; and

3)  the white majority must vote sufficiently as a bloc to enable it, in the absence of special circumstances, to defeat the minority's preferred candidate.

Plaintiff has met this evidentiary burden.

a.  *Gingles* I

*Gingles* I requires that a plaintiff prove that "the minority group must be sufficiently large and geographically compact to constitute a majority in a single-member district". To satisfy this first factor, plaintiffs generally submit evidence of a "hypothetical redistricting scheme[] in the form of an illustrative plan[]." *Gonzalez v. Harris Cnty.*, 601 F. App'x 255, 258 (5th Cir. 2015). (internal quotation marks omitted). This majority-minority requirement ensures that absent an at-large electoral scheme, "minority voters possess the potential to elect representatives . . . ." *League of United Latin Am. Citizens, Council No. 4434 (LULAC) v. Clements*, 986 F.2d 728, 743 (5th Cir. 1993) (emphasis in original) (citing Gingles, 478 U.S. at 50 n.17).

SBISD has admitted that Plaintiff has satisfied the first *Gingles* factor. *See* **Exhibit C** to Plaintiff's Application for Preliminary Injunction, Deposition of SBISD Corporate Representative Christine Porter ("SBISD Porter Deposition"), at pp. 34/8 – 35/15. In addition, to prove that Latinos in SBISD are sufficiently large and geographically compact enough to constitute a majority in a single-member district, Dr. Stein reviewed relevant data and the geography of SBISD. He offered an illustrative single member district plan, which included one district in which Latinos made up a majority of the citizen voting age population (CVAP) of that district.

**Demonstrative Spring Branch ISD Single-Member District**

In response, Morace ignores the actual evidence and instead opts for lobbing groundless accusations. First, Morace asserts that Dr. Stein did not "prove that this proposed District 1 would actually perform in such a manner so as to allow Hispanics to elect preferred candidates of their choice." Dkt 33 at ¶ 6. No such showing is necessary at this stage. Here, Morace has mixed up the difference between the proof necessary to establish liability and remedy in a Voting Rights Act case. To find liability, "[a] plaintiff must prove that the minority citizen voting age population ("MCVAP") of the illustrative district exceeds 50% of the total CVAP within the district." *Kumar v. Frisco Indep. Sch. Dist.*, 476 F. Supp. 3d 439, 492 (D. Tex. 2020); *Valdespino v. Alamo Heights Indep. Sch. Dist.*, 168 F.3d 848, 852-53 (5th Cir. 1999); *Westwego Citizens for Better Gov't v. City of Westwego*, 946 F.2d 1109, 1117 n.7 (5th Cir. 1991). Plaintiff has met this "bright line" standard.

Morace next asserts without evidence or merit the deliberately inflammatory claim that Plaintiff's illustrative plan is the product of race-conscious districting. Dkt 33 at ¶ 7. In support of

8

this accusation, Morace cites that the Plaintiff "lives on the farthest edge of proposed district 1."*Id.* Yet, Morace cites no analysis, report, court case, statute, administrative rule, or any other legal authority that suggests that drawing a district in which the plaintiff resides is any evidence of race-conscious districting. There are many ways to create a Latino CVAP majority district in SBISD; many of which do not have the plaintiff residing on the "farthest edge of the district." *See below*.

Then, Morace embarks without any evidence on a misadventure into the geography of SBISD, citing the supposed racial demography of the certain SBISD schools. She suggests broadly that the shape of District 1 cannot be said to encompass communities of interest, because some of the students in the illustrative district attend different schools. However, this naturally happens in any districting plan and is no evidence of any racial gerrymander. In any event, the boundaries of SBISD's current school enrollment zones themselves are likely artifacts of historical racial and ethnic segregation. *See* **Exhibit B** to Plaintiff's Application for Preliminary Injunction, the Report of Andres Tijerina, Ph.D., pp. 30-39, 43 ("Tijerina Report"). Adhering to the SBISD school attendance zones only reinforces the racial segregation in SBISD schools found by Dr. Stein. *See* **Exhibit A**, the Report of Robert M,. Stein, Ph.D., pp. 9-10 ("Stein Report"). Finally, Morace suggests that if the Plaintiff had not included majority Latino areas in her proposed illustrative district, then it would fail to meet the *Gingles* preconditions *Id*. at ¶ 8. None of these assertions are based upon any evidence in the record.  Morace has not tendered any map, report, affidavit, or other evidentiary basis which support these allegations by her counsel. Plaintiff respectfully suggests that the reason Morace has not provided any evidence to support her arguments is because none exists. The illustrative district in question has a normal shape without jagged edges or tendrils that typify race-conscious districting.

