United States District Court
Southern District of Texas
**ENTERED**
March 13, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VIRGINIA ELIZONDO, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-01997 |
| | § | |
| SPRING BRANCH INDEPENDENT SCHOOL DISTRICT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM AND ORDER**

Before the Court is the plaintiff's, Virginia Elizondo, application for a preliminary injunction [DE 27], the defendants', Spring Branch Independent School District, Chris Gonzalez, Pam Goodson, Karen Peck, Josef D. Klam, Minda Caesar, Chris Earnest, and J. Carter Breed, in their official capacity as members of the Board of Trustees of Spring Branch ISD ["SBISD"], response [DE 32], Jenny Moracee's, amicus curiae, response and reply [DE 33], and the plaintiff's reply in support of her application for a preliminary injunction [DE 34].

The parties determined that the matter should be presented to the Court on the briefs and the record, therefore, no testimonial evidence was received beyond that included in any filed documents.

**I.    GENERAL BACKGROUND**

SBISD is an independent school district that elects its seven-member school board "at large".  Simply stated the trustees are elected by the voters within the boundaries of SBISD.  In this current election year – 2022 – "places", place 5, 6 and 7, are open to be filed in the upcoming election that began on January 19, 2022, and concludes on February 18, 2022, for the May 2022 primary election.

According to the plaintiff, the total population of SBISD is 183,364 residents.  That population is divided into four general categories:  Hispanics 40.7%; Caucasian 41.7%; Asian, 10.2%; and African-American 6.6%.  SBISD is divided into several enrollment zones.  Four of the election precincts and middle school enrollment zones are north of Interstate Highway 10 and are "overwhelmingly populated by Hispanic students."  The majority of the student population of enrollment districts are south of Interstate Highway 10 and are Caucasian.

**II.    CONTENTIONS OF THE PARTIES**

  *A.    The Plaintiff's Contentions*

The plaintiff brings this Section 2 Voting Rights Act ["VRA"] challenge to SBISD's "at large" method for electing members to its board of trustees.  The plaintiff contends that no minority candidate for a place on the board of trustees has even been elected to serve in spite of the Census figures that show that the non-Caucasian population of SBISD is more than 55% of the total voting population.

The plaintiff is Hispanic, a registered voter and currently a candidate for one of the three open trustee places on the May 2022 ballot.  Nevertheless, the plaintiff seeks a preliminary injunction to postpone the SBISD election.  She asserts that: (a) to permit the current election to go forward, she will suffer a violation of her right to cast a meaningful vote and effectively

participate in the political process; (b) she will likely succeed on the merits establishing that the current voting scheme violates Section 2 of the VRA; (c) the Hispanic population is sufficiently large and compact as to constitute a majority in a single member district; (d) the totality of the circumstances dictate that SBISD's at-large system violates the VRA; and (e) the balance of equities and public interest tip in favor of granting a preliminary injunction.

  B.  *The SBISD's Contentions*

SBISD has chosen not to respond to the merits of the plaintiff's case at this time due to several factors: (a) there is ongoing discovery pursuant to the Court's Scheduling Order; (b) SBISD will "fully and vigorously defend the merits of the plaintiff's claim at the upcoming bench trial scheduled for June 6, 2022; (c) SBISD is not opposed to a delay until the second authorized date for the election of school board members available in November of 2022; (d) allowing the current board to remain in place will best assure the continuity of SBISD's defense in this suit; and, (e) in light of the discovery schedule in place, to require the parties to meet and confer in order to produce a "plan", even if appropriate, would be premature.

  C.  *The Amicus Curiae Contention*

The Amicus opposes both the plaintiff's motion for a preliminary injunction and SBISD's suggestion that the May 2022 election be postponed labeling it a "retreat and a refusal to engage the plaintiff's claim on the merits. As well, the amicus questions the timing of the plaintiff's request for injunctive relief. With discovery nearly completed and scheduled to conclude on March 30, 2022, with a June trial, on the horizon and, to weigh in on the election outcome, the Court would be engaged in judicial overreach – citing to Fifth Circuit and Texas Supreme Court precedent that cautions against the practice.

### III. THE LEGAL STANDARD IN A VOTING RIGHTS ACT CASE

Section 2 of the Voting Rights Act of 1965, as amended provides:

(a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color.

(b) A violation of subsection (a) of this section is established if, based on the totality of the circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered; provided, that nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

Title 52 U.S.C. § 10301.

In order for the plaintiff to prevail on her application for a preliminary injunction, she must establish: (a) that the minority group(s) population is sufficiently large and geographically compact as to constitute a majority in a SBISD enrollment zone(s); (b) the minority group(s) must be politically cohesive and vote in a block; and, (c) the Caucasian majority must vote sufficiently as a block to enable it, in the absence of special circumstances, to defeat the minority's preferred candidate. This test is commonly referred to as the Gingles test. *Thornberg v. Gignlas*, 478 U.S. 30, 34 (1986).

Assuming that a plaintiff meets the *Gingles* requirements, a plaintiff must also establish that the minority group(s) has less opportunity than Caucasian members of the electorate to participate in the political process and to elect representatives of their choice. *See Johnson v. DeGrandy*, 52 U.S. 997, 1011 (1994).

In this respect, a Court must view the evidence from a "totality of the circumstances" taking into consideration a myriad of factors, some standard, others unique to the circumstances, to determine whether the at-large electoral structure operates in such a manner as to minimize a minority group(s) ability to elect a preferred candidate.

## IV. ANALYSIS AND DISCUSSION

The Court is of the opinion that the plaintiff's application for a preliminary injunction should be denied. While a Court should be, and rightfully so, reluctant to permit an election to go forward where the electoral scheme or structure may be discriminatory, it must be equally reluctant to interfere in a political process where the evidence is not sufficiently clear that postponing the current and imminent election for the purpose of changing the structure of SBISD's electoral process may not bolster the minority group(s) ability to elect a preferred candidate. *See Johnson,* 512 U.S. at 1011. The plaintiff is a candidate under the current at-large system, along with at least eight (8) other candidates. The outcome of this election may provide evidence for this case on the issue of whether it is legally appropriate to draw a single-member district even though six of the seven places would remain majority Caucasian.

The issue of the plaintiff's timing in seeking an injunction is also a concern. The plaintiff's application was filed on the eve of the election in midst of discovery and within a few months of the June trial setting. It cannot be overstated that urgency in correcting a violation of the VRA is important. However, granting an injunction at this point may be more harmful to the voting rights of all citizens of SBISD. The election has already commenced as the application process ended on February 18, 2022, before the SBISD and Amicus filed responses. A move by this Court, to nullify an election already in process, would require an intrusion into the political process that may alter the SBISD's election structure, but severely damage the process necessary to correct an

alleged harm. *See Tex. All. For Retired Ams. V Hughs,* 976 F.3d 564, 567 (5th Cir. 2020), *see also In re Hotze*, 627 S.W.3d 642, 646 (Tex. 2020).

In light of the totality of the circumstances, the Court determines that the plaintiff's application for a preliminary injunction should be denied. Further, the Court rejects SBISD's proposal to delay the May 7, 2022, election as the political process has already commenced. Therefore, the plaintiff's application for a preliminary injunction is Denied without prejudice.

It is so Ordered.

SIGNED on March 11, 2022, at Houston, Texas.

_____
Kenneth M. Hoyt
United States District Judge