IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VIRGINIA ELIZONDO, | § § | |
| *Plaintiff,* | § § | |
| vs. | § § § | Civil Action No. 4:21-cv-01997 |
| SPRING BRANCH INDEPENDENT SCHOOL DISTRICT, CHRIS GONZALEZ, PAM GOODSON, KAREN PECK, JOSEF D. KLAM, MINDA CAESAR, CHRIS EARNEST, J. CARTER BREED, in their official capacity as members of the Board of Trustees of Spring Branch ISD | § § § § § § § § § § | |
| *Defendants.* | § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56 and this Court's order [Dkt. 22], Defendants Spring Branch Independent School District and the members of its Board of Trustees in their official capacities (collectively, "SBISD") file the following motion for summary judgment.

## I.
## INTRODUCTION

1.1 This is a Voting Rights Act case. Plaintiff Virginia Elizondo has sued SBISD alleging that its at-large system for electing the members of the school district's board of trustees violates Section 2 of the Voting Rights Act, 52 U.S.C. §10301, *et seq.* See Dkt. 3.

1.2 "Under *Gingles*[1], plaintiffs challenging an at-large system on behalf of a protected class of citizens must demonstrate that (1) the group is sufficiently large and geographically compact to constitute a majority in a single-member district; (2) it is politically cohesive; and (3) the white

---

[1] *Thornburg v. Gingles,* 478 U.S. 30 (1986).

majority votes sufficiently as a bloc to enable it usually to defeat the minority's preferred candidate." *LULAC v. Clements,* 999 F.2d 831, 849 (5th Cir. 1993) (en banc). Critically, "[f]ailure to establish all three of these elements defeats a Section 2 claim." *Gonzalez v. Harris County,* 601 Fed. Appx. 255, 258 (5th Cir. 2015).

1.3   As will be detailed below, SBISD moves for summary judgment on Plaintiff's Section 2 claim because as a matter of law she cannot carry her burden to satisfy the first required *Gingles* precondition – numerosity and compactness.

## II.
## Statement of Issue to be Decided

2.1   Whether Plaintiff can carry her burden to satisfy the first *Gingles* precondition required for a viable claim under Section 2 of the Voting Rights Act. As a matter of law, she cannot.

## III.
## Summary Judgment Evidence

3.1   Exhibit 1 – Expert report of Robert M. Stein dated January 20, 2022.

Exhibit 2 – Deposition of Robert M. Stein taken February 9, 2022.

## IV.
## Statement of Undisputed Facts

4.1   According to this Court's order [Dkt. 22]:

    a.   Plaintiff's experts must be designated and reports furnished by January 10, 2022 (extended until January 20, 2022 by agreement of the parties).

    b.   Defendants' experts must be designated and reports furnished by February 10, 2022 (extended until February 22, 2022 by agreement of the parties).

    c.   Discovery must be completed by March 30, 2022.

    d.   Dispositive motions are due by April 20, 2022.

4.2   Consistent with the Court's order, Plaintiff has designated Dr. Robert Stein as her sole expert witness on the three required *Gingles* preconditions, including the first *Gingles*

precondition. Dr. Stein submitted his expert report on January 20, 2022 (Exhibit 1 hereto). Following receipt of Dr. Stein's report, on February 9, 2022, SBISD took Dr. Stein's deposition (Exhibit 2 hereto).

4.3  Relevant to this motion for summary judgment, Dr. Stein testified at his deposition that:

   a.   He is opining on all three *Gingles* preconditions, including the first precondition. Stein Deposition, pp. 8-10.

   b.   There was nothing else he needs or wants to do to render his expert opinion. Id., pp. 12-13.

   c.   Table 1, page 8 of Dr. Stein's report contains his proposed illustrative district/map that attempts to satisfy the first *Gingles* precondition. This is the only proposed illustrative district/map that he has attempted to create. Id., pp. 49-50, 54-55.

   d.   In Dr. Stein's proposed majority-minority illustrative district (District One), the Hispanic CVAP (citizen voting age population) is 52.8% with a margin of error of +/- 5.9% -- meaning that the Hispanic CVAP of his proposed district could be less than 50%. Id., pp. 28-29.[2]

   e.   Dr. Stein "didn't really do very much" to create his illustrative district/map. "I didn't draw a map here. I worked with the map I was given"; "I started with the [map of the] seven districts that Spring Branch ISD has identified as polling places." Id., pp. 20, 49-51.[3]

   f.   Because Dr. Stein "didn't really do very much" to create his illustrative district/map, he cannot adequately explain it. For example, (1) he cannot explain the reason for the jut (carve-out) between his proposed District One and District Seven that is not found on the original SBISD attendance zone/polling place maps that he used: "Those maps that were shared with – with me by Mr. Golando [Plaintiff's counsel], and they may have reflected a slight change in the makeup, the deviation from the current enrollment districts. I had not noticed that before." (Id., pp. 56-57); (2) he also cannot explain the carve-out between proposed districts Five and Six: "Again, I assume that that was a change that Mr. Golando [Plaintiff's counsel] had made to adjust boundaries for the demonstrative plan" (Id., p. 57); and (3) he further cannot explain why his proposed District Six is the only proposed district that is both north and south of I-10 (Id., p. 57).

