IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| VIRGINIA ELIZONDO,<br>    *Plaintiff*,<br><br>v.<br><br>SPRING BRANCH INDEPENDENT<br>SCHOOL DISTRICT, *ET AL*.,<br><br>    *Defendants*. | §<br>§<br>§<br>§<br>§     Civil Action No. 4:21-CV-01997<br>§<br>§<br>§<br>§ |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO STRIKE SUPPLEMENTAL EXPERT REPORT AND TO LIMIT EXPERT TESTIMONY**

Plaintiff Virginia Elizondo responds to Defendants' attempt to preclude the Court from hearing the bases for the opinions of one of her experts, Dr. Robert M. Stein. Plaintiff respectfully requests that the Court deny Defendants' motion for the following reasons:

**I.**
**INTRODUCTION**

This lawsuit concerns a matter of substantial importance to the public: whether the "at-large" method of electing the members of the Spring Branch Independent School District ("SBISD") violates the Voting Rights Act of 1965, 52 U.S.C. §10301 ("VRA").

Plaintiff has retained what the District's own expert acknowledges is one of the nation's foremost social science experts concerning voting and election issues, Rice Professor Dr. Robert Stein, former Dean of its School of Social Sciences.[1] Dr. Stein opined in his timely January 20, 2022

---

[1] According to Defendants' expert, Dr. John Alford, Dr. Stein has an "excellent" reputation as a scholar, is "very well-respected," his work "has always ended up being important work, widely recognized work," who "always ends up producing work that is among the best of the work that's done" in the areas in which he has worked, and "is as skilled as anybody doing work in social sciences today." Deposition of John Alford, Ph.D. ("Alford Depo.") at 44/13 – 46/12. A copy of the Alford deposition is attached as **Exhibit D**.

Dr. Stein:
- Has designed, constructed or drawn election district maps and/or is designing voting district maps for municipal governments and school districts in Texas, including Houston Independent School District, Fort Bend Independent School District, Lancaster Independent School District, Goose Creek Independent School District, Houston Community College, Lone Star College, San Jacinto Community College, and

1

expert report that each of the *Gingles* preconditions has been met.[2] Dr. Stein has been transparent and forthcoming concerning his opinions and the factual and analytical bases that underlie them. This includes providing the District and its counsel with ample notice of his opinions – which he has not changed or supplemented.

Defendants on the other hand, have been less candid. As discussed in greater detail in Plaintiff's Motion to Compel, Defendants and their expert (Dr. John Alford) previously conducted their own analyses of racially polarized voting in SBISD trustee elections which they have withheld from Plaintiff and this Court. In so doing, Defendants are attempting to deny this Court of the opportunity to confirm whether, in fact, Defendants and their own expert have themselves independently concluded that Plaintiff's VRA claims are meritorious.

Apparently for that reason, when Defendants' expert Alford was deposed, he did not controvert Dr. Stein's opinions, instead admitting that he (Alford) does not disagree with the results

---

the City of Baytown. Deposition of Robert M. Stein, Ph.D. ("Stein Depo.") at 19/19 -22/14, a copy of which is attached as **Exhibit C**.
- Trained and served on the U.S. Bureau of Census advisory board and trained and taken courses on geographical information systems. *Id*. 21/18-22.
- Is knowledgeable about elections and election procedures such that he can work with the voting date provided by county and election administrators. *Id*. at 21/23 – 22/1.
- Has been advised by the school district attorneys he has worked for regarding relevant rules and principles for drawing election maps. *Id.* 21/9-17.

[2] The Report of Robert M. Stein, Ph.D., is attached as **Exhibit A** ("Stein Report") and Supplement to Expert Report of Robert M. Stein, Ph.D., is attached as **Exhibit B** ("Stein Supplement"). In compliance with the requirements of FED. R. CIV. P. 26(e)(2), before the discovery cutoff, and well before the date for pretrial disclosures per Rule 26(a)(3) and rebuttal evidence per Rule 26(a)(2)(D)(ii), Dr. Stein timely updated his deposition testimony and the District's counsel has been offered the opportunity to depose him about the Supplement. To measure the degree to which there is racially-polarized voting in the District trustee elections, Dr. Stein conducted a statistical regression analysis of the proportion of vote cast for the white candidate, the minority-preferred candidate and the proportion of Hispanic and white vote in each voting precinct for each trustee candidate. Stein Depo. at 37/1-25. Although he used what is known as "ecological inference to impute the racial and ethnic membership of each voter [and] "there's some debate about whether or not this is in fact, ecological inference," he did not initially "run an EI ["ecological inference'] analysis as a confirmation or double-check" on the statistical analysis he performed. Stein Depo. at 46/14 – 47/ 14.

