IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VIRGINIA ELIZONDO, | § § § | |
| *Plaintiff,* | § § | |
| vs. | § § | Civil Action No. 4:21-cv-01997 |
| SPRING BRANCH INDEPENDENT SCHOOL DISTRICT, CHRIS GONZALEZ, PAM GOODSON, KAREN PECK, JOSEF D. KLAM, MINDA CAESAR, CHRIS EARNEST, J. CARTER BREED, in their official capacity as members of the Board of Trustees of Spring Branch ISD | § § § § § § § § § § § | |
| *Defendants.* | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL

Defendants Spring Branch Independent School District and its board of trustees in their official capacities ("SBISD") file the following response to Plaintiff's Motion to Compel [Dkt. 42].

### I.
### INTRODUCTION

1.  This is a Voting Rights Act case. Plaintiff Virginia Elizondo has sued SBISD alleging that its at-large system for electing the members of the school district's board of trustees violates Section 2 of the Voting Rights Act, 52 U.S.C. §10301, *et seq.* See Dkt. 3.

2.  On March 24, 2022, Plaintiff took the deposition of SBISD's expert, Dr. John Alford, pursuant to a deposition notice that contained a duces tecum. The duces tecum requested Dr. Alford produce the following documents at the time of his deposition:

> 1. All documents containing the information required to be produced under Fed. R. Civ. P. 26...

> 2. The entire contents of any electronic and paper file created or maintained by the witness concerning the work performed in connection with the lawsuit.
>
> 3. All reports that the witness has prepared for the Spring Branch Independent School District *or its counsel*, on any subject for which he has been compensated.

3. In response to the duces tecum, on March 2, 2022, SBISD served Defendants' Objection to Duces Tecum Attached to Notice of Oral Deposition, a copy of which is attached hereto as Exhibit 1. As stated in the objection, "Defendants object to Dr. Alford producing file contents, reports and communications with SBISD's counsel because such information is protected from production as work product. See Fed. R. Civ. P. 26(b)(4)(B) and (C)." Plaintiff did not ask the Court to rule on this objection, nor object to the lack of a privilege log, prior to Dr. Alford's deposition.

4. Following the completion of all depositions, including Dr. Alford's, on April 6, 2022 Elizondo filed Plaintiff's Motion to Compel [Dkt. 42], arguing that:

> a. SBISD has waived its objection to producing Dr. Alford's previous analysis he provided to SBISD's attorneys, and should therefore be ordered to produce that analysis and any other prior opinions.
>
> b. SBISD should be ordered to withdraw its denial of the *Gingles* factors in Defendants' Original Answer.

5. For these reasons detailed below, the Court should deny Plaintiff's requested relief.

## II.
## RESPONSE TO PLAINTIFF'S ARGUMENTS

**A.  Dr. Alford's Communications With SBISD's Attorneys in Anticipation of Litigation are Protected From Disclosure**

6. Plaintiff's motion asks the Court to compel SBISD to "[p]roduce previously undisclosed analyses by its expert, Dr. John Alford, concerning racially polarized voting in the District" and to "[p]roduce the information required by Fed. R. Civ. P. 26(b)(5)(A) with respect to any other

information that the District has withheld from production on the basis of any purported privilege." Dkt. 42, p. 1. Plaintiff anchors her requests on the premise that during Dr. Alford's deposition he "disclosed for the first time that – contrary to the District's earlier sworn testimony – before this lawsuit was filed he had twice been hired to analyze whether racially polarized voting existed and that he had provided his opinions to the District. According to Dr. Alford, in the last few years he performed racially polarized voting analysis for SBISD on two occasions. When counsel for the Plaintiff sought to elicit the substance of those newly-disclosed opinions, the District purported to invoke a privilege and instructed Dr. Alford not to answer direct questions about the subject." Dkt. 42, p. 3. Plaintiff's premise, however, mischaracterizes both Dr. Alford's testimony as well as the rules relating to disclosure of protected attorney/expert communications.

