IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT
OF TEXAS HOUSTON DIVISION

| | | |
|---|---|---|
| VIRGINIA ELIZONDO, *Plaintiff*, | § § § | |
| v. | § § | Civil Action No. 4:21-CV-01997 |
| SPRING BRANCH INDEPENDENT SCHOOL DISTRICT, *ET AL.*, | § § § § | |
| *Defendants.* | § | |

### PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO MOTION TO COMPEL

Plaintiff Virginia Elizondo replies to Defendants' attempt to conceal their previous analyses of racially polarized voting on the basis of a work product privilege, and their attempt to avoid the effect of the admissions by their officially-designated corporate representative[1] and designated expert[2] that the first *Gingles* factor[3] has been satisfied. Plaintiff respectfully requests that the Court grant her motion to compel because:

---

[1] *See Reed v. LKQ Corp.*, 436 F. Supp. 3d 892, 913 (N.D. Tex. 2020)(Lindsay, J.)("[S]tatements by corporate designees under Rule 30(b)(6) are binding on a corporate party because the corporation, by making the designation, 'represents that the employee has authority to speak on behalf of the corporation.'") (quoting *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006)); *Unitech Energy Tools Ltd. v. Nabors Drilling Techs. USA, Inc.*, H-18-0852, 2020 U.S. Dist. LEXIS 130083, *7 (S.D. Tex. July 23, 2020)(Lake, J.). *See* **Exhibit C** to Plaintiff's Motion to Compel [Doc. 42] ("Motion to Compel"), Deposition of SBISD Corporate Representative Christine Porter ("SBSID Porter Depo.") at pp. 34/8 – 35/13:

> **Q.** Does the district agree that the geographic concentration of Hispanics in the district is large enough to constitute a majority of the voting age population in one or more single-member districts if there was a seven-member election plan adopted or ordered by the court?
> **A.** It's our understanding that that can happen, that – that they can make those single-member districts.
> . . .
> **Q.** Who has provided the factual information to the district that as many as three single-membered districts could be drawn in which a majority of the voting age population would be Hispanic?
> **A.** That was based on some meetings we had with legal counsel at the time.

[2] *See* **Exhibit D** to Motion to Compel, Deposition of John Alford, Ph.D. ("Alford Depo.") at 97/18-20, 98/23-25, 99/1 – 100/9 (if population and CVAP numbers represented in Dr. Stein's proposed map correspond to those of the proposed single member district, Alford agrees it satisfies *Gingles* I requirement).

[3] The first *Gingles* factor is that "the minority group must be sufficiently large and geographically compact to constitute a majority in a single-member district." *See Thornburg v. Gingles*, 478 U.S. 30, 34 (1986).

1. **Defendants have not met their burden of proof to establish the applicability of the work product privilege to the previous analyses conducted of racially polarized voting in the Spring Branch Independent School District ("SBISD" or "District").**

2. **Defendants misstate the factual record and applicable law.**

## I.
### DEFENDANTS HAVE NOT MET THEIR BURDEN OF PROOF TO ESTABLISH THE APPLICABILITY OF THE WORK PRODUCT PRIVILEGE

As the party resisting discovery, Defendants bear the burden of demonstrating the applicability of the work product privilege. *See Fisher v. United States,* 425 U.S. 391, 96 S. Ct. 1569, 48 L. Ed. 2d 39 (1976); *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985); *United States v. Kelly,* 569 F.2d 928, 938 (5th Cir.), *cert. denied* 439 U.S. 829 (1978). As proponents of a privilege, Defendants "must provide the court with enough information to enable the court to determine privilege, and . . . must show by affidavit that precise facts exist to support the claim of privilege." *Nutmeg Ins. Co. v. Atwell*, 120 F.R.D. 504, 510 (W.D. La. 1988).

In addition, Defendants "must particularize [their] assertion of the privilege and prove [their] case with respect to each specific document -- a blanket assertion of the privilege is insufficient." *See United States v. El Paso Co*., 682 F.2d 530, 541 (5th Cir. 1982) ("Such assertions disable the court and the adversary party from testing the merits of the claim of privilege); *Valley Cable TV, Inc. v. Home Life Ins. Co*., No. B-79-153, 1982 U.S. Dist. LEXIS 15165 *2 (S.D. Tex. Oct. 7, 1982)("claimant must particularize it assertion of privilege and prove its case with respect to each specific document"). And, "[a] court should exercise special caution in recognizing a privilege in a civil rights case because 'application of the federal law of privilege . . . in civil rights actions is designed to ensure that state and county officials may not exempt themselves from the very laws which guard against their unconstitutional conduct . . . ." *Roque v. City of Austin,* No. 1-17-CV-00932-LY, 2018 U.S. Dist. LEXIS 190960 at *16-17 (W.D. Tex. Nov. 7, 2018)(quoting *Torres v. Kuzniasz*, 936 F.Supp. 1201, 1213 (D.N.J. 1996)).

