# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| VIRGINIA ELIZONDO, | § | |
| | § | |
|    *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-CV-01997 |
| | § | |
| SPRING BRANCH INDEPENDENT SCHOOL DISTRICT, *ET AL.* | § | |
| | § | |
|    *Defendants*. | § | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Barry Abrams
State Bar No. 00822700
SD Tex. Bar No. 2138
BLANK ROME LLP
717 Texas Avenue, Suite 1400
Houston, Texas 77002
(713) 228-6601
(713) 228-6605 (fax)
barry.abrams@blankrome.com

Martin Golando
The Law Office of Martin Golando, PLLC
2326 W. Magnolia
San Antonio, Texas 78201
(210) 471-1185
(210) 405-6772 (fax)
martin.golando@gmail.com

**ATTORNEYS FOR PLAINTIFF**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION AND SUMMARY ...................................................................................1

II. WHY THE COURT SHOULD DENY THE MOTION......................................................2

    A. Defendants Misapply the Summary Judgment Standard. ........................................2

    B. Summary Judgment is Precluded Because the District Has Admitted the First *Gingles* Factor is Satisfied. ...............................................................................3

        1. The effect of testimony by the District's designated corporate representative. .................................................................................................3
        2. The District has admitted that the first *Gingles* factor is satisfied. ..............5

    C. Summary Judgment is Precluded Because Defendants' Expert Has Qualifiedly Admitted that Plaintiffs' Illustrative District Map Satisfies the First *Gingles* Factor. .................................................................................................5

    D. The Entire Premise of Defendants' Attack on the Expert Work by Dr. Stein is Faulty. ......................................................................................................................7

        1. Defendants incorrectly presume that Plaintiff necessarily is required to submit evidence of a hypothetical or illustrative plan to satisfy *Gingles* I. ....................................................................................................7
        2. Defendants incorrectly presume that expert testimony alone is required to prove compliance with the first *Gingles* factor. ........................8
        3. Defendants incorrectly presume that Dr. Stein's analytical work (the accuracy of which they do not contest) can be excluded from consideration because his analysis did not expressly incorporate other information available from other admissible sources, evident on the face of his report, or that has already been admitted by the District and its own expert. .......................................................................10

    E. Defendants Misstate the Requirements for Satisfying the So-Called "50% Threshold" of Minority Citizens Voting Age Population ("CVAP") and Plaintiff Has Adduced Evidence Sufficient to Satisfy this Standard at the Liability Stage of the Case. ...................................................................................11

CONCLUSION..............................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anthony v. Michigan*,
    35 F. Supp.2d 989 (E.D. Mich. 1999) ...................................................................................7

*Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*,
    171 F.R.D. 135 (S.D.N.Y. 1997) ..........................................................................................4

*Baker v. Carr,*
    369 U.S. 186 (1962) ..............................................................................................................8

*Benavidez v. City of Irving, Tex.*,
    638 F. Supp.2d 709 (N.D. Tex. 2009) ........................................................................ passim

*Bone Shirt v. Hazeltine*,
    461 F.3d 1011 (8th Cir. 2006) ............................................................................................13

*Brazos River Authority v. GE Ionics*,
    469 F.3d 416 (5th Cir. 2006) ................................................................................................4

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ..........................................................................................................1, 3

*Chen. v. City of Houston*,
    206 F.3d 502 (5th Cir. 2000) ......................................................................................8, 9, 10

*Clark v. Calhoun County*,
    21 F.3d 92, 95 (citing *Westwego Citizens for Better Gov't v. City of
    Westwego*, 946 F.2d 1109, 1124 (5th Cir. 1991)) ...........................................................7, 8

*Fairley v. Hattiesburg*,
    584 F.3d 660 (5th Cir. 2009) ......................................................................................7, 8, 12

*Gonzales v. Harris County*,
    601 Fed. Appx. 255 (5th Cir. 2015) .....................................................................................7

*Houston v. Lafayette Cnty.*,
    56 F.3d 606 (5th Cir. 1995) ................................................................................................12

*Hyde v. Stanley Tools*,
    107 F. Supp.2d 992 (E.D. La. 2000) .................................................................................4, 5

*Imperial Trading Co. v. Travelers Prop. Cas. Co. of Am.*,
    No. 06-4262, 2009 U.S. Dist. LEXIS 64010 (E.D. La. July 24, 2009) ..............................4, 5

*Kumar v. Frisco Indep. Sch. Dist.*,
    476 F. Supp.3d 439 (E.D. Tex. 2020) ..................................................................... 8, 10, 13

*Lavespere v. Niagra [sic] Mach. & Tool Works, Inc.*,
    910 F.2d 167 (5th Cir. 1990) ................................................................................................ 3

*Little v. Liquid Air Corp.*,
    37 F.3d 1069 1075 (5th Cir. 1994) ....................................................................................... 3

*LULAC v. Clements*,
    999 F.2d 831 (5th Cir. 1993) ................................................................................................ 1

*Mo. State Conf. of the NAACP v. Ferguson-Florissant Sch. Dist.*,
    No. 4:14 CV 2077 RWS, 2016 U.S. Dist. LEXIS 132172 (E.D. Mo. Sept. 27, 2016) ......................................................................................................................... 13

