IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **VIRGINIA ELIZONDO,** | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIV. ACTION NO. 4:21-CV-1997 |
| **SPRING BRANCH ISD, et al.,** | § § § | |
| *Defendants*. | § | |

**DEFENDANTS' OBJECTION
TO MEMORANDUM AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendants, the Spring Branch Independent School District and its Board of Trustees, file this Objection to the Recommendation of the Hon. U.S. Magistrate Judge Christina A. Bryan, recommending denial of Defendants Motion for Summary Judgement [Dkt. 64] as follows:

## I.
## Introduction

1.1 Plaintiff sued Defendants for alleged violations of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, et seq. Plaintiff alleges that Defendants' at-large system for electing school board trustees unlawfully dilutes her vote and thus deprives Hispanic voters of the opportunity to elect trustees of their choice. See Dkt. 3 at ¶ 78. Plaintiff seeks to compel SBISD to convert to a single-member district system wherein SBISD would be divided into seven voting districts, each represented by one trustee. See Dkt. 3 at ¶ 80. SBISD denies that the at-large system violates the Voting Rights Act, and contends that all voters in SBISD are afforded an equal opportunity to participate in elections. Moreover, SBISD contends that the at-large system is a better form of

governance because it requires trustees to consider the interests of **all** students and voters in the District – not just those students and voters in the trustee's neighborhood.[1]

1.2     As stated in the Memorandum and Recommendation of the Hon. U.S. Magistrate Judge Christina A. Bryan (the "Recommendation"), Plaintiff must show all three of the *Gingles* preconditions to establish vote dilution in violation of § 2:

  (1) The minority group [here, Latinos] must be sufficiently large and geographically compact to constitute a majority in a single member district;

  (2) The minority group must be politically cohesive; and

  (3) The majority must vote sufficiently as a bloc to enable it, in the absence of special circumstances, usually to defeat the minority group's preferred candidate.

See Dkt. 64 at pg. 2-3.

1.3     Defendants filed a Motion for Summary Judgment arguing that Plaintiff failed meet the first *Gingles* precondition as a matter of law, and therefore cannot sustain a claim for vote dilution. Dkt. 43. Plaintiff filed a response. Dkt. 48. The Magistrate recommends that Defendants' Motion for Summary Judgment be denied. Dkt. 64. Defendants file this objection, and request that the Court reject the Recommendation and issue an order granting Defendants' Motion for Summary Judgment. Alternatively, Defendants request the Court refrain from acting until the Supreme Court issues an opinion in *Merrill v. Milligan*.

## II.
## Objection

2.1     Defendants object because the Recommendation disregards the Fifth Circuit's mandate that "[traditional districting] principles **must be considered** when analyzing that aspect

---

[1] ¶ 1 of Plaintiff's First Amended Complaint (which is referenced on pg. 1-2 of the Recommendation), states that "No person of color has ever served on the Board of Trustees of Spring Branch Independent School District." Dkt. 3 at ¶ 1. This statement is no longer accurate. Defendant John Perez is Hispanic and currently serves on the SBISD Board of Trustees. He was elected in May 2022, during the pendency of this lawsuit, and is now a defendant in this case. See Dkt. 53, 57, 62.

[compactness] of the first *Gingles* precondition." *Gonzalez v. Harris County*, 601 Fed. App'x 255, 258-59 (5th Cir. 2015) (emphasis added). Instead, the Recommendation allows Plaintiff to escape summary judgment because her expert's illustrative map (which he did not create, and cannot testify as to how it was created) *happens to* resemble SBISD's middle school attendance zones (with several important, but unexplained deviations). Because Plaintiff's only expert, Dr. Robert Stein, admits that he did not consider traditional districting principles, and because the Fifth Circuit strictly requires this consideration to meet the first *Gingles* precondition, summary judgment for Defendants is proper.