It is relatively easy to create at least one majority Latino district in SBISD without engaging in the typical tactics of those who seek to engage in racial gerrymandering. Below are several other

illustrative versions of a 50% majority HCVAP district which reflect the multiple ways in which the Latino population in SBISD is "sufficiently large and geographically compact" enough to constitute a majority of a single-member district. The blue dot is the residence of the plaintiff.



**Demonstration District 2**

| Total Pop. | HCVAP % |
|---|---|
| 26,655 | 50.6% |



**Demonstration District 3**

| Total Pop. | HCVAP % |
|---|---|
| 27,484 | 50.1% |

There likely are dozens of variations of potential single member districts that are geographically compact and meet the 50% minority requirement "bright line test." *Benavidez v.*

*Irving Indep. Sch. Dist.*, 690 F. Supp. 2d 451, 456 (D. Tex. 2011). Plaintiff has met her burden to prove the *Gingles* I factor.

> b.   Gingles II & III

To meet *Gingles* preconditions II and III, Dr. Stein's report offered impressive detail about the racially polarized nature of SBISD elections. He found, "[t]here is statistically significant evidence of racial polarized voting in the Spring Branch Independent District's Board of Trustees elections for the period 2015-2021." Stein Report, p. 3. In support of this conclusion, Dr. Stein analyzed the actual voters in SBISD elections from 2015-2021, their residential location, the racial ethnicity of the voters, and the election outcomes in trustee election. *Id*. at p. 4. From this information, Dr. Stein "regressed" the elections to determine the relationship between the race of the voter and the support for their preferred candidate. *Id*. From this regression, he found that "[r]acially polarized voting is observed in every election studied. White and Hispanic voters diverge in their support for each candidate on the ballot, including uncontested contests where we report under vote as the second candidate." *Id*. at p. 5. In short, this means that Latinos are politically cohesive in SBISD elections and support differing candidates from the Anglo majority. In addition, the regression found that white voters in SBISD elections support white candidates. This is also called racial polarization.

Dr. Stein also found that white majority "votes sufficiently as a bloc to enable it . . . to defeat the minority's preferred candidate." Specifically, he found that the "dominant races and ethnicities among SBISD voters are White (majority) and Hispanic (minority)." Stein Report, p. 4. This finding is supported by U.S. Census data, as there are 60,978 white residents of voting age in SBISD compared to 51,384 Latinos of voting age. Dkt 27, p. 3. In addition, he found that "Hispanic surname candidates are identified as the minority-preferred candidate." *Id*.  As a result

of racially polarized elections, a minority-preferred candidate has never won election in SBISD. This is sufficient to meet the third *Gingles* precondition.