---

[2] Dr. Stein does not know, and has no opinion, if it would have been possible to draw a Hispanic majority CVAP district prior to the recent 2020 census. Stein Deposition, pp. 52-53.

[3] The map of SBISD's middle school attendance zones (which also show its polling places) that Dr. Stein used is based on middle school students, not citizen voting age population.

g. Critically, *he did not consider "traditional districting principles"* when creating his illustrative district/map ("I mean, I don't know what those conditions would be."). By ways of example, he did not respect neighborhoods and subdivisions and did not try to keep them intact, nor did he take into account or respect census blocks. He also did not take into account one person, one vote. Id., pp. 54-55.

# V.
# ARGUMENT

## A. Summary Judgment Standard

5.1 Summary judgment is proper when there is no genuine dispute of material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A defendant who seeks summary judgment on a plaintiff's claim must demonstrate the absence of a genuine dispute of material fact by either (1) submitting summary judgment evidence that negates the existence of a material element of the plaintiff's claim, or (2) showing there is no evidence to support an essential element of the plaintiff's claim. *Celotex*, 477 U.S. at 323-25; *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).

## B. Plaintiff Cannot Satisfy the First *Gingles* Precondition

5.2 "Satisfying the first *Gingles* precondition – compactness – normally requires submitting as evidence hypothetical redistricting schemes in the form of illustrative plans." *Gonzalez*, 601 Fed. Appx. at 258. "The proposed plan must [ ] encompass a district with a greater-than-50-percent-voting-age minority population." *Id.* "As the Supreme Court has made clear, the 50% threshold is a bright line test." *Benevidez v. Irving Indep. Sch. Dist.*, 690 F.Supp.2d 451, 457 (N.D. Tex. 2010).

5.3 According to the Fifth Circuit, "under *Gingles, compactness requires accounting for traditional districting principles* such as maintaining communities of interest and traditional boundaries." *Gonzalez*, 601 Fed. Appx. at 258 (emphasis added). Importantly, *"those principles must be considered when analyzing that aspect of the first Gingles precondition." Id.* at 259. See also *Fairley v. Hattiesburg*, 584 F.3d 660, 670 (5th Cir. 2009) ("Courts are expected, in evaluating

redistricting plans, to take into account 'traditional districting principles such as maintaining communities of interest and traditional boundaries.'"). In *Gonzalez*, the district court ruled that the plaintiffs presented a geographically compact hypothetical district with a greater than 50% Hispanic voting-age minority population. However, notwithstanding this ruling, the plaintiffs nevertheless lost at the district court level because "they failed to satisfy the compactness precondition because their plans did not respect traditional districting principles." *Gonzalez*, 601 Fed. Appx. at 258. On appeal, the "Plaintiffs contend[ed] the court committed reversible error on two grounds: traditional districting principles must not be considered in assessing compactness…" The Fifth Circuit disagreed, affirming the district court and holding that "Plaintiffs' challenge to the use of traditional districting principles in ruling on compactness fails; those principles ***must be considered*** when analyzing that aspect of the first *Gingles* precondition." Id. at 258-59 (emphasis added).

5.4    Plaintiffs cannot simply "ignore traditional districting principles such as maintaining communities of interest and traditional boundaries." *Sensley v. Albritton*, 385 F.3d 591, 598 (5th Cir. 2004). "Thus, to evaluate compactness, the Court considers the dispersion of the relevant minority population, the shape of the proposed district (as measured by a visual evaluation and by statistical measures of compactness) and the causes underlying its shape, and the district's compliance with traditional redistricting principles (such as respect for communities of interest and traditional boundaries)." *Perez v. Abbott*, 274 F.Supp.3d 624, 639 (W.D. Tex. 2017); see also, *Perez v. Abbott*, 253 F.Supp.3d 864, 911 (W.D. Tex. 2017) (same).