2

of the analysis Dr. Stein performed,[3] that the Stein analysis was based upon sufficient data,[4] that Dr. Stein had applied the principles and analytical methods he used reliably,[5] that Stein's findings are statistically significant,[6] and that Stein's opinions are "not inconsistent with" and "not incompatible with" the results of analyses that Alford and Defendants have already performed, but are concealing from Plaintiff and the Court.[7]

So what, the Court appropriately may ask, is Alford's criticism of the Stein report and its conclusions? According to Alford, while conceding that "the way things are usually done doesn't always mean it's the right way or the best way or even a better way to do things," he complains that the method that Dr. Stein used to analyze the relevant election data is "non-standard" and "not the

---

[3] After refusing to produce the results of his own analyses of polarized voting in SBISD and acknowledging that he *does not disagree* with the results of Dr. Stein's analysis, Dr. Alford observed that Dr. Stein's methodology is "not the way this is usually done," and concedes that "the way things are usually done doesn't always mean it's the right way or the best way or even a better way to do things." Alford Depo. at 75/21 – 76/8. With respect to Dr. Stein's expert opinion in this case, Dr. Alford states:

- It is "relevant to the case at hand";
- Dr. Stein is an "expert or top scholar in analyzing voter behavior";
- "Racially polarized voting analyses using ecological regression rest on [a] scientifically reliable foundation";
- Use of an ordinary least squares technique is a "scientifically verifiable way to evaluate racially polarized voting," is a "technique generally accepted in the social scientific community," been "subjected to peer review and publication," and can be "tested and verified." Alford Depo. at 46/13 - 48/3.

[4] Dr. Alford admits that the data Dr. Stein used in his analysis is "probably enough to answer the question' and is "sufficient," Dr. Stein has applied the principles and methods he utilized reliably to the facts of the case "within the meaning of statistical reliability," and that he (Alford) does not "disagree with the results of the analysis he did as it is." Alford Depo. at 48/17 – 50/7.

[5] *Id.*

[6] Dr. Stein's report shows findings that are statistically significant "by social science standards." Alford Depo. at 73/1-6.

[7] Dr. Stein's analysis and conclusions are "not inconsistent with [Alford's] view of what you likely would see if you did what he did. So I guess it's not inconsistent with -- I don't think it demonstrates in an appropriate manner that there is legally significant racially polarized voting in SBISD, but it's a finding that certainly is not incompatible with that." Alford Depo. at 70/24 – 71/5. And when asked whether Dr. Stein's conclusions are incompatible with the EI or OLS analyses that Alford previously performed (and which Alford and SBISD have withheld), Alford conceded that "nothing in it [Dr. Stein's report] surprised me." Alford Depo. at 71/6-9.

way this is usually done."[8] Per Alford, the "way [it] is usually done," is the way that he (Alford) performed his still secret "ecological inference" or "EI" analyses. And, according to Alford, if Dr. Stein merely performed a more traditional EI analysis of the data that would be what Alford preferred and "all th[e] problems" Alford had with Stein's methodology "would be solved."[9]

In response to Dr. Alford's criticism and implicit invitation that Dr. Stein review the data in the manner Alford claims "it is usually done," Dr. Stein has done so. That *rebuttal* work did not cause Dr. Stein to change, modify or supplement any of the opinions stated in his January 20, 2022 report.[10] And Dr. Stein and Plaintiff have not "laid behind the log" engaged in any "gamesmanship" or "sandbagged" Defendant. Per FED. R. CIV. P. 26, *before* the discovery deadline in this case had expired, and months *before* trial, Dr. Stein promptly supplemented his previous deposition testimony to disclose to Defendants the additional work he had performed and he produced a written summary of that work which he titled a "supplement" to his report. Plaintiff also offered to re-produce Dr. Stein for deposition by Defendants on the supplemental work performed, but Defendants have never responded to that offer. Whether labeled as a "rebuttal" report or as a "supplement," Dr. Stein's

---

[8] After refusing to produce the results of his own analyses of polarized voting in SBISD and acknowledging that he *does not disagree* with the results of Dr. Stein's analysis, Dr. Alford observes that Dr. Stein's methodology is "not the way this is usually done," and concedes that "the way things are usually done doesn't always mean it's the right way or the best way or even a better way to do things." Alford Depo. at 75/21 – 76/8.