7. The relevant provisions of the federal rules at issue are found in Rules 26(b)(3) and (4). Rule 26(b)(3)(A) codifies the work product doctrine, excluding from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial."[1] Rule 26(b)(4), in turn, discusses the scope of protections afforded to experts and shields from discovery three specific categories of information: (1) draft reports or disclosures of testifying experts; (2) communications between testifying experts who are required to provide a report under Rule 26(a)(2)(B) and the party's attorneys; and (3) facts known or opinions held by a non-testifying expert. See *Whole Women's Health v. Lakey,* 301 F.R.D. 266, 268-69 (W.D. Tex. 2014) (discussing rules); see also, *Southwest Insulation v. General Insulation,* 2016 U.S. Dist. Lexis 200126, *7-8 (N.D. Tex. 2016) ("The work product doctrine protects communications between a party's counsel and its testifying expert witness unless the communications concern one of the listed exceptions."); *Republic of*

---

[1] For the "in anticipation of litigation" privilege to apply, "[l]itigation need not be imminent, so long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *United States v. El Paso Co.,* 682 F.2d 530, 542 (5th Cir. 1982).

*Ecuador v. Mackay,* 742 F.3d 860, 866 (9th Cir. 2014) ("Rule 26(b)(3) is titled 'Trial Preparation: Materials' ... Rule 26(b)(4) is titled 'Trial Preparation: Experts' ... Rule 26(b)(3) extends protection to 'Materials.' Rule 26(b)(4) then separately provides some protection for 'Experts.' This strongly suggests that experts were intended to be treated separately from the 'materials' protected under Rule 26(b)(3)."). Importantly, governmental entities such as public school districts are entitled to assert the attorney-client and work product protections in civil proceedings. See, e.g., *Burkhead & Scott, Inc. v. City of Hopkinsville,* 2014 U.S. Dist. Lexis 166374, *4 (W.D. Ky. 2014) (citing *Ross v. City of Memphis,* 423 F.3d 596 (6th Cir. 2005)).

8. Here, Dr. Alford's testimony clearly shows that all of his prior communications (both written and oral) with SBISD regarding its election system were with SBISD's attorneys and in anticipation of litigation – and therefore protected from disclosure to Plaintiff under Rule 26(b)(4)(B) and (C). Specifically, Dr. Alford testified as follows:

- When SBISD was sued under the Voting Rights Act in the late 1990's/early 2000's, he was hired by SBISD's then-attorney to help defend the suit and was involved in the analysis of the first *Gingles* factor (the suit was ultimately dismissed because of "the inability to actually draw a majority-minority district"). He doesn't recall performing any work or analysis of racially polarized voting. Alford deposition, pp. 14-16.[2]

- "[I]n the intervening years when – I'm not sure exactly about the dates on this, but sometime more recently I was retained to work ***with counsel for the district*** on issues related to the districting scheme. ... There was – I think most of my discussions with them had to do with alternative elections, particularly moving to something like cumulative elections. ...And so I think most of what I provided ***to the attorneys*** was information [] about how cumulative elections would work ..." Alford deposition, pp. 16-18.

- Asked if he was aware of any racially polarized voting analysis provided to SBISD in the 2017-2020 time frame: "I wasn't sort of privy to all of whatever their discussions were. I'm not sure I

---

[2] Dr. Alford's deposition transcript is attached as Exhibit D to Plaintiff's Motion to Compel [Dkt. 42].

> was ever in – either in direct contact with any of the demographers or present when they were discussing things with the lawyers, so I – if they did, I wasn't aware of it, but I don't know whether they did or not." Alford deposition, pp. 18-21.

- Asked if he performed a racially polarized voting analysis for SBISD in that time frame: "At that point there was a – I did just a very preliminary, not – sort of – maybe not an actual racially polarized voting analysis, but a quick look at – just looking at sort of where – where candidate votes were centered across the rough – you can only do it across the rough geography because there's so few polling places. But just looking at where vote totals were centered and how they varied across the geography, but not a formal – not like a EI formal analysis." Alford deposition, p. 21.

- "And then more recently I was asked by – we're now at the – at the second set of attorneys rather than the third – [and] *the second set of attorneys asked [me] to provide the attorneys with, you know, a more complete analysis* of the sort that you typically will see in a case like this." Alford deposition, pp. 22-23.

- When he finally did perform an ecological inference (EI) analysis, "*I think the district was aware that they could be sued* so – what I'm not sure about is the – I had been asked to sort of take a look, so I had done that very informal look. *And I had been asked by the lawyers to take a look at that, and at that stage I think probably was when I ran the sort of regression analysis.*" However, "I did not provide a report." Rather, he orally shared his findings with SBISD's then-attorneys. Alford deposition, pp. 23-27.

- Other than the above, there are no other analysis or reports that he's provided to SBISD: "I think we've covered all of what I recall of information, types of information that I've shared with – with the attorneys, or the attorneys shared with the board, or that I was present to discuss with the board." Alford deposition, p. 33.