As with the attorney-client privilege, the work-product privilege does not apply to the underlying facts relevant to litigation, whether or not they have been reduced to writing or communicated to an attorney. *See Upjohn Company v. United States,* 449 U.S. 383, at 395-96 (1981). Moreover, to come under work-product protection, the documents at issue must have been "prepared in anticipation of litigation or for trial …." FED. R. CIV. P. 26(b)(3). "More than the mere possibility of litigation must be evident before material is protected by the work-product immunity." *Bulk Lift Int'l v. Flexcon & Sys., Inc.*, 122 F.R.D. 482, 491 (W.D. La. 1988).

Here, Defendants have failed to establish the requisite facts to invoke work product protection because:

1. Defendants have not submitted sufficient "information to enable the court to determine privilege, and . . . show[n] by affidavit that precise facts exist to support the claim of privilege." *Nutmeg*, 120 F.R.D. at 510.

2. Because Defendants have obfuscated the fact that responsive tangible information actually exists, rather than particularizing their privilege assertion on a document-by-document basis, as they are required to do, Defendants instead assert that "no written communications/reports" exist.[4] But that is simply incorrect. For that reason alone, Defendants did not fulfill their obligation to meet their burden to prove the applicability of a privilege to each specific document.

3. While disclaiming that any of his electronic data, spreadsheets, or workpapers constituted "a report," Dr. Alford specifically acknowledged that at least the following tangible documents and/or electronic records exist from previous analyses he has performed (or at least they earlier existed, unless they have since been spoliated):

    - In the last four years, roughly, Dr. Alford was retained to work with counsel for the district on issues relating to "the districting scheme" at an earlier point in time when "the district was considering alternatives to the current at-large system, including single-member or mixed plans."[5]

    - At that point, when consulting with the District about "potential things the District might want to think about," Dr. Alford performed what he described as a "quick look – just looking at sort of where – where candidate votes were centered across the rough --- you can only do it across the rough geography because there's so few polling places. But just looking at where vote totals were centered and how they varied across the geography, but not a formal – not like a formal EI analysis. At that point it was just to look at the – at sort of what the election

---

[4] Defendants' Response to Plaintiff's Motion to Compel [Doc. 45] ("Defendants' Response") at ¶10 ("no written communications/reports responsive" exist; "There is noting to compel production of.").
[5] Alford Depo. at 16/16 – 18/9.

- results looked like across the rough geography." Dr. Alford's "informal conclusion was that that rough look was certainly consistent with the possibility that – both Hispanic voters were voting above 50 percent for preferred candidates, including Hispanic candidates, and that Anglo voters were voting below 50 percent for those candidates, and those candidates weren't being elected to the board."[6]

- More recently, Dr. Alford provided a predecessor set of attorneys for the District (who have since withdrawn) with "a more complete analysis of the sort that you typically will see in a case like this."[7]

- Dr. Alford also prepared what he termed a standard "OLS" or Ordinary Least Squares analysis.[8]

- He then had a Rice colleague run an "actual EI analysis."[9]

- The various Alford analyses existed in tangible form at one time. Specifically, at a minimum, there once was an OLS analysis in the form of an Excel file[10] as well as an "EI analysis,"[11] both of which reportedly were provided, at a minimum, to the lawyers for the District who have since withdrawn, as well as the District's current lawyers.[12]

- But Defendants have not submitted any evidence whether or not those documents/electronic files still exist and, if so, they have not explained their earlier failure to have disclosed the existence of that information. Nor have they explained their failure to include information about the prior relevant analyses on a privilege log sufficient to allow Plaintiff to contest, and the Court to determine, whether or not that information was privileged and remains privileged. *See Nutmeg Ins. Co.*, 120 F.R.D. at 510.

4. Defendants have not sustained their burden to establish that the Alford analyses fall within the scope of any privilege and that any applicable privilege has not been waived by disclosure to third parties.

- Dr. Alford reportedly "shared" his analyses with attorneys for the District.[13] Defendants have not submitted any evidence, by affidavit or otherwise, that the communications that Dr. Alford has had with the District and its counsel over the course of many years qualify as either attorney-client or work product privileged communications. For example, no evidence exists whether, in fact, the communications were made in confidence to counsel for the purpose of facilitating the rendition of legal services to Defendants.[14] The mere fact that various communications were made to counsel, without more, is no evidence that the communications necessarily qualify as privileged communications.