*Pope v. County of Albany*,
    687 F.3d 565 (2d Cir. 2012) ................................................................................................ 13

*Rainey v. Am. Forest and Paper Ass'n, Inc.*,
    26 F. Supp.2d 82 (D.D.C. 1998) .......................................................................................... 4

*Reed v. LKQ Corp.*,
    436 F. Supp. 3d 892 (N.D. Tex. 2020) ................................................................................ 4

*Reeves v. Sanderson Plumbing Products, Inc.*
    530 U.S. 133, 120 S. Ct. 2097 (2000) .................................................................................. 3

*Rodriguez v. Harris County*,
    964 F.Supp.2d 686 (S.D. Tex. 2013) ................................................................................. 12

*Terrebone Par. Branch NAACP v. Edwards*,
    399 F. Supp.3d 608 (M.D. La. 2019) ................................................................................... 8

*Thornburg v. Gingles*,
    478 U.S. 30 (1986) ....................................................................................................... passim

*Unitech Energy Tools Ltd. v. Nabors Drilling Techs. USA, Inc.*,
    H-18-0852, 2020 U.S. Dist. LEXIS 130083 (S.D. Tex. July 23, 2020) ..................... 3, 4, 13

*United States v. Taylor*,
    166 F.R.D. 356 (M.D. N.C. 1996) ...................................................................................... 4

*Valdespino v. Alamo Heights Indep. Sch. Dist.*,
    168 F.3d 848 (5th Cir. 1999; *Westwego*, 946 F.2d at 1117 n.7.) ....................................... 13

*Westwego Citizens for Better Gov't v. City of Westwego*,
    946 F.2d 1109 .................................................................................................................. 7, 13

**Statutes**

Voting Rights Act , 52 U.S.C. §10301 ................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 30(b)(6) ..........................................................................................................3, 4, 5

U.S. Census Bureau, *"A Basic Explanation of Confidence Intervals"* (census.gov) ....................14

"Choosing Spring Branch Schools – Spring Branch Independent School District" (springbranchisd.com) ........................................................................................................9, 10

IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF TEXAS HOUSTON
DIVISION

| | | |
|---|---|---|
| VIRGINIA ELIZONDO,<br>*Plaintiff*, | §<br>§<br>§ | |
| v. | §<br>§ | Civil Action No. 4:21-CV-01997 |
| SPRING BRANCH INDEPENDENT<br>SCHOOL DISTRICT, *ET AL.*, | §<br>§<br>§ | |
| *Defendants*. | §<br>§ | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Virginia Elizondo opposes Defendants' attempt to prevent a trial on the merits of her lawsuit, which raises a matter of substantial public importance: whether the "at-large" method of electing the members of the Spring Branch Independent School District ("SBISD" or "District") violates the Voting Rights Act of 1965, 52 U.S.C. §10301 ("VRA").

**I.**
**INTRODUCTION AND SUMMARY**

The sole basis for Defendants' Motion for Summary Judgment ("Motion") is the claim that "as a matter of law [Plaintiff] cannot carry her burden to satisfy the first required *Gingles* precondition . . . under Section 2 of the Voting Rights Act."[1] The first *Gingles* precondition for a VRA claim is that "the protected class of citizens . . . is sufficiently large and geographically compact to constitute a majority in a single member district."[2]

The Court should deny the Motion for the following reasons:

    A.    Defendants have not satisfied their burden, and they cannot satisfy their burden under *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986), to prove as a matter of law: (1) that the evidence they have submitted "*negates* the existence of a

---

[1] Motion ¶2.1.

[2] Motion ¶1.2 (citing *Thornburg v. Gingles*, 478 U.S. 30 (1986) and quoting *LULAC v. Clements*, 999 F.2d 831, 849 (5th Cir. 1993)(en banc)).

    material fact" concerning the first *Gingles* factor; or (2) that "there is *no evidence to support*" the first *Gingles* factor. Defendants have done neither.

B.  Where, as is true here, the District has admitted that the first *Gingles* factor has been satisfied, Plaintiff has no obligation to submit evidence of a hypothetical or illustrative district plan (even though she has done so). The District's admission that the first *Gingles* precondition has been met, without more, establishes the existence of a material fact precluding summary judgment.

C.  Defendants' expert (John Alford) has admitted that, as long as the data on which Plaintiff's illustrative single member district map was based is accurate, which it is according to Dr. Robert Stein, then that map satisfies the first *Gingles* factor. That testimony, without more, also establishes the existence of a material fact precluding summary judgment.

D.  The entire premise of Defendants' attack on the expert work by Dr. Stein is faulty.

  1.  Defendants incorrectly presume that Plaintiff necessarily is required to submit evidence of a hypothetical or illustrative plan to satisfy *Gingles* I. That is not the case when, as is true here, the District has already admitted that the first *Gingles* factor is satisfied.

  2.  Defendants incorrectly presume that expert testimony alone is required to prove compliance with the first *Gingles* factor. That also is wrong, because lay testimony is routinely offered and relied upon concerning the first *Gingles* factor.