A.     **The Fifth Circuit Requires a § 2 Plaintiff to Consider Traditional Districting Principles**

    2.2    According to the Fifth Circuit, "under *Gingles*, **compactness requires accounting for traditional districting principles** such as maintaining communities of interest and traditional boundaries." *Id*, 601 at 258 (emphasis added). Importantly, "those principles **must be considered** when analyzing that aspect of the first *Gingles* precondition." *Id*. at 259 (emphasis added); *see also Fairley v. Hattiesburg*, 584 F.3d 660, 670 (5th Cir. 2009) ("Courts are expected, in evaluating redistricting plans, to take into account 'traditional districting principles such as maintaining communities of interest and traditional boundaries.'"). The words used by the Fifth Circuit – "requires" and "must" – are mandatory. Further, this is not just a consideration for courts – § 2 plaintiffs must actually consider, and cannot ignore, traditional districting principles such as communities of interest and traditional boundaries. *See Sensley v. Albritton*, 385 F.3d 591, 598 (5th Cir. 2004) (finding that the plaintiffs' proposed illustrative district was not compact because "in order to connect these two towns together, the Plaintiffs were required to ignore traditional districting principles such as maintaining communities of interest and traditional boundaries."). Therefore, it is not a matter of whether a § 2 plaintiff's illustrative map *happens* to align with *some*

traditional districting principles (such as attendance zones), but whether the Plaintiff's expert *actually considered* traditional districting principles in drawing his illustrative plan (which he did not). *See id.*

2.3 Traditional districting principles include "contiguousness, population equality, maintaining communities of interest, respecting traditional boundaries, and providing protection to incumbents." *Perez v. Abbott*, 253 F.Supp.3d 864, 911 (W.D. Tex. 2017). Importantly, "if race is the only 'common thread' that binds certain areas together, the district cannot be said to respect communities of interest." *Terrebonne Parish Branch NAACP v. Jindal*, 274 F.Supp.3d 395, 424 (M.D. La. 2017). Thus, the consideration of traditional districting principles is a safeguard that prevents a plaintiff from drawing illustrative district boundaries predominately based on race, which is not permissible under the Voting Rights Act. *See id.* In other words, the requirement that a plaintiff actually consider traditional districting principles assures that a plaintiff does not jut and jog the boundaries of proposed districts on account of race – gerrymandering in significant race-based ways. *Abrams v. Johnson*, 521 U.S. 74, 91, (1997) ("§ 2 does not require the state to create, **on predominantly racial lines**, a district that is not reasonably compact. And the § 2 compactness inquiry should take into account traditional districting principles such as maintaining communities of interest and traditional boundaries.") (emphasis added, quotations omitted).

**B.      Plaintiff's Expert Admittedly did not Consider Traditional Districting Principles**

2.4 Plaintiff's expert admits that he did not consider traditional districting principles. Therefore, although the illustrative districts *somewhat resemble* SBISD's middle school attendance zones, there are **significant deviations** for which Dr. Stein has no explanation. This leaves only one logical explanation—the deviations were drawn according to race, meaning the illustrative district is impermissibly drawn on predominately racial lines. *See id.*

2.5 As stated in Defendants' Motion for Summary Judgment, Dr. Stein testified at deposition as follows:

a. Table 1, page 8 of Dr. Stein's report contains his proposed illustrative district/map that attempts to satisfy the first Gingles precondition. This is the only proposed illustrative district/map that he has attempted to create. See the Stein Deposition, attached to Defendants' Motion for Summary Judgment, at pp. 49-50, 54-55.

b. Dr. Stein "didn't really do very much" to create his illustrative district/map. "I didn't draw a map here. I worked with the map I was given"; "I started with the [map of the] seven districts that Spring Branch ISD has identified as polling places." Id., pp. 20, 49-51.

c. Dr. Stein cannot explain (1) the reason for the jut (carve-out) between his proposed District One and District Seven that is not found on the original SBISD attendance zone/polling place maps that he used: "Those maps that were shared with- with me by Mr. Golando [Plaintiff's counsel], and they may have reflected a slight change in the makeup, the deviation from the current enrollment districts. I had not noticed that before." (ld., pp. 56-57); (2) he also cannot explain the carve-out between proposed districts Five and Six: "Again, I assume that that was a change that Mr. Golando [Plaintiff's counsel] had made to adjust boundaries for the demonstrative plan" (Id., p. 57); and (3) he further cannot explain why his proposed District Six is the only proposed district that is both north and south of I-10 (ld., p. 57).

d. Critically, **he did not consider** "traditional districting principles" when creating his illustrative district/map: ("I mean, I don't know what those conditions would be."). By ways of example, he did not respect neighborhoods and subdivisions and did not try to keep them intact, nor did he take into account or respect census blocks. He also did not take into account "one person, one vote." Id., pp. 54-55.

See Defendants' Motion for Summary Judgment, Dkt. 43, incorporated herein by reference.