In defense of the at-large system of SBISD elections, Defendants offer no evidence or argument that negates Dr. Stein's opinion. Likewise, Morace offers no evidence that the expert report by Dr. Stein is not supported by evidence or science. Instead, Morace suggests that the expert testimony by Drs. Stein and Tijerina is inadmissible hearsay along with asserting other purported defects. Dkt 33 at ¶ 6. But Morace apparently is unaware that under both the Federal rules and 5th Circuit precedent, Plaintiff may support her application, and this Court may rely upon affidavits, hearsay, and otherwise inadmissible evidence, when granting preliminary relief. FED R. CIV. P. 43 ("When a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions. . . . "); *Federal Sav. & Loan Ins. Corp. v. Dixon* 835 F.2d 554, 558 (5th Cir. 1987)("[a]ffidavits and other hearsay materials are often received in preliminary injunction proceedings. The dispositive question is not their classification as hearsay but whether, weighing all the attendant factors, including the need for expedition, this type of evidence was appropriate given the character and objectives of the injunctive proceeding."(quoting *Asseo v. Pan American Grain Co.,Inc.,* 805 F.2d 23, 26 (1st Cir. 1986)). "In presiding over a preliminary injunction hearing, a district court may 'give even inadmissible evidence some weight when it is thought advisable to do so in order to serve the primary purpose of preventing irreparable harm before a trial can be held[.]'" *Arnold v. Barbers Bill Indep. Sch. Dist*., 479 F. Supp. 3d 511, 519 (S.D. Tex. 2020)(Hank, J.).

Next, Morace attacks the elections considered by Dr. Stein, suggesting incorrectly that endogenous elections (elections for the same office at issue within SBISD) are not the best evidence to demonstrate the presence of the *Gingles* preconditions. Dkt. #33 at ¶ 6. Morace is wrong. "Endogenous elections, or contests within the jurisdiction and for the particular office that

is at issue, are ***more*** probative than exogenous elections." *Rodriguez v. Harris County*, *Texas*, 964

F. Supp. 2d 686, 759 (D. Tex. 2013) (emphasis added); *see also Cisneros v. Pasadena Indep. Sch.*

*Dist.*, No. 4:12-CV-2579, 2014 U.S. Dist. LEXIS 58278 *25, 2014 WL 1668500 (S.D. Tex.

2014)(Ellison, J.) ("recent interracial endogenous elections are the most probative elections" for

analyzing *Gingles* II and III"). Morace  suggests that Plaintiff's failure to analyze other exogenous

and largely partisan elections renders Dr. Stein's finding of racially polarized finding "factually

insufficient to support injunctive relief." But neither Morace nor Defendants provide any counter

factual evidence that contradicts or would disprove Dr. Stein's uncontroverted report. Finally,

Morace asserts (again without analysis, evidence, affidavits, election results, or any proof

whatsoever) that racial polarization purportedly is disproven because one Anglo candidate in one

election, in one election precinct, won a majority of the vote (by 5 votes) in an area that is 90%

Hispanic. Without analyzing the actual voters in that election, their locations, and their ethnicities,

this bald allegation says nothing about whether the Anglo candidate prevailed due to racially

polarized voting among the actual voters in that election and does not contradict or offset the

weight of evidence provided by Dr. Stein, who analyzed multiple election contests over 6 years in

SBISD. Plaintiff has met her burden in proving the *Gingles* II and III factors.

**C.  SBISD does not need more time to respond.**

SBISD has made the extraordinary claim that it needs more time to be able to dispute the

substantive merits of the Plaintiff's preliminary injunction application. That claim defies reality.

> ➤ SBISD has long known that in its entire 75 year history, not one person of color or
> member of any minority group has ever been elected or appointed to be a trustee.

> ➤ SBISD has known since at least January 13, 2020 that it has had a burgeoning minority
> voting population that is not represented on its board and that it must consider whether
> to change its electoral system. On that day, its counsel made a detailed public
> presentation to the SBISD board titled "Electoral Systems in Texas."  The Board was
> advised that the "next steps" would include: "Understand[ing][ Pros and Cons of
> Alternative Electoral Systems; a "Deeper Dive into Each Electoral System;
> "Determi[ing] Electoral Change Desired, if any; "Receiv[ing] and Analyzing] Census

13

Data (April 2021);  and "Establish[ing] Timeline and Process for Implementing Electoral Change, if any."

➢ All of the information SBISD requires to make a decision about how to comply with the federal Voting Rights Act (and whether Plaintiff has in fact proven her entitlement to relief) is in the district's possession because SBISD conducts its own trustee elections and it is well aware of the racial demographics of the students, parents and voters in the district and the entire voting history in its trustee elections.