5.5    Traditional principles of "drawing districts and well-established demographic considerations" include the following: "First, districts should generally have equal total population. For municipalities, the population size of each district should not deviate from the

others by more than 10%. Second, districts must comply with legal requirements, such as the Equal Protection Clause. And third, districts must be drawn consistent with existing official political boundaries (along city or county lines) and informed geographic boundaries, such as neighborhoods or communities that share a common interest." *Benavides v. City of Irving*, 638 F.Supp.2d 709, 714 (N.D. Tex. 2009); see also *Perez*, 253 F.Supp.3d at 911 (traditional districting principles include "contiguousness, population equality, maintaining communities of interest, respecting traditional boundaries, and providing protection to incumbents"). "In assessing whether a district complies with traditional districting principles, a court should also determine whether the hypothetical district respects 'communities defined by actual shared interests.' If race is the only 'common thread' that binds certain areas together, the district cannot be said to respect communities of interest." *Terrebonne Parish Branch NAACP v. Jindal*, 274 F.Supp.3d 395, 424 (M.D. La. 2017) (quoting *Miller v. Johnson,* 515 U.S. 900, 916, 920 (1995)).

5.6     Here, Dr. Stein's proposed illustrative district/map is not a legally adequate remedial plan, and is insufficient as a matter of law to meet Plaintiff's burden to "prove by a preponderance of the evidence that all of the *Gingles* preconditions [are] satisfied." *LULAC #4552 v. Roscoe Indep. Sch. Dist.,* 123 F.3d 843, 846 (5th Cir. 1997).

5.7     First, based on the admitted +/- 5.9% margin of error, the Hispanic CVAP in Dr. Stein's proposed majority-minority district is, in reality, as low as 46.9% -- well below the 50% bright line threshold. Because of this margin of error, it is more likely than not that Dr. Stein's proposed district has less than a 50% Hispanic CVAP, and therefore as a matter of law fails to satisfy Plaintiff's burden to prove the first *Gingles* precondition by a preponderance of the evidence.

5.8     In addition, contrary to what is required by the Fifth Circuit, Dr. Stein admittedly ***did not consider traditional districting principles*** when he created his illustrative district/map. This means

that Dr. Stein's methodology in creating his proposed remedial plan is legally insufficient, and therefore cannot be used to satisfy Plaintiff's burden to prove the first *Gingles* precondition. Again, as mandated by the Fifth Circuit, "[traditional districting] principles ***must be considered*** when analyzing that aspect [compactness] of the first *Gingles* precondition." *Gonzalez,* 601 Fed. Appx. at 258-59.

5.9     Of course, a court should exclude the testimony of an expert if it is not reliable. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 592-93 (1993). An expert witness may be qualified and highly credible, but his conclusions may be based on unreliable methodology. An opinion based on unreliable methodology and/or data is no more than "subjective belief or unsupported speculation." *Daubert,* 509 U.S. at 590. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 244 (5th Cir. 2022). As stated by the Fifth Circuit, "[e]ven on a motion for summary judgment, we are not required to take heed of an ill-reasoned expert opinion." *Chen v. City of Houston,* 206 F.3d 502, 508 (5th Cir. 2000). See also *General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."). Here, not only did Dr. Stein not take into account or analyze traditional districting principles (which is fatal to meeting the first *Gingles* precondition), he did ***so little*** to create his only proposed district/map that he cannot explain the methodology used. Dr. Stein's opinion testimony regarding the first *Gingles* precondition is unreliable and should not be considered as evidence sufficient to meet this precondition and avoid summary judgment.

5.10 Because the first *Gingles* precondition is a threshold issue which Plaintiff cannot meet, there is no need for this lawsuit to go further. Because this failure is dispositive, and because the relevant scheduling deadlines have passed, the Court should save itself and the parties, which include a public school district, the time and expense of an unnecessary trial by granting summary judgment and ending this litigation.

## VI.
## Conclusion and Prayer

6.1 For these reasons, pursuant to Fed. R. Civ. P. 56, Defendant SBISD asks the Court to dismiss Plaintiff's Voting Right Act claim for failure to satisfy the first *Gingles* precondition.

Respectfully submitted,

ABERNATHY, ROEDER, BOYD & HULLETT, P.C.

*/s/Charles J. Crawford*
**Charles J. Crawford**
State Bar No. 05018900
SD Tex. Bar No. 335298
ccrawford@abernathy-law.com
**Lucas C. Henry**
State Bar No. 24101901
SD Tex. Bar No. 3727871
lhenry@abernathy-law.com
1700 Redbud Blvd., Suite 300
McKinney, Texas 75069
Telephone: 214-544-4000
Facsimile: 214-544-4040

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

On April 20, 2022, I electronically served the foregoing on counsel for Plaintiff and amicus by the Court's ECF system.

/s/*Charles J. Crawford*
Charles J. Crawford