[9] Dr. Alford then voices the complaint that Dr. Stein's approach "attempts to ask too much in a single analysis when a more discrete analysis would solve almost all those problems and be a clearer result." And, tellingly, Dr. Alford concedes that if Dr. Stein simply performed a traditional ecological inference analysis (which Alford and the District have already done), that would be what Alford preferred and "[a]ll those problems would be solved." Alford Depo. at 76/9 - 25.

[10] Although the parties proposed and agreed that their experts could prepare and submit rebuttal reports, *see* Joint Discovery/Case Management Plan Under Rule 26(f) – Federal Rules of Civil Procedure at ¶10(F) [Doc. 18], the Court did not incorporate any deadline for rebuttal reports in its Order following Telephone Scheduling Conference Held on November 8, 2021 [Doc. 22]. Dr. Stein submitted his rebuttal report within 4 days after Dr. Alford testified about the subject. Alford was deposed on March 24, 2022 and Dr. Stein submitted his rebuttal report on March 28, 2022. *See* FED. R. CIV. P. 26(a)(2)(D)(ii), which provides for rebuttal reports within 30 days after the other party's disclosure: "[I]f the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure." Dr. Stein's supplemental report was a timely rebuttal under Rule 26(a)(2)(D)(ii).

report was timely and properly submitted.

Dr. Stein's opinions remain unchanged. They have not been "supplemented." But now the truth which Defendants and their expert are so assiduously trying to conceal cannot be denied – that is, if one analyzes the relevant election data as Alford has previously done and claims it should be done – the results confirm each of Dr. Stein's previous opinions about racially polarized voting in SBISD.

Big picture, here is what is going on.

The District and its own expert have in their possession, but refuse to produce, analyses which doubtless confirm what Plaintiff and her expert, Dr. Stein, have been asserting for months – namely, that SBISD trustee elections demonstrate racially-polarized voting. Defendants' own expert has admitted that Dr. Stein has performed a reliable and appropriate analysis that confirms the existence of racially polarized voting in SBISD elections. When one performs what Dr. Alford contends is a traditional analysis of voting data (*i.e.*, the way he claims to have done it in his secret analyses for the District), that approach confirms that Dr. Stein's original and unchanged opinions are correct. Defendants want to simultaneously imply that a failure to analyze electoral data in one traditional fashion should call into question Dr. Stein's conclusions and opinions, when that accusation is demonstrably false and likely contradicted by the analyses both Dr. Alford and the Defendants are concealing.

For the reasons stated below, the Court should deny Defendants' motion and instead assure that when it hears the evidence about the important issues of public concern in this case, it has the opportunity to be informed about the whole truth and to hear from both sides all of the important evidence bearing on the crucial issues.

## II.
## WHY THE COURT SHOULD DENY DEFENDANTS' MOTION TO STRIKE

1. **The purpose of the Federal Rules is to secure a just determination of every action. Fed. R. Civ. P. 1.**

This VRA case involves issues of substantial importance to the public. A just adjudication requires that the Court be afforded the opportunity to hear the whole truth concerning the history of racially polarized voting in SBISD. Unable to controvert the fundamentally sound opinions offered by what Defendants are forced to concede is an eminently well-qualified expert on voting and election matters, Defendants instead invite the Court to turn a blind eye to the truth they have long known but continue to try to conceal – that SBISD trustee elections have been racially polarized. In a startling show of bravado, Defendants simultaneously want this Court to allow them to conceal their own analyses, which doubtless confirm the presence of racially polarized voting, and then impugn Dr. Stein's opinions because he chose an alternative method which Defendants acknowledge is valid to evaluate the presence of racially polarized voting, and when that methodology was challenged, confirmed that it validates his original an unchanged opinions.