9. Moreover, separate from the Rule 26(b)(4)(B) and (C) protection from disclosure, there is nothing in writing from Dr. Alford – no prior written report – to produce in response to Plaintiff's deposition duces tecum (i.e., there is nothing to compel). Dr. Alford testified that:

- Regarding his work for SBISD in the late 1990's/early 2000's to help defend the earlier voting rights lawsuit, "I certainly didn't do anything in the sense of a report on it or anything. ... I don't even have the records from that era anymore." Alford deposition, pp. 14-16.

- Regarding the EI-type analysis be performed for SBISD's attorneys shortly before this suit was filed, "I did not provide a report." Alford deposition, p. 24.

- In response to request number 3 from the deposition duces tecum (asking for "all reports that the witness has prepared for SBISD or its counsel"), "I never provided a report to the district or the counsel." Alford deposition, p. 29.

- Regarding the EI analysis he later performed, "I'm not sure that the OLS analysis was ever even – anything done other than just sort of looking at that real quickly in Excel. I'm not sure that was ever reduced to anything that – that would have been transmissible either to attorneys or to Mr. Crawford." Alford deposition, p. 30.

- There are no other analysis or reports that he's provided to SBISD: "I think we've covered all of what I recall of information, types of information that I've shared with – with the attorneys, or the attorneys shared with the board, or that I was present to discuss with the board." Alford deposition, p. 33.

10. To summarize, assuming written communications, such as prior reports, between Dr. Alford and SBISD's attorneys exist, they are protected from disclosure based on the work product doctrine as codified in Rule 26(b)(4).[3] However, and equally important, no written communications/reports responsive to Plaintiff's duces tecum exist; Dr. Alford's (protected) oral

---

[3] Plaintiff's motion cites *Baltic Wind v. Lady of Perpetual Help M/V*, 2020 U.S. Dist. Lexis 260259 (E.D. La. 2020), in support of her request that SBISD disclose Dr. Alford's prior communications with its attorneys. However, in *Baltic Wind*, the court required disclosure of the expert's prior written reports because "[t]o be clear, the documents were not protectable as litigation work product. Marquette has entirely failed to establish that anticipation of litigation was the 'primary motivating purpose' behind their creation." *Id.* at * 13. This is not the situation here. *Baltic Wind* is inapposite.

communications with SBISD's attorneys in anticipation of litigation are not capable of being produced in response to a document request. There is nothing to compel production of.[4]

### B. SBISD did not Waive its Objection to Disclosing Dr. Alford's Protected Communications

11. Relying on Fed. R. Civ. P. 26(b)(5)(A), which requires a party withholding documents to provide a privilege log, Plaintiff claims that SBISD has waived any privilege protecting disclosure of Dr. Alford's prior communications with SBISD's counsel because SBISD has failed to provide a privilege log. In turn, because SBISD has allegedly waived any privilege as a result of that failure, Plaintiff argues that the Court should order SBISD / Dr. Alford to disclose these prior communications. Dkt. 42, pp. 12-14. The Court, however, should not find a waiver nor should it order the disclosure of protected communications.

12. Although, as noted in Plaintiff's motion, a failure to timely provide a privilege log (if required) may result in a waiver of objections on the basis of privilege, many courts have limited the remedy to the belated preparation of a privilege log. See, e.g., *Smith v. Shelter Mut. Ins. Co.*, 2017 U.S. Dist. Lexis 108658, * 11 (M.D. La. 2017) ("the Court concludes that Shelter has not waived the attorney-client privilege and work product immunity. ... the Court concludes that Shelter should be provided an opportunity to correct its deficiencies with regard to Rule 26(b)(5)(A) and Local Rule 26(c) rather than find a blanket waiver of privilege.") (citing cases). "Only 'flagrant' violations of federal rules should result in a waiver of privilege. Accordingly, the failure to provide a privilege log alone does not warrant a waiver of privilege." *Sadofsky v. Fiesta*

---

[4] The Rules Advisory Committee's Notes to the 2010 Amendments to Rule 26(b)(4)(C) make it clear that the Rule's protections apply to oral communications between experts and attorneys as follows: "Rule 26(b)(4)(C) is added to provide work-product protection for attorney-expert communications **regardless of the form of the communications**, whether oral, written, electronic, or otherwise. The addition of Rule 26(b)(4)(C) is designed to protect counsel's work product and ensure that lawyers may interact with retained experts without fear of exposing those communications to searching discovery. ... Protected 'communications' include those between the party's attorney and assistants of the expert witness." Fed. R. Civ. P. 26(b)(4)(C) (n. 2010) (emphasis added).