---

[6] *Id.* at 21/6 – 22/3.
[7] *Id.* at 22/4 – 23/2.
[8] *Id*. at 23/3 – 24/7.
[9] *Id.*
[10] *Id.* at 30/3 – 30/23.
[11] *Id.* at 30/19-23.
[12] *Id.* at 30/3 – 9.
[13] *Id.* at 24/23 – 25/1.
[14] *See* Tex. R. Evid. 503.

4

- Dr. Alford did not testify whether or not he has disclosed his various analyses to others in addition to District lawyers, and Defendants have not adduced any evidence that he has not in fact also "shared" his analyses with others, which would waive any privilege that might otherwise have attached to his various analyses.

- Nor have Defendants adduced any evidence that any of the previous Alford analyses were intended to remain confidential and have not, in fact, previously been disclosed outside of any privileged context. For example, Dr. Alford testified that the "actual EI" analysis was run by another Rice professor,[15] and Defendants have not provided any testimony establishing that individual's role and access to the information and data did not in and of itself constitute a waiver of any potential privilege.

5. Defendants have not sustained their burden to establish that the various Alford analyses, some of which were created years before this litigation, were prepared in anticipation of litigation, which required evidence that the primary motivating purpose for the analyses was to aid in possible future litigation.

- Dr. Alford could not state with certainty when the OLS and EI analyses were performed in relation to this lawsuit; he initially testified that he "believe[d]" it was before any suit was filed, but later stated that he was "not sure" about when that work was performed.[16] Defendants have not submitted any evidence clarifying when Dr. Alford's most recent analytical work was performed.

- Nor have Defendants submitted any evidence regarding whether, in fact, any of the Alford analyses were prepared in anticipation of litigation as opposed to being prepared during the ordinary course of the District's public business, which included consideration of whether to change its method of electing trustees for public policy reasons rather than in response to any then pending or threatened litigation.

- For example, Dr. Alford testified that certain of his analyses were performed at times when the District was considering alternatives to the current at-large system, including single-member or mixed plans.[17] Defendants have not submitted any evidence of what motivated the District's requests from time to time for Dr. Alford to analyze the prevalence of racially polarized voting in the District and alternatives to its present at-large system of electing its trustee. Presumably, conscientious elected officials would be interested in knowing that information, whether or not any litigation was then threatened or pending.

- Finally, Defendants have not produced any evidence that "the primary motivating purpose behind the creation of the [multiple Alford analyses] was to aid in possible future litigation." *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981)(Wisdom, J.)(adopting "primary motivating purpose" test for determining whether information falls within scope of the work product doctrine).

---

[15] Alford Depo. at 23/34 – 24/2.
[16] *Id*. at 24/3 -20.
[17] *Id*. at 16/16 – 18/9.

5

6. Defendants have not produced any evidence establishing why the underlying facts contained in the various Alford analyses fall within the scope of any privilege at all. *Upjohn Company,* 449 U.S. 395-96 (work-product privilege does not apply to the underlying facts relevant to litigation, whether or not they have been reduced to writing or communicated to an attorney). Per Defendants and Dr. Alford, none of his analyses were included in any formal report. Presumably, therefore, the Alford analyses simply consist of spreadsheets and tables containing discoverable factual data rather than any potentially protectable opinion, and they are discoverable for this additional reason as well.

For the foregoing reasons, and the reasons stated in her Motion to Compel, Plaintiff respectfully submits that Defendants have not sustained their burden to withhold the various Alford analyses from production, and she requests that the Court order Defendants to produce that information forthwith. Alternatively, Plaintiff requests that the Court order Defendants to produce all of the previous Alford analyses for an *in camera* inspection, to allow the Court to determine whether and to what extent that information contradicts the relevant allegations Defendants included in their Answer.

## II.
## DEFENDANTS MISSTATE FACTUAL RECORD AND LAW REGARDING ADMISSIONS BY THEIR CORPORATE REPRESENTATIVE AND EXPERT

Plaintiff will not repeat here her more extended discussion of why she contends that Defendants should not be permitted to "shield from discovery the observations and opinions of [their] own [expert] by designating him as a litigation expert and then improperly conflating his non-litigation work . . . with his litigation consulting work." *Baltic Wind v. Lady of Perpetual Help, M/V*, No. 18-13449, 2020 U.S. Dist. LEXIS 260259, *11 (E.D. La. Aug. 6, 2020).[18] Nor will she repeat her discussion about the multiple ways in which material denials contained in Defendants' Answer cannot be squared with the testimony of its corporate representatives and its expert.[19]

Instead, Plaintiff will simply: (1) reply to Defendants' claim that its designated corporate representative did not in fact admit that the first *Gingles* factor has been satisfied, which she most certainly did admit (as did Defendants' expert if, as will be proven at trial, the population data

---

[18] Motion to Compel at 2-13.
[19] *Id.*

6

reflected in the map is correct); and (2) respond to Defendants' mischaracterization of Plaintiff's position concerning whether the District has in fact previously been advised that the second and third *Gingles* factors have also been satisfied.