  3.  Defendants incorrectly presume that Dr. Stein's analytical work (the accuracy of which they do not contest) can be excluded from consideration because his analysis did not expressly incorporate other information available from other admissible sources, evident on the face of his report, or that has already been admitted by the District and its own expert.

E.  Defendants misstate the requirements for satisfying the so-called "50% threshold" of minority Citizens Voting Age Population ("CVAP") and Plaintiff has adduced evidence sufficient to satisfy this standard at the liability stage of the case.

As discussed in greater detail below, Plaintiff respectfully requests that the Court deny the Motion and allow this important case to proceed to trial.

## II.
## WHY THE COURT SHOULD DENY THE MOTION

**A.**  **Defendants Misapply the Summary Judgment Standard.**

After initially correctly stating the standard that they must satisfy to be entitled to

2

summary judgment on Plaintiff's Voting Rights Act Claim,[3] Defendants then misapply it. Defendants also ignore the requirement that in reviewing the summary judgment evidence, "the court must draw all reasonable inferences in favor of the nonmoving party" and resolve any "factual controversies in favor of the nonmovant . . . when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Unitech Energy Tools Ltd. v. Nabors Drilling Techs. USA, Inc.*, H-18-0852, 2020 U.S. Dist. LEXIS 130083, *5-6 (S.D. Tex. July 23, 2020)(Lake, J.)(quoting *Reeves v. Sanderson Plumbing Products, Inc.* 530 U.S. 133, 120 S. Ct. 2097, 2210 (2000) and *Little v. Liquid Air Corp.*, 37 F.3d 1069 1075 (5th Cir. 1994)(en banc)).

The *Celotex* test requires Defendants to prove as a matter of law that: (1) the evidence they have submitted "*negates* the existence of a material fact" concerning the first *Gingles* factor; or (2) that "there is *no evidence to support*" the first *Gingles* factor. Defendants have done neither. As discussed in Parts II(B) – (E) below, the summary judgment record contains ample evidence that the first *Gingles* factor has been established, or can be established, at the upcoming trial, which precludes summary judgment.

**B.    Summary Judgment is Precluded Because the District Has Admitted the First *Gingles* Factor is Satisfied.**

    1.    <u>The effect of testimony by the District's designated corporate representative.</u>

Pursuant to Fed. R. Civ. P. 30(b)(6), the Plaintiff noticed, and Defendants produced, several corporate representatives to address the various topics relevant to this matter. After consultation with its General Counsel and Superintendent, Christine Porter, the District's Chief

---

[3] Motion ¶5.1:

> "A <u>defendant</u> who seeks summary judgment on a plaintiff's claim <u>must demonstrate the absence of a genuine dispute of material</u> fact by either (1) submitting summary judgment evidence that negates the existence of a material element of the plaintiff's claim, or (2) showing there is <u>no evidence to support an essential element of the plaintiff's claim</u>. *Celotex,* 477 U.S. at 323-25; *Lavespere v. Niagra [sic]Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir. 1990)."(emphasis added).

Financial Officer was produced as the District's corporate representative to address, among other things, Plaintiff's allegations that voting in SBISD trustee elections has been racially polarized in violation of the Voting Rights Act.[4] Under well-settled federal law,[5] Ms. Porter's statements in her capacity as SBISD's designated corporate representative constitute binding admissions. *See, e.g., Reed v. LKQ Corp.*, 436 F. Supp. 3d 892, 913 (N.D. Tex. 2020)(Lindsay, J.)("[S]tatements by corporate designees under Rule 30(b)(6) are binding on a corporate party because the corporation, by making the designation, 'represents that the employee has authority to speak on behalf of the corporation.'")(quoting *Brazos River Auth.*, 469 F.3d at 433); *Unitech*, 2020 U.S. Dist. LEXIS 130083 at, *7.

"Numerous courts have held that a party cannot adduce additional evidence to rebut the testimony of its Rule 30(b)(6) witness when . . . the opposing party has relied on the Rule 30(b)(6) testimony . . . ." *Imperial Trading Co. v. Travelers Prop. Cas. Co. of Am.*, No. 06-4262, 2009 U.S. Dist. LEXIS 64010 *28 (E.D. La. July 24, 2009)(citing *Hyde,* 107 F. Supp.2d at 993). *See also Rainey v. Am. Forest and Paper Ass'n, Inc.*, 26 F. Supp.2d 82, 94-95 (D.D.C. 1998)("[u]nless it can prove that the information was not known or was inaccessible, a corporation cannot later proffer new or different allegations that could have been made at the time of the 30(b)(6) deposition"; an "eleventh hour alteration is inconsistent with Rule 30(b)(6),

---

[4] Deposition of SBISD Corporate Representative Christine Porter ("SBSID Porter Depo.") at 4/7-8, 4/15-7/11, a true and correct copy of which is attached as **Exhibit C**.