2.6 The figure below, which is reprinted in the Magistrate's Recommendation, shows the Plaintiff's illustrative plan. District 1 is Plaintiff's proposed minority-majority district:

Demonstrative Spring Branch ISD Single-Member District

Dkt. 48-1 at 9 (reprinted in the Recommendation at p. 5)

2.7 But SBISD's map of its middle school attendance zones [Dkt. 43-2], reprinted on the next page, shows that Dr. Stein's illustrative map differs from SBISD's attendance zones (a community of interest) in several key, **but completely unexplained** ways, including:

(1) Spring Forrest Middle School's attendance zone spans across both north and south of I-10; Plaintiff's proposed Districts 3 and 4 do not.

(2) While Plaintiff's proposed District 1 (the illustrative minority-majority district) includes the Landrum attendance zone, it incorporates some territory from the Northborook and Spring Woods attendance zones, without explanation. It also includes a small peninsula-shaped jut along its southern border (also without explanation).

(3) Proposed District 6 juts into proposed District 5 for unknown reasons;

(4) SBISD's attendance zones tend to run along ascertainable major streets (see the red lines representing major streets on the map below). The illustrative districts do not (see the yellow lines on the figure above, crossing through the middle of the illustrative districts rather than along the borders). This means that the illustrative districts group people together living on opposite sides of major thoroughfares, and thus in different neighborhoods.



2.8 Because Dr. Stein did not account for traditional districting principles, and because he has no explanation whatsoever for the differences between SBISD's middle school attendance zones (communities of interest) and Plaintiff's illustrative districts, it cannot be said that Plaintiff "account[ed] for traditional districting principles such as maintaining communities of interest and traditional boundaries." *Gonzalez*, 601 Fed. App'x at 259. Plaintiff therefore cannot establish the first *Gingles* precondition, and summary judgment for Defendants is proper.[2]

---

[2] Moreover, the Recommendation errs to the extent it states that summary judgment is precluded by the testimony of SBISD's Corporate Representative. See Dkt. 64, p. 12. SBISD's representative testified that it might be *possible* for Plaintiff to draw minority-majority illustrative districts, but she did not testify that the Plaintiff has *actually drawn* such a district. It is the Plaintiff's burden to do so. The mere possibility (as vague as that might be) of meeting the burden is a far cry from having enough actual evidence to establish a fact issue as to whether the burden can be met.

**C.     The Recommendation Incorrectly Applies the Law and Should be Rejected**

2.9     According to the Recommendation, "[t]he record, at a minimum, demonstrates that Dr. Stein's demonstrative map, which is based largely on SBISD's current at-large election districts [which are identical to SBISD's middle school attendance zones], complies with traditional districting principles of recognizing existing community and administrative boundaries. Again, conformity with administrative boundaries is ordinarily seen as a virtue in the districting process." Dkt. 64, pg. 11. But, as shown by the reprinted maps above, Plaintiff's illustrative districts differ in important ways from SBISD's middle school zones and Plaintiff's expert has no explanation as to why. **There is no fact issue here – Dr. Stein himself admits that he did not consider traditional districting principles.** See p. 11 of Dkt. 64, reprinting Dr. Stein's testimony. As such, the Magistrate erred by determining that Dr. Stein's map could satisfy the first *Gingles* precondition because it "comports with at least some traditional districting principles" even though he admits he did not consider them. Again, according to the Fifth Circuit, the consideration of traditional districting principles in creating the proposed *Gingles* 1 illustrative district is not aspirational; rather, it is mandatory. The Recommendation errs in holding otherwise.

**D.     *Merrill v. Milligan* may Dramatically Alter Applicable Law**

2.10    Finally, *Merrill v. Milligan*, now pending before the U.S. Supreme Court, may dramatically impact the law applicable to Defendants' Motion for Summary Judgment.[3] *Merrill* concerns a vote dilution challenge to Alabama's redistricting plan following the 2020 U.S. Census. *Merrill v. Milligan*, 142 S.Ct. 879 (2022). In *Merrill*, the district court enjoined Alabama's implementation of its redistricting plan. *See Singleton v. Merrill*, 582 F.Supp.3d 924, 936 (N.D.

---

[3] The case was argued before the Supreme Court as *Merrill v. Milligan*, but has since been restyled as *Allen v. Milligan* because Wes Allen has replaced John Merrill as the Alabama Secretary of State. In this pleading, *Merrill* refers to all cases consolidated as *Merrill v. Milligan* and later restyled *Allen v. Milligan*.