➢ Yet, to date, the District has not taken any action to redress the total absence of racial and ethnic diversity on its board, instead defending its conduct based upon the sincerity of the conviction of the members of its entirely White board of trustees that they are genuinely concerned about the welfare of every child in the district, despite the profound dissimilarity between their races, ethnicity, socio-economic backgrounds and geographic location of their residences, and those characteristics of the district's significant Hispanic or Latino population.

➢ The intransigence of the SBISD board, no matter how sincerely felt, in the face of the incontrovertible (and uncontroverted) proof in Plaintiff's application for preliminary injunctive relief, necessitates Court action.

➢ Although the District acknowledges the wisdom of postponing  its May trustee election to allow this Court to conduct a trial on the merits, it nevertheless  denies the obvious mathematical fact that its elections are racially polarized and that its election system likely disenfranchises a growing Latino population. Its request for more time to dispute the merits of Plaintiff's Voting Rights Act claim should be rejected.

## III.   CONCLUSION

SBISD recognizes the need for this Court to decide the Voting Rights Act issue "once and for all." That apparently is why it has agreed that moving the May 2022 trustee election is the best choice for the district to ensure the swift resolution of this matter one way or another.  Morace argues that it is too late to move this election, despite the fact that SBISD moved its election date as recently as 2020 and at a time much closer to the May 2020 election, which caused no voter confusion or election maladministration. In this election cycle, no ballots have been printed or mailed and no votes have been cast.  No legitimate basis therefore exists to deny a preliminary injunction based upon the argument that it is too close to an election that is months in the future.

Plaintiff has made a substantial showing that SBISD's "at-large" election system likely violates Section 2 of the VRA.  The facts  that prove  up this violation of federal law are

uncontroverted by any evidence offered by any litigant. The data and analysis make clear that SBISD's elections are racially polarized and the Latino population of SBISD is sufficiently large and geographically compact to constitute a majority of at least one single member district. The evidence proffered by the Plaintiff on the "totality of circumstances" is likewise unrebutted. Texas and SBISD have a troubling history of racial and ethnic discrimination. The lingering of effects of that discrimination have harmed the Latino population of SBISD such that it has limited their political access to the policy decision-making of the school district. Against the great weight of this expert testimony neither Defendants nor Morace offer any rebuttal. Instead, Morace simply engages in misdirection and hyperbole, which this Court properly should disregard.

It is neither "too soon" nor is it "too late" for this Court to rule on Plaintiff's application for preliminary injunction. It is precisely the right time to do so.

Plaintiff respectfully requests that this Court postpone the May 2022 SBISD Trustee election until November 2022, which SBISD concurs is in its best interest. If this Court fails to act, SBISD will conduct yet another election in which the voting rights of its Latino citizens under the United States Constitution and Voting Rights Act are violated.

**DATED**: February 22, 2022

Respectfully submitted,

By: /s/ Barry Abrams
Barry Abrams
State Bar No. 00822700
SD Tex. Bar No. 2138
BLANK ROME LLP
717 Texas Avenue, Suite 1400
Houston, Texas 77002
(713) 228-6601
(713) 228-6605 (fax)
babrams@blankrome.com

15

THE LAW OFFICE OF MARTIN GOLANDO, PLLC
Martin Golando
Texas Bar No. 24059153
martin.golando@gmail.com
2326 West Magnolia
San Antonio, Texas 78201
Telephone: (210) 471-1185
Martin.Golando@gmail.com

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a true and correct copy of the foregoing Plaintiff's Reply in Support of Application for Preliminary Injunction was sent via email to the following counsel of record on February 22, 2022:

Charles Crawford
ccrawfdord@abernathy-law.com
Lucas Henry
lhenry@abernathy-law.com

Andy Taylor
ataylor@andytaylorlaw.com

*/s/   Barry Abrams*
Barry Abrams