2. **Dr. Stein's Supplement is a timely rebuttal report under FED. R. CIV. P. 26(a)(2)(D)(ii).**

Dr. Alford was deposed on March 24, 2022. Dr. Stein submitted his "supplement" in rebuttal to Dr. Alford's criticism on March 28, 2022. Dr. Stein submitted his rebuttal within 4 days after Dr. Alford testified about the subject. The Stein supplement therefore was timely under FED. R. CIV. P. 26(a)(2)(D)(ii), which provides for rebuttal evidence within 30 days after the other party's disclosure: "[I]f the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure."

3. **Dr. Stein and Plaintiff exceeded their obligations under FED. R. CIV. P. 26.**

Rule 26 requires that a party and an expert supplement their disclosures or reports in the event

that some earlier disclosure was "incomplete or incorrect" and "if the additional . . . information has not otherwise been known to the parties during the discovery process or in writing." FED. R. CIV. P. 26(e)(1)(A). With respect to exert witnesses, "additions or changes . . . must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."

Here, based on the desire to be completely forthcoming, Dr. Stein provided Defendants with a written summary of the corroborative work he had performed after his deposition, which properly evaluated whether there was any merit to Dr. Alford's false and backhanded criticism of his original methodology -- and proved that there is no merit to any such complaint. This additional rebuttal information was provided to Defendants and their counsel on March 28, 2022 – before the discovery cutoff in the case. Dr. Stein also timely corrected his previous deposition testimony to notify Defendants and their counsel that he had performed this additional work. And Plaintiff's counsel offered to re-produce Dr. Stein for deposition regarding his supplemental report.

Dr. Stein's candid and timely disclosure of the additional rebuttal work he had performed – which confirmed, but in no way altered or modified his previous written opinions or his deposition testimony about those opinions – is and was entirely appropriate and forthcoming. It conforms with the spirt and letter of an expert's obligations under the rules. Under both FED. R. CIV. P. 26, and this Court's scheduling order, Dr. Stein arguably had no obligation to "supplement," because his report was not incomplete or incorrect and he did not alter or change a single opinion in his January 20, 2022 expert report. But whether any obligation existed to do so is irrelevant, because Dr. Stein opted for full and complete disclosure before the discovery deadline had expired and months before trial.

4. **To the extent that Dr. Stein's candor requires leave of court to authorize the Supplement to his expert report, good cause exists under Fed. R. Civ. P. 16 for the supplement.**

Plaintiff disagrees with Defendants' position that Dr. Stein's January 20, 2022 report was not

"full and complete" or that it did not contain the "lion's share" of his expert information.[11] Dr. Stein has not changed or altered a single opinion. He submitted a supplement in rebuttal to Dr. Alford's March 24, 2022 testimony.[12] Plaintiff similarly disagrees with Defendants' claim that supplementation is not authorized under Rule 26(e) unless it relies upon "information previously unknown or unavailable." To the contrary, Rule 16(b) grants this Court broad discretion with respect deadlines relating to the disclosure of expert witness testimony. *In re Savage Inland Marine,* No. 1:19-CV-536, 2021 U.S Dist. LEXIS 132326 at * 7-8 (E.D. Tex. Jan. 13, 2021)(citing *Barrett v. Atlantic Richfield Co.,* 95 F.3d 375, 380 (5th Cir.1996); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)).

Contrary to Defendants' argument, these are the operative principles that should guide this Court's decision:

- Expert opinions that are not properly disclosed may be excluded under FED. R. CIV. P. 26(a), however "[e]xclusion is not mandatory or automatic but, instead, a matter of the court's discretion." *State Auto Mut. Ins. Co. v. Freehold Mgmt.*, No. 3:16-CV-2255-L, 2019 U.S. Dist. LEXIS 5550532 at *14 (N.D. Tex. Mar. 31, 2019)(citing *Geiserman v. MacDonald,* 893 F.2d 787, 791 (5th Cir. 1990)).

- "In deciding whether to exercise its discretion and exclude an expert witness for failure to comply with Rule 26(a)(2), the court is guided by four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the potential of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Id*. at *14-15 (citing *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003)(citation omitted)).