*Prods., LLC*, 252 F.R.D. 143, 154 (E.D.N.Y. 2008) (quoting *Pem-Am, Inc. v. Sunham Home Fashions, LLC*, 2007 U.S. Dist. Lexis 80548, * 5 (S.D.N.Y. 2007)); see also *Essex Ins. Co. v. Interstate fire & Safety Equip. Co.*, 263 F.R.D. 72, 76-77 (D. Conn. 2009). This Court should reach the same conclusion and limit any potential relief to the preparation of a privilege log.

13. However, critically, here, there is no need to order a privilege log or any other remedy – as confirmed by Dr. Alford's testimony, there are no written reports or other communications responsive to Plaintiff's deposition duces tecum.

### C. SBISD Should not be Ordered to Admit Plaintiff's Allegations Regarding the *Gingles* Factors

14. Citing both Dr. Alford's deposition and the deposition of SBISD's representative Christine Porter, Plaintiff's motion also asks the Court to order SBISD to amend Defendants' Original Answer [Dkt. 8] and withdraw the answer's denials of Plaintiff's *Gingles* factors allegations.[5] See Dkt. 42, pp. 1-2, 14. The Court should deny this request.

15. Plaintiff's motion specifically references the denials contained in paragraphs 40, 41 and 45 of Defendants' Original Answer. See Dkt. 42, note 4. These paragraphs read as follow:

> 40. The allegations in Paragraph 40 contain legal conclusions to which no response is required. To the extent that a response is required, the Defendants deny the allegations in Paragraph 40.
>
> 41. The allegations in Paragraph 41 contain legal conclusions to which no response is required. To the extent that a response is required, the Defendants deny the allegations in Paragraph 41.
>
> 45. The allegations in Paragraph 45 contain legal conclusions to which no response is required. To the extent that a response is required, the Defendants deny the allegations in Paragraph 45.

---

[5] The theory behind Fed. R. Civ. P. 8(b) addressing a defendant's admissions and/or denials to a plaintiff's complaint is that "a defendant's pleading should apprise the opponent of those allegations in the complaint that stand admitted and will not be in issue at trial and those that are contested and will require proof to be established to enable the plaintiff to prevail." 5 C. Wright & A. Miller, Federal Practice & Procedure §1261 (3d ed.). Such is the case here.

Dkt. 8, ¶¶ 40, 41, 45.[6]

16. In addition, although not specifically identified by paragraph number, Plaintiff's motion also takes issue with SBISD's answer to paragraph 38 of the amended complaint, which alleges,

> 38. The Latino or Hispanic population of the SBISD is sufficiently large and geographically compact to constitute a majority of the voting-age population in two single-member districts under an illustrative seven-district plan.

Dkt. 3. SBISD's answer to this paragraph reads:

> 38. The allegations in Paragraph 38 contain legal conclusions to which no response in required. To the extent that a response is required, the Defendants lack sufficient information to admit or deny the allegations in Paragraph 38. However, the Defendants deny that the Plaintiff is using the correct legal standard.

Dkt. 8.

17. The above paragraphs in SBISD's answer do not need to be amended to admit Plaintiff's allegations for multiple reasons.

18. First, "'legal conclusions masquerading as factual allegations' don't turn legal questions into factual ones." And a defendant need not admit or deny legal conclusions in a complaint. *Thompson v. Dewine,* 976 F.3d 610, 616 n. 5 (6th Cir. 2020) (citing 5 C. Wright & A. Miller, Federal Practice & Procedure §1279 (3d ed.)). Here, the conclusory allegations in Plaintiff's amended complaint regarding the *Gingles* factors are merely legal conclusions masquerading as

---

[6] The corresponding paragraphs in Plaintiff's First Amended Complaint [Dkt. 3] read:

> 40. Voting in SBISD school board elections likewise is racially polarized.
>
> 41. Latinos are politically cohesive in SBISD elections and vote as a bloc for Latino-preferred candidates.
>
> 45. Throughout SBISD as a whole, Anglos vote as a politically cohesive bloc against minority-preferred candidates.

factual allegations, and therefore do not need to be admitted or denied. No amendment is necessary for this reason.