      A.      **SBISD's Corporate Representative Has Unqualifiedly Admitted and Its Expert Has Qualifiedly Acknowledged that the *Gingles* I Factor Has been Satisfied.**

Pursuant to Fed. R. Civ. P. 30(b)(6), the Plaintiff noticed, and Defendants produced, several corporate representatives to address the various topics relevant to this matter. After consultation with its General Counsel and Superintendent, Christine Porter, the District's Chief Financial Officer was produced as the District's corporate representative to address, among other things, Plaintiff's allegations that voting in SBISD trustee elections has been racially polarized in violation of the Voting Rights Act.[20] Under well-settled federal law, Ms. Porter's statements in her capacity as SBISD's designated corporate representative constitute binding admissions. *See, e.g, Reed* 436 F. Supp. 3d at 913 ("[S]tatements by corporate designees under Rule 30(b)(6) are binding on a corporate party because the corporation, by making the designation, 'represents that the employee has authority to speak on behalf of the corporation.'").

Under Rule 30(b)(6), it was incumbent on the District to "make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by the party noticing the deposition and to *prepare* those persons in order that they can answer fully, completely, unevasively, the questions posed as to the relevant subject matters." *Brazos River Authority v. GE Ionics*, 469 F.3d 416, 433 (5th Cir. 2006)(internal alterations and quotation marks omitted)(quoting Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 151 (S.D.N.Y. 1997)). "When a corporation produces an employee pursuant to a rule 30(b)(6) notice it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition." *Id*. "These principles bind a party to its corporate representative's answers and prohibit a party from later introducing evidence on a topic where its representative disclaimed

---

[20] SBISD Porter Depo. at 4/7-8, 4/15- 7/11.

knowledge during the deposition." *Unitech Energy Tools Ltd.,* 2020 U.S. Dist. LEXIS 130083, *7 (citing *Super Future Equities, Inc. v. Wells Fargo Bank Minn.*, N.A., No. 3:06-CV-0271-B, 2007 U.S. Dist. LEXIS 91947, at *8 (N.D. Tex. Dec. 14, 2007)).

For these reasons, Defendants are mistaken when they assert that Plaintiff's reliance on the SBISD corporate representative deposition as an admission that the first *Gingles* factor has been satisfied, is "misplaced."[21] Here is what the Supreme Court has described as the first *Gingles* factor: "the minority group must be sufficiently large and geographically compact to constitute a majority in a single-member district." *Gingles*, 478 U.S. at 34. Here is what the District's designated corporate representative has admitted:

> **Q.** <u>Does the district agree that the geographic concentration of Hispanics in the district is large enough to constitute a majority of the voting age population in one or more single-member districts if there was a seven-member election plan</u> adopted or ordered by the court?
> **A.** <u>It's our understanding that that can happen, that – that they can make those single-member districts</u>.
> . . .
> **Q.** <u>Who has provided the factual information to the district</u> that as many as three single-membered districts could be drawn in which a majority of the voting age population would be Hispanic?
> **A.** <u>That was based on some meetings we had with legal counsel at the time</u>.

SBSID Porter Depo. at pp. 34/8 – 35/13.

In addition to illustrating the contradiction between the Defendants' litigation posturing and the sworn testimony of its designate corporate representative – which is an evidentiary admission binding on Defendants – this testimony further demonstrates the liberties that the Defendants appear to be taking with the facts known to them and their professional representatives. That is the core issue raised in Plaintiff's Motion to Compel. Plaintiff reasonably believes that disclosure of the contents of the various Alford analyses at issue, at least to the Court, will reveal whether and to what extent the Defendants have made and continue to make representations to this Court that they know to be contrary to the actual facts at issue.

---

[21] Defendants' Response at ¶19.