[5] "In a Rule 30(b)(6) deposition, there is no distinction between the corporate representative and the corporation." *Hyde v. Stanley Tools,* 107 F. Supp.2d 992 (E.D. La. 2000) (citing and quoting *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D. N.C. 1996)("noting that in a Rule 30(b)(6) deposition 'the corporation appears vicariously through its designee'")). "The Rule 30(b)(6) designee . . . presents the corporation's 'position' on the topic.'" *Id.* Under Rule 30(b)(6), it was incumbent on the District to "make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by the party noticing the deposition and to *prepare* those persons in order that they can answer fully, completely, unevasively, the questions posed as to the relevant subject matters." *Brazos River Authority v. GE Ionics*, 469 F.R.D. 416, 433 (5th Cir. 2006)(internal alterations and quotation marks omitted)(quoting *Bank of New York v. Meridien BIAO Bank Tanzania Ltd*., 171 F.R.D. 135, 151 (S.D.N.Y. 1997)). "When a corporation produces an employee pursuant to a rule 30(b)(6) notice it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition." *Id.*

4

and is precluded by it").

    2.    <u>The District has admitted that the first *Gingles* factor is satisfied.</u>

Here is what the Supreme Court has described as the first *Gingles* factor: "the minority group must be sufficiently large and geographically compact to constitute a majority in a single-member district." *Gingles*, 478 U.S. at 34. Here is what the District's designated corporate representative has admitted:

> **Q.** <u>Does the district agree that the geographic concentration of Hispanics in the district is large enough to constitute a majority of the voting age population in one or more single-member districts if there was a seven-member election plan</u> adopted or ordered by the court?
> **A.** <u>It's our understanding that that can happen, that – that they can make those single-member districts</u>.
> . . .
> **Q.** <u>Who has provided the factual information to the district</u> that as many as three single-membered districts could be drawn in which a majority of the voting age population would be Hispanic?
> **A.** <u>That was based on some meetings we had with legal counsel at the time</u>.

SBSID Porter Depo. at pp. 34/8 – 35/13.

The District's admission that the first *Gingles* factor is satisfied, without more, precludes the District from adducing evidence to rebut that testimony, since "the opposing party has relied on the Rule 30(b)(6) testimony," *Imperial Trading Co.*, 2009 U.S. Dist. LEXIS 64010 at *28 (citing *Hyde,* 107 F. Supp.2d at 993), and it also precludes summary judgment.

**C.**    **Summary Judgment is Precluded Because Defendants' Expert Has Qualifiedly Admitted that Plaintiffs' Illustrative District Map Satisfies the First *Gingles* Factor.**

Defendants' expert, Alford, made a similar, but qualified, admission that the map Plaintiff and her expert have proposed to illustrate a *Gingles* I compliant district does in fact satisfy the first *Gingles* factor. Here is what Dr. Alford said when questioned on that subject:

> **Q.** <u>Did you review Professor Stein's proposed single-member district plan in his report?</u>
> **A.** <u>I looked at it</u>. . . .
>
> **Q.** <u>Historically, you've drawn maps for jurisdictions, right?</u>
> **A.** <u>Yes</u>.
> **Q.** All right. So you have a vast history of drawing maps, correct.

> **A**. I've drawn a lot. I wouldn't say vast.
> **Q**. Okay.
> **A**. But I've drawn a lot of school district maps.
> **Q**. Fair enough. Does anything about that, the way it's shaped geographically, give you pause?
> **A**. No.
> **Q**. Would you agree that it's a compact district?
> **A**. Yes.
> **Q**. Okay. Would you agree that if the numbers are correct that it's CVAP [Citizens Voting Age Population] majority?
> **A**. Yes.
> **Q**. Would you agree that map meets *Gingles* I?
> Mr. Crawford: Objection, exceeds the scope of his engagement and his opinion.
> **Q**. But as an expert in map drawing I'm asking and as – and one who's drawn several *Gingles* I maps does it meet the form of *Gingles* I?
> **A**. Again, I – so I haven't looked at any of this, so I'm going entirely on your assertion that the numbers that were provided match the numbers that – the picture. Right? And I have no idea whether that – you know, whether that picture actually produces the numbers or not but –
> **Q**. Sure.
> **A**. – if that picture produces those numbers, and that's the most current CVAP estimate, then I'd say that's what you'd be looking for in a – you know, in a district to establish *Gingles* I.
> **Q**. So, yes?
> Mr. Crawford: Same objection.
> **A**. Yes.[6]

According to Dr. Stein the illustrative map in his report is based upon data from the 2020 Census and American Community Survey.[7] Therefore, the Alford deposition testimony and the Stein Report collectively establish that the illustrative map submitted by Dr. Stein satisfies the first *Gingles* factor. At a minimum, that summary judgment evidence establishes the existence of a triable issue of fact on that issue, which precludes summary judgment.

---

[6] *See* Deposition of John Alford, Ph.D. ("Alford Depo.") at 97/18-20, 98/23-25, 99/1 – 100/9 (if population and CVAP numbers represented in Dr. Stein's proposed map correspond to those of the proposed single member district, Alford agrees it satisfies *Gingles* I requirement), a true and correct copy of which is attached as **Exhibit E**.

[7] Expert Report of Robert M. Stein, Ph.D. ("Stein Report") at 3, 7-8 and Table 1 (reliance upon data from 2020 Census and American Community Survey 2015-2019) to establish that under a proposed illustrative single member district plan at least one majority Hispanic trustee district can be created. A true and correct copy of the Stein Report is attached as **Exhibit A**.