Ala. 2022). The district court concluded that the plaintiffs were "substantially likely to establish each part of the controlling Supreme Court test" – the *Gingles* factors – and therefore had a substantial likelihood of success on the merits of their § 2 claims. *Id.* Central to the court's determination was its finding on the first *Gingles* precondition "that Black Alabamians are sufficiently numerous to constitute a voting-age majority in a second congressional district (Black Alabamians comprise approximately 27% of the State's population, and Alabama has seven congressional seats)" but Alabama's plan called for only one Black-majority district, which has existed since 1992. *Id.*

2.11   Alabama appealed and the Supreme Court granted cert. The case was argued before the Court on October 4, 2022. On appeal, Alabama asserts at least two arguments that, if adopted, may drastically impact the application of § 2 to Defendants' Motion for Summary Judgment (and the remainder of this case).[4]

2.12   First, Alabama argues that "§2 does not apply to challenges to single-member districts. The statute applies only to a 'voting qualification,' a 'prerequisite to voting,' or a 'standard, practice, or procedure.'" 52 U.S.C. § 10301(a). *See Brief for Appellant*, at p. 50-51. According to Alabama, the establishment of district boundaries does not fall into any of these three categories – a qualification, a prerequisite, or a standard/practice/procedure – and thus a districting plan cannot run afoul of §2. *See id.*

2.13   If Alabama's first argument is adopted, the Supreme Court would likely abandon *Gingles* analysis altogether in favor of a different standard. It follows that if the Supreme Court were to decide that a state redistricting plan cannot run afoul of §2, then a school district's at-large

---

[4] Alabama asserts far more than two arguments in its briefing. However, for the purposes of this Objection, two particular arguments warrant discussion here. It is obviously unknown how the Supreme Court will decide *Merrill*. SBISD does not waive any arguments that could arise out of a decision in that case.

system (which is essentially one large district with seven trustee representatives) would also not be subject to § 2. Such a standard would eviscerate Plaintiff's claims and compel summary judgment for Defendants because there is no allegation of intentional discrimination in this case.

2.14 Second, Alabama argues that requiring it to draw a second minority-majority congressional district would "run[] headlong into the Constitution's redistricting guardrails" by "set[ting] a racial target, subordinat[ing] traditional criteria to race, and [be] no different than mandating maximization of majority-minority districts." *See id.* at p. 53. Alabama instead contends that its proposed plan "maintain[s] communities of interest and traditional boundaries" – criteria which should not be subordinated to race-based considerations, including creating minority-majority districts.

2.15 SBISD is in a similar situation to the State of Alabama. SBISD has one at-large district drawn as a single community of interest. It includes all voters, parents, and students in SBISD's jurisdiction. Plaintiff, whose expert admittedly did not consider traditional districting principles in drawing his illustrative map, seeks to divide SBISD on race-based lines to create a minority-majority district. § 2 has been traditionally understood to allow this **so long as the plaintiff considers traditional districting principles** (which, as thoroughly explained above, has not been done here). But if the Supreme Court adopts Alabama's second argument, it very well may hold that any considerations of race in drawing district lines are impermissible. Such a decision would alter the analysis of the first *Gingles* precondition which currently requires a plaintiff to show that a minority-majority district is possible.

2.16 A decision in *Merrill* should come before the Supreme Court's current term ends. If this Court determines that *Merrill* could substantially impact the Court's ruling on Defendants'

Motion for Summary Judgment, Defendants request the Court refrain from taking any action under 28 U.S.C. § 636(b)(1)(c) until *Merrill* is decided.

### III.
### Conclusion

3.1   For the reasons above, the Court should sustain Defendants objection to the Recommendation, reject the Recommendation made by the Magistrate Judge, and enter an order granting Defendants' Motion for Summary Judgment. Alternatively, the Court should wait to take action under 28 U.S.C. § 636(b)(1)(c) until *Merrill* is decided.

Respectfully submitted,

**ABERNATHY, ROEDER, BOYD & HULLETT, P.C.**

*/s/Charles J. Crawford*
**Charles J. Crawford**
State Bar No. 05018900
**Lucas C. Henry**
State Bar No. 24101901
1700 Redbud Blvd., Ste. 300
McKinney, Texas 75069
(214) 544-4000 Telephone
(214) 544-4040 Facsimile
ccrawford@abernathy-law.com
lhenry@abernathy-law.com

**ATTORNEYS FOR DEFENDANTS**

### CERTIFICATE OF SERVICE

I certify that the foregoing pleading was served on all parties of record via the Court's electronic filing system on February 23, 2023.

*/s/ Lucas C. Henry*
Lucas C. Henry