- The standard for determining whether supplementation is permissible under Rule 26(e) does not, as Defendants argue, require that the expert have relied upon "information previously unknown or unavailable." "The text of Rule 26(e) does not require evidence to have been 'unavailable' for an expert to supplement his or her . . . report. FED. R. CIV. P. 26(e). Rather, the Court need only find good cause to amend the scheduling order to allow the late submission. FED. R. CIV. P. 16(b). Of course, the availability of evidence is relevant, and often highly persuasive, but it does not, on its own, foreclose the possibility of a late supplement under the plain text of Rule 26(e)." *In re Savage Inland Marine,* 2021 U.S. Dist. LEXIS at *12-13.

---

[11] *See* Motion to Strike at p. 3.

[12] *See* note 10 *supra*.

- "The purpose of supplementary disclosures [under Rule 26(e)] is just that – to supplement." *Id*. at * 13 (citing and quoting *Metro Ford Truck Sales, Inv. v. Ford Motor Co*., 145 F.3d 320 324 (5th Cir. 1998)).

The Court should find that, to the extent that Dr. Stein's additional work constitutes a "supplement" within the meaning of Rule 26(e)(2), good cause exists for allowing the supplementation because:

(a) the Supplemental Report is extremely important and useful to the Court as the trier of fact, since one of the threshold *Gingles* factors concerns an assessment of the extent to which racially polarized voting has occurred in previous SBISD trustee elections. Precluding Dr. Stein from demonstrating the fallacy in the Defendants' attempted criticism of his methodology would deprive the Court of the truth and instead allow Defendants by innuendo and implication to obscure the reality of racially polarized voting in SBISD elections. *See In re Savage Inland Marine*, 2021 U.S. Dist. LEXIS at *14 (supplemental report will assist court and court "has a substantial interest in allowing the presentation of this case to conform to the facts, especially because this matter will be tried to the bench.");

(b) use of the information in the Supplemental Report will not prejudice Defendants, who admit to having earlier conducted the same analysis, but instead will further reveal the truth about racially polarized voting in SBISD elections and preclude Defendants from misleading the Court by implying that an alternative analysis would yield a different result, when it would not;

(c) there can be no prejudice to Defendants because, according to Dr. Alford, they reportedly have already done the same analysis. In any event, any purported prejudice to Defendants from allowing Dr. Stein to explain the fallacy in their criticism of his chosen methodology – since the approach Dr. Alford apparently advocates simply confirms the correctness of Dr. Stein's conclusions – could be cured by Defendants deposing Dr. Stein about his additional work (which Plaintiff earlier offered and to which Defendants have made no response). Because the docket call and trial are more than six weeks away, no continuance of the trial setting is required; and

(d) Dr. Stein has a good explanation for conducting his more recent work since: (i) the Federal Rules authorize him to submit a rebuttal to Dr. Alford's deposition testimony; (ii) he earlier had no reason to believe that the Defendants and Dr. Alford would conceal the results of their earlier similar analyses, which doubtless should corroborate the validity of the Stein methodology and opinions; and (iii) as a matter of academic and legal integrity, it is in the public interest for the Court to know the specious nature of the implied critique of his chosen methodology, since the analysis for which Defendants' expert advocates confirms the validity of Dr. Stein's original opinions and work and it would be misleading to allow Defendants to suggest anything to the contrary.

Accordingly, Plaintiff respectfully requests that the Court deny Defendants' Motion to Strike and grant her such other and further relief to which she may be entitled.

Respectfully submitted:

| | |
|---|---|
|  /s/ Barry Abrams<br>Barry Abrams<br>State Bar No. 00822700<br>SD Tex. Bar No. 2138<br>BLANK ROME LLP<br>717 Texas Avenue, Suite 1400<br>Houston, Texas 77002<br>(713) 228-6606<br>(713) 228-6605 (fax)<br>barry.abrams@blankrome.com |  /s/ Martin Golando<br>The Law Office of Martin Golando, PLLC<br>Texas Bar No. 24059153<br>2326 W. Magnolia<br>San Antonio, Texas 78201<br>(210) 471-1185<br>(210) 405-6772 (fax)<br>martin.golando@gmail.com |

**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

 I certify that on April 25, 2022, a true and correct copy of the foregoing document was served on the following counsel via email:

Charles Crawford
ccrawfdord@abernathy-law.com
Lucas Henry
lhenry@abernathy-law.com

Andy Taylor
ataylor@andytaylorlaw.com


            /s/ Barry Abrams
            Barry Abrams