19. Additionally, Plaintiff's reliance on Christine Porter's deposition for the "admission" that "the first *Gingles* factor has been satisfied" is misplaced. Ms. Porter did not "admit" that Plaintiff has satisfied the first *Gingles* factor (drawing an illustrative majority-minority district that complies with traditional districting principles); rather, according to her testimony, she simply "heard" that a majority-minority district may be possible "during discussions with our legal counsel." Porter deposition, pp. 34-35.[7] This is not the type of admission that requires amending SBISD's answer – "hearing" that something may be possible, without any further details or specifics, is non-binding hearsay and speculation. Rather, SBISD's denial of any factual allegations relating to the *Gingles* factors are warranted on the evidence. See also Dr. Alford's deposition: when asked if "the Latino community in SBISD [is] sufficiently large and geographically compact to constitute a majority in a single-member district?", he answered "I don't know. ... I have not at any time trying to draw – tried to draw a district." Alford deposition, pp. 100-01. The Court should decline Plaintiff's invitation to use Ms. Porter's conclusory testimony to relieve Plaintiff of her burden to prove each of the *Gingles* factors, including the first factor, by a preponderance of the evidence. This is too harsh of an unwarranted remedy.

20. Moreover, Plaintiff's motion incorrectly states that SBISD should amend its denials of the *Gingles* factors because Dr. Alford's deposition shows that he previously advised SBISD that the second and third *Gingles* factors had been satisfied. See Dkt. 42, p. 14.[8] However, Dr. Alford

---

[7] Ms. Porter's deposition transcript is attached as Exhibit C to Plaintiff's Motion to Compel [Dkt. 42].

[8] Notably, Plaintiff's motion intentionally leaves out the following question and answer from Christine Porter's deposition:

never said that he had reached this conclusion or had advised SBISD of such a finding. Rather, he testified:

> Q: Do you recall the conclusions of that report?
>
> A: I did not provide a report.
>
> Q: Did you recall – do you recall the findings from your analysis?
>
> A: So the findings I shared with the attorneys from that analysis.
>
> Mr. Crawford: And so based on that answer I'll ask you not to disclose what you told the attorneys based on the attorney-client privilege [and work product doctrine].

Alford deposition, pp. 24-25. Further testimony includes:

> Q: Okay. Do you agree with Professor Stein that his findings show that voting is racially polarized in SBISD elections? Do you agree?
>
> A: No.

Alford deposition, p. 73.

> Q: ... I just want to make sure I'm quoting you correctly – "taken together, the issues identified above suggest that the evidence relating to *Gingles* 2 and *Gingles* 3 provided in Dr. Stein's report are not sufficient to meet the plaintiff's burden of proof on these two threshold conditions, or the broader totality of the circumstances." Is that what you wrote, sir?
>
> A: Yes.

Alford deposition, p. 87.

> Q: Based on your years of experience and the data reviewed for SBISD, do Latino voters in SBISD elections support different candidates from Anglo voters in SBISD?
>
> A: I have not – I don't know. Comprehensively I don't know.

Alford deposition, p. 102.

---

> Q: Given that the district had not conducted any investigation about whether or not the voting in its trustee elections was racially or ethnically polarized when it denied that facts in the federal lawsuit, what was the basis for making such a denial?
>
> A: We did not have evidence to the contrary. We had investigated it, but we had no evidence.
>
> Porter deposition, p. 33, lines 5-11.

Q: In your opinion based on your years of experience at SBISD, does the Anglo majority vote sufficiently as a bloc to enable it to defeat the minority preferred candidate?

A: I would say sometimes.

Q: How often?

A: I don't know.

Q: More often than not?

A: I don't know.

Alford deposition, pp. 103-04. The above testimony does not warrant the Court ordering SBISD to amend its answer; this testimony does not show, as alleged in Plaintiff's motion, that Dr. Alford advised SBISD that the second and third *Gingles* factors have been satisfied.

## III.
## CONCLUSION AND PRAYER

21. For these reasons, the Court should deny Plaintiff's Motion to Compel in its entirety.

Respectfully submitted,

ABERNATHY, ROEDER, BOYD & HULLETT, P.C.

*/s/Charles J. Crawford*
**Charles J. Crawford**
State Bar No. 05018900
SD Tex. Bar No. 335298
ccrawford@abernathy-law.com
**Lucas C. Henry**
State Bar No. 24101901
SD Tex. Bar No. 3727871
lhenry@abernathy-law.com
1700 Redbud Blvd., Suite 300
McKinney, Texas 75069
Telephone: 214-544-4000
Facsimile: 214-544-4040

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

On April 26, 2022, I electronically served the foregoing on counsel for Plaintiff and amicus by the Court's ECF system.

*/s/Charles J. Crawford*
Charles J. Crawford