Defendants' expert, Alford, has made a similar, but qualified, admission that the map Plaintiff and her expert have proposed to illustrate a *Gingles* I compliant district does in fact satisfy the first *Gingles* factor. Here is what Dr. Alford said when questioned on that subject:

> **Q.** Did you review Professor Stein's proposed single-member district plan in his report?
> **A.** I looked at it. . . .
>
> **Q.** Historically, you've drawn maps for jurisdictions, right?
> **A.** Yes.
> **Q.** All right. So you have a vast history of drawing maps, correct.
> **A.** I've drawn a lot. I wouldn't say vast.
> **Q.** Okay.
> **A.** But I've drawn a lot of school district maps.
> **Q.** Fair enough. Does anything about that, the way it's shaped geographically, give you pause?
> **A.** No.
> **Q.** Would you agree that it's a compact district?
> **A.** Yes.
> **Q.** Okay. Would you agree that if the numbers are correct that it's CVAP [Citizens Voting Age Population] majority?
> **A.** Yes.
> **Q.** Would you agree that map meets Gingles I?
> Mr. Crawford: Objection, exceeds the scope of his engagement and his opinion.
> **Q.** But as an expert in map drawing I'm asking and as – and one who's drawn several Gingles I maps does it meet the form of Gingles I?
> **A.** Again, I – so I haven't looked at any of this, so I'm going entirely on your assertion that the numbers that were provided match the numbers that – the picture. Right? And I have no idea whether that – you know, whether that picture actually produces the numbers or not but –
> **Q.** Sure.
> **A.** – if that picture produces those numbers, and that's the most current CVAP estimate, then I'd say that's what you'd be looking for in a – you know, in a district to establish Gingles I.
> **Q.** So, yes?
> Mr. Crawford: Same objection.
> **A.** Yes.

**B.     Defendants Have Mischaracterized Plaintiff's Position.**

Defendants misstate Plaintiff's position about the extent to which Dr. Alford has advised the District whether the Gingles factors have been satisfied. Plaintiff has not stated that "Dr. Alford's deposition shows that he previously advised SBISD that the second and third *Gingles* factors *had*

been satisfied."[22] Plaintiff's position is as stated in her Motion to Compel: her belief based upon the objective evidence in the case is "that the *District appears to have knowingly concealed* the fact *that before this lawsuit was filed, its own voting expert*, Dr. John *Alford, had advised* it *about whether the Gingles* factors *were likely satisfied, yet* when *the District* answered the lawsuit, it *expressly denied those facts*."

It is uncontroverted that before this lawsuit was filed, on multiple occasions Dr. Alford *had* advised the District concerning racially polarized voting issues, including whether the *Gingles* factors were likely satisfied. But Defendants have refused to disclose those previous Alford analyses.

What therefore is unknown, and what Plaintiff urges the Court to either compel Defendants to disclose or, at a minimum, to produce to the Court for an *in camera* inspection, are the Alford analyses, which will answer the question once and for all whether and to what extent the Defendants are taking positions in the litigation that are contradicted by the facts known to them, in violation of their obligations under the Federal rules.

Accordingly, Plaintiff respectfully requests that the Court grant her Motion to Compel and order the District to:

- ➢ Produce previously undisclosed analyses by its expert, Dr. John Alford, concerning racially polarized voting in the District, which the District improperly has withheld without complying with the requirements of FED. R. CIV. P. 26(b)(5)(A);

- ➢ Produce the information required by FED. R. CIV. P. 26(b)(5)(A) with respect to any other information that the District has withheld from production on the basis of any purported privilege, so that the privilege issue can be presented to the Court; and

- ➢ Amend its answer in this proceeding to admit rather than deny that the *Gingles* factors in the case are satisfied, because the denials of those factual contentions are not warranted on the evidence.

Alternatively, Plaintiff requests that the Court order Defendants to submit to the Court for an in camera inspection all previously undisclosed analyses by its expert, Dr. John Alford, concerning racially polarized voting in the District.

---

[22] Defendants' Response at ¶20.

Respectfully submitted:

| | |
|---|---|
| /s/ Barry Abrams | /s/ Martin Golando |
| Barry Abrams | The Law Office of Martin Golando, PLLC |
| State Bar No. 00822700 | Texas Bar No. 24059153 |
| SD Tex. Bar No. 2138 | 2326 W. Magnolia |
| BLANK ROME LLP | San Antonio, Texas 78201 |
| 717 Texas Avenue, Suite 1400 | (210) 471-1185 |
| Houston, Texas 77002 | (210) 405-6772 (fax) |
| (713) 228-6606 | martin.golando@gmail.com |
| (713) 228-6605 (fax) | |
| barry.abrams@blankrome.com | |

**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that on May 2, 2022, a true and correct copy of the foregoing document was served on the following counsel via email:

Charles Crawford
ccrawfdord@abernathy-law.com
Lucas Henry
lhenry@abernathy-law.com

Andy Taylor
ataylor@andytaylorlaw.com

/s/ Barry Abrams
Barry Abrams