**D. The Entire Premise of Defendants' Attack on the Expert Work by Dr. Stein is Faulty.**

    1.    <u>Defendants incorrectly presume that Plaintiff necessarily is required to submit evidence of a hypothetical or illustrative plan to satisfy *Gingles* I.</u>

Although "[s]atisfying the first *Gingles* precondition – compactness – *normally* requires submitting as evidence hypothetical redistricting schemes in the form of illustrative plans," *Gonzales v. Harris County*, 601 Fed. Appx. 255, 258 (5th Cir. 2015)(emphasis added), a plaintiff need not do so when a defendant has admitted that precondition has been satisfied. *See, e.g., Anthony v. Michigan*, 35 F. Supp.2d 989, 1000, 1004 (E.D. Mich. 1999)(parties agreed that the first *Gingles* precondition was satisfied because African Americans are a sufficiently large and geographically compact group to constitute a majority in a single-member district.").

According to the Fifth Circuit the "reason" that "plaintiffs typically have been required to propose hypothetical redistricting schemes and present them to the district court in the form of illustrative plans," is because it "would be downright perverse" to "[r]equir[e] the district court to fish through the record for evidence that might conceivably support redistricting approaches that were never urged by the plaintiffs or presented . . .." *Fairley v. Hattiesburg*, 584 F.3d 660, 669 (5th Cir. 2009).[8] And a "plaintiff's proposed district is not cast in stone. It [is] simply presented to demonstrate that a majority-[minority] district is feasible . . . ." *Clark v. Calhoun County*, 21 F.3d 92, 95 (citing *Westwego Citizens for Better Gov't v. City of Westwego*, 946 F.2d 1109, 1124 (5th Cir. 1991)).

Here, where, as a matter of law, the District has admitted that the first *Gingles* factor has been satisfied – that is, that the Hispanic citizens voting age population in SBISD is sufficiently large and geographically compact to constitute a majority in a single-member district – there

---

[8] "Although illustrative plans may be a common approach taken by plaintiffs in Voting Rights Act cases – and are certainly a helpful method of providing evidence to be considered under the first *Gingles* factor – [Circuit Judge Dennis] do[es] not read [Fifth Circuit] case law to *require* such an approach." *Id*. at 676 (concurring in part and dissenting in part)(emphasis in original).

was no need and no obligation for Plaintiff to submit an illustrative district plan, because no dispute exists that the creation of a majority minority district is "feasible." *Clark.* 584 F.3d at 95; Fairley, 584 F.3d at 676. The District made this binding admission early on in the discovery process[9] (and before Plaintiff had any obligation to designate or disclose any expert) and that admission relieved Plaintiff of any obligation to submit an illustrative district map.

    2.    <u>Defendants incorrectly presume that expert testimony alone is required to prove compliance with the first *Gingles* factor.</u>

Defendants incorrectly presume that expert testimony alone is required to prove compliance with the first *Gingles* factor and that if Dr. Stein did not take consciously into account a "traditional districting factor,"[10] such as the role of "communities of interest," no other witness can address such a factor. That also is wrong, because as Defendants' counsel well knows, lay testimony is routinely offered and relied upon concerning the first *Gingles* factor. *See, e.g., Kumar v. Frisco Indep. Sch. Dist.,* 476 F. Supp.3d 439, 471-472 (E.D. Tex. 2020)(discussing *SBISD's counsel's* submission of lay testimony at trial regarding an illustrative plan and its effect on communities of interest in the Frisco ISD); *Terrebone Par. Branch NAACP*

---

[9] The SBISD corporate representative deposition on this subject was taken on December 28, 2021 – well before the deadline for Plaintiff to designate and disclose her experts. See **Exhibit C.**

[10] Dr. Stein's deposition makes explicit that when questioned about whether he had considered "traditional districting principles," he did not understand counsel's terminology. *See* Stein Depo. at 54/6-10:

> **Q.** Do you understand the term "traditional districting principles"?
> **A.** Not – I mean, the – it makes perfect sense to me but I don't know what you're referring – I mean I don't know what those conditions would be.

Elsewhere in his deposition, Dr. Stein evidenced his awareness of various of the so-called "traditional districting principles," such as "one person one vote," (21/9-17). Table 1 to his report establishes that the illustrative plan complies with applicable one-person, one-vote requirement based upon both total and voting age populations of representative districts. Although Dr. Stein did not compute the *Baker v. Carr* one person one vote calculation, which he understands calls for no more than a ten percent variance in total population among the various districts (Stein Depo. at 55/22 – 56/1), as an indisputable mathematical matter, the illustrative district exhibits a less than ten percent variance in total population. *See Chen. v. City of Houston*, 206 F.3d 502, 522-528 (5th Cir. 2000)(endorsing use of total population rather than CVAP for purposes of one person one vote analysis).

*v. Edwards*, 399 F. Supp.3d 608, 616 (M.D. La. 2019)(upholding sufficiency of evidence submitted by plaintiffs to support illustrative plan in Section 2 Voting Rights Act challenge by Black voters with respect to *Gingles* I factor, based upon lay testimony by "[p]laintiffs themselves" concerning communities of interest, shared common socioeconomic characteristics and the fact that "the local authorities," like SBISD did here with respect to the "neighborhood" school enrollment zones that form the basis for Plaintiff's illustrative plan, "thought it appropriate to combine them together" into a common district.). *See* Choosing SBISD Schools - Spring Branch Independent School District (springbranchisd.com)("**District & school boundaries -** SBISD follows a small neighborhood school concept where attendance areas have been established for each individual school. As an established community, attendance zones rarely change in the school district.").[11]

Conformity to existing and traditional administrative boundaries such as SBISD's existing election precincts/middle school enrollment zones "is ordinarily seen as a virtue, not a vice, in the districting process." *Chen*, 206 F.3d at 514. "Maintenance of established district lines is itself a traditional districting principle . . . and the [] plan minimized the changes in district boundaries." *Id*. at 521. That is precisely what Dr. Stein testified he has done with respect to the illustrative district in his report – he "took the districts that currently exist for the purposes of conducting elections for trustee elections . . . that is, the enrollment districts corresponded to the voting places." Stein Depo. at 54/14-18. In other words, Dr. Stein has acknowledged his

---

[11] *See* SBISD Porter Depo. at 47/25 – 50/7 (District's decision to set middle school enrollment zones that are used as trustee election precincts dates back to the 1980's). *See also* Report of Dr. Andres Tijerina ("Tijerina Report") at ¶¶1-7, pp. 30-39, 43, discussing, among other things, the demographic changes within SBISD which included the substantial growth of its Hispanic population and markedly different socio-economic conditions prevalent on the north and south sides of Interstate 10, common ethnic and cultural characteristics of the Hispanic population residing north of Interstate 10, differential accountability ratings and disparate student disciplinary practices between the north and south side areas, and the impact of historical discrimination against Hispanics in Spring Branch which "hinders their ability to participate effectively in the political process." A true and correct copy of the Tijerina Report is attached as **Exhibit D**.

compliance with another of the so-called "traditional districting principles," by attempting to maintain established district lines.[12]

> 3. <u>Defendants incorrectly presume that Dr. Stein's analytical work (the accuracy of which they do not contest) can be excluded from consideration because his analysis did not expressly incorporate other information available from other admissible sources, evident on the face of his report, or that has already been admitted by the District and its own expert.</u>

Dr. Stein's analytical work establishes what the District earlier admitted to be the case – that is, that the Hispanic citizens voting age population in SBISD is sufficiently large and geographically compact to constitute a majority in a single-member district. That evidence cannot be excluded from consideration simply because his analysis did not expressly include other information, available from other admissible sources, concerning the fact that other "traditional districting principles" are satisfied, or have already been admitted by the District and its own expert.[13] *See, e.g., Kumar v. Frisco Indep. Sch. Dist.*, 476 F. Supp. 3d at 498-501 (overruling objection by *SBISD's counsel* to *Gingles* I opinion of plaintiff's expert, complaining there, as counsel does here, that the expert did not consider specific communities of interest when drawing proposed illustrative district). In addition, the Defendants' expert testified that the way that the putative district was shaped geographically "did not give him pause,"[14] evidencing that Dr. Stein had followed neutral redistricting principles in drafting the demonstrative district. Because lay and other admissible testimony,[15] admissions by the District and its expert, and

---

[12] The Fifth Circuit has noted that "[b]ecause of the inherently subjective nature of the concept, it would seem that reasonable people might disagree as to what constitutes a community. We thus caution against general over-reliance on the communities of interest factor." *Chen,* 206 F.3d at 517 n. 9.

[13] "[D]istricting is hardly a science. It would seem obvious to us that there is more than one way to draw a district so that it can reasonably be described as meaningfully adhering to traditional principles, even if not to the same extent or degree as some other hypothetical district." *Chen*, 206 F.3d at 519.

[14] Alford Depo. at 98/23 – 99/14.

[15] *See, e.g.,* Stein Depo. at 54/14-18, <u>Choosing SBISD Schools - Spring Branch Independent School District (springbranchisd.com)</u>, the Tijerina Report, and Table 1 to the Stein Report, each of which constitutes evidence that the "communities of interest" and "one person one vote" factors have been taken into account in Plaintiff's illustrative plan – which Defendants' expert has acknowledged satisfies the first

information evident on the face of the Stein Report suffice to address the so-called traditional districting principles about which Defendants complain, the Motion should be denied. This evidence taken in its best light, at a minimum, establishes that a fact issue exists for trial regarding whether or not the illustrative district complies with traditional redistricting principles. The Plaintiff has met her burden.

E. **Defendants Misstate the Requirements for Satisfying the So-Called "50% Threshold" of Minority Citizens Voting Age Population ("CVAP") and Plaintiff Has Adduced Evidence Sufficient to Satisfy this Standard at the Liability Stage of the Case.**

Defendants misstate the requirements for satisfying the so-called "50% threshold" of minority Citizens Voting Age Population (CVAP) and they misstate the statistical meaning of the "margin of error" published by the United States Census Bureau with respect to the calculation of the 52.8% Hispanic Citizens Voting Age Population (CVAP) in Table 1 of the Stein Report.[16] Defendants' statement that "[b]ecause of th[e] margin of error, it is more likely than not that Dr. Stein's proposed district has less than a 50% Hispanic CVAP," is incorrect.[17]

---

*Gingles* factor. *See* Alford Depo. at 97/18-20, 98/23-25, 99/1 – 100/9.

[16] As discussed in detail in *Benavidez v. City of Irving, Tex.*, 638 F. Supp.2d 709, 720-721 (N.D. Tex. 2009):

> Every point estimate is subject to a margin of error that is always published by the Census Bureau along with the point estimate. . . . Adding and subtracting the margin of error from the point estimate provides a range. That range falls within a 90% confidence interval, *i.e.*, there is a 90% chance that the range surrounding the point estimate contains the truly accurate value. The 2006 ACS lists the Hispanic population in Irving as 85,960 and the margin of error is 10,595. Thus, there is a 90% chance that the *actual* Hispanic population in Irving falls somewhere between 96,555 and 75,365. In 2007, the ACS point estimate for Irving's Hispanic population was 75,084 with a margin of error of 8,120. . . . [Defendant's expert] argued that instead of relying upon point estimates provided by the Census Bureau, an analysis of HCVAP levels should evaluate the probability that HCVAP numbers fall above 50% within the 90% confidence interval. [Plaintiff's expert] countered that a point estimate above 50% is the appropriate benchmark for current HCVAP in an illustrative district. The Court agrees that the Census Bureau provides point estimates with the purpose that they may be relied upon and utilized, and finds it unnecessary to inject an additional level of probability calculations into the equation. (internal citations and intervening text omitted, emphasis added).

[17] Motion ¶5.7. *See* the discussion in note 16 *supra* and note 23 *infra*.

11

Their statement that the 52.8% Hispanic CVAP figure does not satisfy Plaintiff's burden is likewise incorrect.[18] And, as discussed in Part II(C) above, Defendants' expert has acknowledged that "if the numbers are correct," which they are,[19] the illustrative district is "CVAP majority."[20]

The 52.8% figure for the Hispanic CVAP in the proposed illustrative district is the "best single value" provided by the Census Bureau for the calculation of the Hispanic CVAP and, as a matter of law, that figure "may be relied upon and utilized" for purposes of establishing that a district can be created that would contain a majority Hispanic CVAP. *See Benavidez*, 638 F. Supp.2d at 720-721(holding that the "point estimate" of CVAP provided by the Census Bureau for Hispanic CVAP is the "appropriate benchmark" for determining the Hispanic CVAP in an illustrative district, and rejecting the argument Defendants make here, that since a point estimate is subject to a margin of error, it is possible that the percentage of Hispanic CVAP in an actual district might fall below 50%).

Defendants also are incorrect in their assertion that the Stein illustrative plan is a purported "remedial plan."[21] It is not. The *Gingles* I factor is only concerned with whether a district plan is a *possible* solution to a Voting Rights Act violation. It is not proffered as the "ultimate solution." As Judge Gilmore explained in *Rodriguez v. Harris County*, 964 F.Supp.2d 686, 746 (S.D. Tex. 2013)):

> "The ultimate end of the first *Gingles* precondition is to prove that a solution is possible, not necessarily to present the ultimate solution to the problem. *Gingles*, 478 U.S. at 50 n.17; *Houston v. Lafayette Cnty.*, 56 F.3d 606, 612 (5th Cir. 1995). In '*Gingles*, the Court provided that it is sufficient that a plaintiff show that a workable plan for another minority-controlled voting district is possible; the plaintiff's plan need not be an ultimate solution.' *Fairley,* 584 F.3d at 671. Defendants' reading collapses the liability and remedy determinations into a single threshold analysis. This is plainly at odds with the scope of the first *Gingles*

---

[18] *See Benavidez*, 638 F.Supp.2d at 720-721.

[19] *See* note 7 *supra.*

[20] Alford Depo. at 99/10 – 13.

[21] Motion ¶5.6 ("Dr. Stein's proposed illustrative district/map is not a legally adequate *remedial plan"*)(emphasis added).

12

precondition because the first question asks only whether any violation has occurred at all, not whether a remedy is possible."

To find liability, "a plaintiff must prove that the minority citizen voting age population ('MCVAP') of the illustrative district exceeds 50% of the total CVAP within the district." *Kumar*, 476 F. Supp. 3d at 492 (citing *Valdespino v. Alamo Heights Indep. Sch. Dist.*, 168 F.3d 848, 852-53 (5th Cir. 1999; *Westwego*, 946 F.2d at 1117 n.7.)). "[T]he inquiry at the liability phase merely requires a finding that single member districts could be drawn in which [minority] voters constitute a bare majority of the voting age population." *Mo. State Conf. of the NAACP v. Ferguson-Florissant Sch. Dist.*, No. 4:14 CV 2077 RWS, 2016 U.S. Dist. LEXIS 132172 at *21 (E.D. Mo. Sept. 27, 2016)(citing *Bone Shirt v. Hazeltine*, 461 F.3d 1011, 1019 (8th Cir. 2006)). *See Westwego,* 946 F.2d at 1117 n. 9 ("All that must be shown is that 'the minority's voting age population exceeds 50%.'"); *Pope v. County of Albany*, 687 F.3d 565, 576 (2d Cir. 2012)("[T]he first *Gingles* question is straightforward and statistical: does the identified minority group form at least a simple majority of the relevant population in the proposed district?").

Plaintiff has met this "bright line" standard by providing evidence that at least one minority-majority district can be created with a 52.8% Hispanic Citizen Voting Age population. *See* Table 1 to the Stein Report; Alford Depo. at 97/18-20, 98/23-25, 99/1-100/9; *Benavidez*, 638 F. Supp.2d at 720-721. To be clear, the Defendants have offered no contrary evidence that would, as a matter of law, disprove that the demonstrative district meets or exceeds the *Gingles* I threshold, and the Plaintiff is entitled to have her evidence viewed in the best possible light. Even assuming *arguendo* that the Defendants' assertion was factual – and as Plaintiff has shown and will show at trial, it is not – the Court still should deny the motion because all factual controversies must be resolved in favor of the Plaintiff. *See, e.g.*, *Unitech*, 2020 U.S. Dist. LEXIS 130083 at *6. On this issue, the Court must view the district as above 50% HCVAP, giving full credit to the sworn testimony of both Dr. Stein and Dr. Alford, and the benefit of the

13

doubt on any supposed margin of error.

In addition, as a matter of math, Defendants misunderstand the margin of error issue. The point estimate of 52.8% represents the average point estimate, meaning roughly half of the HCVAP estimates would be higher and half would be lower than that figure. For the illustrative district, the range of estimates between the confidence intervals means that most of the point estimates for the HCVAP of District 1 are above 50%.

| Confidence Interval for HCVAP of District 1 – Demonstrative District | | |
|---|---|---|
| Upper Bound | Point Estimate | Lower Bound |
| 58.7 | 52.8 | 46.9 |

90% of the point estimates fall between the upper and lower bound.[22] Assuming an even distribution of those points, nearly three-quarters of the point estimates lie above 50% (*i.e.* all point estimates between 58.7 and 50.0%).[23] This means that it is more likely than not that the putative district, itself, meets or exceeds the bright line standard for *Gingles* I. Summary judgment therefore is inappropriate.

---

[22] *See Benavidez*, 638 F.Supp.2d at 721 (taking judicial notice of Census Bureau publication regarding how ACS data should be interpreted); U.S. CENSUS BUREAU, "A Basic Explanation of Confidence Intervals," available at A Basic Explanation of Confidence Intervals (census.gov) ("A confidence interval is a range of values that describes the uncertainty surrounding an estimate. We indicate a confidence interval by its endpoints; for example, the 90% confidence interval for the number of people, of all ages, in poverty in the United States in 1995 (based on the March 1996 Current Population Survey) is "35,534,124 to 37,315,094." .... The "90%" in the confidence interval listed above represents a level of certainty about our estimate. If we were to repeatedly make new estimates using exactly the same procedure (by drawing a new sample, conducting new interviews, calculating new estimates and new confidence intervals), the confidence intervals would contain the average of all the estimates 90% of the time. We have therefore produced a single estimate in a way that, if repeated indefinitely, would result in 90% of the confidence intervals formed containing the true value.").

[23] The total difference between 58.7 and 46.9 is 11.8. The difference between 58.7 and 50 is 8.7. 8.7 is 73.72% of the total range of the point estimates for the Hispanic CVAP for the illustrative district. Therefore, nearly three-quarters of the point estimates for the illustrative district lie above 50%, which makes it more likely than not that the Hispanic CVAP for that district meets or exceeds the bright line standard for *Gingles* I. In any event, as *Benavidez* held, "the Census Bureau provides point estimates with the purpose that they may be relied upon and utilized, and [the court] finds it unnecessary to inject an additional level of probability calculations into the equation." 683 F.Supp.2d at 721.

\* \* \*

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion for Summary Judgment and allow this important case to proceed to trial.

Respectfully submitted:

| | |
|---|---|
| /s/ Barry Abrams | /s/ Martin Golando |
| Barry Abrams | The Law Office of Martin Golando, PLLC |
| State Bar No. 00822700 | Texas Bar No. 24059153 |
| SD Tex. Bar No. 2138 | 2326 W. Magnolia |
| BLANK ROME LLP | San Antonio, Texas 78201 |
| 717 Texas Avenue, Suite 1400 | (210) 471-1185 |
| Houston, Texas 77002 | (210) 405-6772 (fax) |
| (713) 228-6606 | martin.golando@gmail.com |
| (713) 228-6605 (fax) | |
| barry.abrams@blankrome.com | |

**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that on May 10, 2022, a true and correct copy of the foregoing document was served on the following counsel via email:

Charles Crawford
ccrawfdord@abernathy-law.com
Lucas Henry
lhenry@abernathy-law.com

Andy Taylor
ataylor@andytaylorlaw.com

/s/ Barry Abrams
Barry Abrams