# EXHIBIT 11

**EXHIBIT TO**
**JOINT PRETRIAL ORDER**

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **VIRGINIA ELIZONDO,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | **Civil Action No. 4:21-CV-01997** |
| | § | |
| **SPRING BRANCH INDEPENDENT SCHOOL DISTRICT, COURTNEY ANDERSON, JOHN PEREZ, CAROLINE BENNETT, SHANNON MAHAN, MINDA CAESAR, CHRIS EARNEST, LISA ALPE, in their official capacity as members of the Board of Trustees of Spring Branch ISD** | § | |
| **Defendants.** | § | |

## DEFENDANTS' PROPOSED
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendants Spring Branch Independent School District ("SBISD") and its Board of Trustees file the following Proposed Findings of Fact and Conclusions of Law.[1]

### A. Findings of Fact

1. SBISD became an independent school district in 1946 and has been holding at-large elections to elect its board of trustees since then. (Supporting witnesses: Porter; Supporting exhibits: None)

2. Plaintiff, through her expert Dr. Robert Stein, has proposed only one Hispanic-majority illustrative district to satisfy the first *Gingles* precondition. (Supporting witnesses: Stein, Alford; Supporting exhibits: D 3)

3. Plaintiff has not proven that the relevant minority group population in SBISD (Hispanic voters) is sufficiently large and geographically compact to constitute a majority in a single member district. (Supporting witnesses: Alford, Stein; Supporting exhibits: D 3)

---

[1] If any conclusion of law should be treated as a finding of fact, or if any finding of fact be treated as a conclusion of law, Defendants request that the Court treat it as such.

4. Based on the admitted margin of error of ± 5.9%, Plaintiff's expert's proposed illustrative district does not encompass a district with a greater-than-50-percent-voting-age minority population of Hispanics in SBISD. (Supporting witnesses: Stein; Supporting exhibits: D 3)

5. Plaintiff's expert admittedly failed to account for traditional districting principles when drawing his proposed illustrative district. (Supporting witnesses: Stein; Supporting exhibits: D 3)

6. Plaintiff's expert cannot explain the methodology used to draw his proposed illustrative district. (Supporting witnesses: Stein; Supporting exhibits: D 3)

7. Plaintiff's expert's methodology for drawing his illustrative district is not reliable. (Supporting witnesses: Stein, Alford; Supporting exhibits: D 3; D 7-8)

8. Plaintiff's expert's proposed illustrative district does not account for traditional districting principles, including maintaining communities of interest and traditional boundaries. By ways of example, he did not respect neighborhoods and subdivisions and did not try to keep them intact, nor did he take into account or respect census blocks. He also did not take into account one person, one vote. (Supporting witnesses: Stein; Supporting exhibits: D 3)

9. The creation of the shape of Plaintiff's expert's proposed illustrative district – i.e., its carve outs – is an effort to segregate the races for purposed voting, without regard for traditional districting principles. (Supporting witnesses: Stein; Supporting exhibits: D 3)

10. The shape – i.e., the carve outs – of Plaintiff's expert's proposed illustrative district violates the first *Gingles* precondition's compactness inquiry. (Supporting witnesses: Stein; Supporting exhibits: D 3)

11. Plaintiff did not prove the minority group of Hispanic voters in SBISD is politically cohesive. (Supporting witnesses: Stein, Alford; Supporting exhibits: D 7-8)

12. Plaintiff proffered no evidence that, prior to 2015, Hispanics' preferred candidates did not win SBISD school board elections. (Supporting witnesses: Stein; Supporting exhibits: D 7-8, D 11-13, D 22, D 24)

13. Plaintiff did not prove that the white majority in SBISD votes sufficiently as a bloc to enable it, in the absence of special circumstances, usually to defeat Hispanics' preferred school board candidates. (Supporting witnesses: Stein, Alford; Supporting exhibits: D 7-8, D 11-13, D 22, D 24)

14. Plaintiff did not prove that Plaintiff's expert's proposed illustrative district provides Hispanics with a "real" opportunity to elect representatives of their choice – i.e., that the

proposed district will in fact perform as Plaintiff hopes. (Supporting witnesses: Stein, Alford; Supporting exhibits: D 2, D 7-8, D 11-13, D 22, D 24)

15. Hispanics residing in SBISD have the ability under state statute and school board policy to pass a proposition requiring that SBISD trustees be elected in single-member districts and for that proposition to be placed on the next election ballot, but have not ever done so. (Supporting witnesses: Porter; Supporting exhibits: D 9-10)

16. There is insufficient evidence of a history of voting-related discrimination in SBISD elections. (Supporting witnesses: Porter, Perez, Deboben, Salo, Earnest, Anderson; Supporting exhibits: None)

17. There is insufficient evidence that voting in the SBISD school board elections is racially polarized. (Supporting witnesses: Alford, Porter; Supporting exhibits: D 7-8, D 11-13, D 22, D 24)

18. There is insufficient evidence that SBISD has used voting practices or procedures that tend to enhance the opportunity for discrimination against Hispanics in SBISD elections. (Supporting witnesses: Porter, Perez, Deboben, Salo, Earnest, Anderson; Supporting exhibits: D 7-8, D 11-13, D 22, D 24)

19. There is insufficient evidence that Hispanics in SBISD bear the effects of past discrimination in areas such as education, employment, and health, which hinder their ability to participate effectively in the political process. (Supporting witnesses: Perez, Kraft, Deboben, Salo; Supporting exhibits: None)

20. There is insufficient evidence of the use of overt or subtle racial appeals in SBISD election political campaigns. (Supporting witnesses: Earnest, Perez, Anderson; Supporting exhibits: None)

21. John Perez, who is Hispanic, was elected to the SBISD Board of Trustees in 2022 under the at-large voting system. (Supporting witnesses: Perez; Supporting exhibits: D 11)

22. SBISD elected officials are not unresponsive to the particularized needs of Hispanics within SBISD, examples including the district's bi-lingual education program, per student spending, and building bond packages. (Supporting witnesses: Porter, Kraft, Perez, Earnest, Anderson; Supporting exhibits: D 1)

23. The policy underlying SBISD's use of an at-large election system is not tenuous. (Supporting witnesses: Earnest, Anderson, Perez, Deboben, Porter; Supporting exhibits: D 9-10)

24. Partisan politics, not racial bias, better explains the defeat of Hispanic-preferred candidates in SBISD school board elections. (Supporting witnesses: Elizondo, Perez,

<u>Earnest, Anderson, Alford, Lopez, Lezama, Deboben, Salo, Garcia</u>; Supporting exhibits: <u>D 7-8, D 11-70</u>)

25. Low voter turnout, not racial bias, better explains the defeat of Hispanic-preferred candidates in SBISD school board elections. (Supporting witnesses: <u>Alford</u>; Supporting exhibits: <u>D 7-8, D 11-13, D 22, D 24</u>)

26. SBISD's at-large voting system does not have a racially discriminatory intent. (Supporting witnesses: <u>Porter, Earnest, Perez, Anderson</u>; Supporting exhibits: <u>D 9-10</u>)

27. SBISD's at-large voting system does not have a racially discriminatory purpose. (Supporting witnesses: <u>Porter, Earnest, Perez, Anderson</u>; Supporting exhibits: <u>D 9-10</u>)

28. SBISD's at-large voting system does not have a racially discriminatory effect. (Supporting witnesses: <u>Porter, Earnest, Perez, Anderson</u>; Supporting exhibits: <u>D 9-10</u>)

**B. Conclusions of law**

1. Section 2 of the Voting Rights Act prohibits the imposition or application of any "standard, practice, or procedure … which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." 52 U.S.C. § 10301(a).

2. A violation of Section 2 "is established if, based on the totality of the circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a [racial] class of citizens … in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." 52 U.S.C. § 10301(b).

3. However, nothing in the Voting Rights Act requires proportional representation: "[N]othing in [§2] establishes a right to have members of a protected class elected in numbers equal to their proportion to the population." 52 U.S.C. §10301(b).

4. Section 2 claims brought against at-large electoral districts are governed by the framework established in *Thornburg v. Gingles*, 478 U.S. 30 (1986).

5. At-large voting schemes "are not per se violations of section 2." *Westwego Citizens for Better Government v. Westwego*, 872 F.2d 1201, 1204 (5th Cir. 1989). "Rather, the determination whether an at-large election system [ ] violates section 2 'depends upon a searching practical evaluation of the past and present reality' and on a 'functional view of the political process.'" *Id*. (quoting *Gingles*). See also *Gingles*, 478 U.S. at 48.

6. "Under *Gingles*, plaintiffs challenging an at-large system on behalf of a protected class of citizens must demonstrate that (1) the group is sufficiently large and geographically compact to constitute a majority in a single-member district; (2) it is politically cohesive;

and (3) the white majority votes sufficiently as a bloc to enable it usually to defeat the minority's preferred candidate." *LULAC v. Clements,* 999 F.2d 831, 849 (5th Cir. 1993) (en banc). "Failure to establish all three of these elements defeats a Section 2 claim." *Gonzalez v. Harris County,* 601 Fed. Appx. 255, 258 (5th Cir. 2015).

7. It is the Plaintiff's burden to "prove by a preponderance of the evidence that all of the *Gingles* preconditions [are] satisfied." *LULAC #4552 v. Roscoe Indep. Sch. Dist.,* 123 F.3d 843, 846 (5th Cir. 1997).

8. "Satisfaction of [*Gingles'*] three 'preconditions,' is necessary, but not sufficient to establish liability under § 2. Plaintiffs must also show that, under the 'totality of circumstances,' they do not possess the same opportunities to participate in the political process and elect representatives of their choice enjoyed by other voters." *Clements,* 999 F.2d at 849.

9. The "totality of circumstances" (or Senate Factors) include the following factors: (1) the history of voting-related discrimination in the political subdivision (here, SBISD); (2) the extent to which voting in the elections of the political subdivision is racially polarized; (3) the extent to which the political subdivision has used voting practices or procedures that tend to enhance the opportunity for discrimination against the minority group; (4) the extent to which the minority group members bear the effects of past discriminations in areas such as education, employment, and health, which hinder their ability to participate effectively in the political process; (5) the use of overt or subtle racial appeals in political campaigns; (6) the extent to which members of the minority group have been elected to public office in the jurisdiction; (7) evidence demonstrating that elected officials are unresponsive to the particularized needs of the members of the minority group, (8) evidence that the policy underlying the political subdivision's use of the contested practice or structure is tenuous, and (9) whether the number of districts in which the minority group forms an effective majority is roughly proportional to its share of the population in the relevant areas. *Clements*, 999 F.2d at 849, n. 22; *Fairly v. Hattiesburg,* 662 Fed. Appx. 291, 295-96 (5th Cir. 2016); *Lopez v. Abbott,* 339 F.Supp.3d 589, 602 (S.D. Tex. 2018).

10. Regarding the first Senate Factor – the history of voting-related discrimination in the political subdivision – the Court must not "rel[y] too heavily on the evidence of State-sponsored discrimination dating back hundreds of years." *Veasey v. Abbott,* 830 F.3d 216, 231 (5th Cir. 2016) (en banc). See also *Shelby County v. Holder,* 570 U.S. 529, 552-53 (2013) (rejecting the government's argument in Voting Rights Act case because "[t]his argument does not look to 'current political conditions,' but instead relies on a comparison between the states in 1965. … But history did not end in 1965. … It cannot rely simply on the past. We made that clear in *Northwest Austin,* and we make it clear again today."); *Rollerson v. Brazos River Harbor Navigation Dist.,* 6 F.4th 633, 641 (5th Cir. 2021) ("But 'the most relevant "historical" evidence is relatively recent history, not long-past history.'") (quoting *Veasey,* 830 F.3d at 232).

11. Although there are nine factors discussed by the courts, the totality of the circumstances factors list "is not exhaustive, and 'there is no requirement that any particular number of

factors be proved, or that a majority of them point one way or the other.' Moreover, 'not every factor will be relevant in every case.' Rather, the proper assessment of vote dilution claims is peculiarly dependent upon the facts of each case and requires an intensely local appraisal of the design and impact of the contested electoral mechanisms." *Fairly,* 662 Fed. Appx. at 296. "[T]he totality of the circumstances inquiry is not an empty formalism, and satisfying the *Gingles* preconditions does not necessitate liability. To the contrary, this final inquiry can be powerful indeed." *Id.*

12. Because the totality of the circumstances nine factors list "is not exhaustive," an additional factor to consider is Texas Education Code §11.052, which is unique to Texas public school districts such as SBISD. If, under section 11.052(e), the required number of voters of a public school district have passed a proposition requiring that trustees of that school district be elected in single-member districts, then "the plan approved by voters *is required* to be implemented"; if the required number of voters have passed the proposition to have single-member districts, it is the *ministerial duty* of the school board to place the proposition on the next election ballot. *Rodriguez v. Beaumont Indep. Sch. Dist.,* 413 S.W.3d 524, 527, 530 (Tex. App. – Beaumont 2013, no pet.); *In re Vann de Cordova,* 2011 Tex. App. Lexis 221, * 1-3 (Tex. App. – Beaumont 2011, no pet.).

13. "The totality of circumstances test is the means by which the inference of vote dilution [*Gingles* second and third factors] may be rebutted or cemented." *Lopez,* 339 F.Supp.3d at 602.

14. "Satisfying the first *Gingles* precondition – compactness – normally requires submitting as evidence hypothetical redistricting schemes in the form of illustrative plans." *Gonzalez,* 601 Fed. Appx. at 258; see also *Lopez v. Abbott,* 339 F.Supp.3d 589, 606 (S.D. Tex. 2018) ("The first *Gingles* precondition 'requires submitting as evidence hypothetical redistricting schemes in the form of illustrative plans.'"). "The proposed plan must [ ] encompass a district with a greater-than-50-percent-voting-age minority population." *Gonzalez,* 601 Fed. Appx. at 258. "As the Supreme Court has made clear, the 50% threshold is a bright line test." *Benevidez v. Irving Indep. Sch. Dist.,* 690 F.Supp.2d 451, 457 (N.D. Tex. 2010).

15. "Under *Gingles,* compactness requires accounting for traditional districting principles such as maintaining communities of interest and traditional boundaries." *Gonzalez*, 601 Fed. Appx. at 258. Importantly, "those principles must be considered when analyzing that aspect of the first *Gingles* precondition." *Id.* at 259. See also *Fairley v. Hattiesburg,* 584 F.3d 660, 670 (5th Cir. 2009) ("Courts are expected, in evaluating redistricting plans, to take into account 'traditional districting principles such as maintaining communities of interest and traditional boundaries.'"); *Robinson v. Ardoin*, 37 F.4th 208, 218 (5th Cir. 2022) (it is the plaintiff's burden to show that the proposed illustrative district "is consistent with traditional districting principles such as maintaining communities of interest and traditional boundaries").

16. "[W]hile [ ] a compactness determination should not hinge on the shape of a district, the shape of a district certainly cannot be disregarded in a compactness inquiry. …[I]t is clear that shape is a significant factor that courts can and must consider in a *Gingles*

compactness inquiry." *Sensley v. Albritton,* 385 F.3d 591, 596 (5th Cir. 2004). And, in addition to shape, plaintiffs cannot "ignore traditional districting principles such as maintaining communities of interest and traditional boundaries." *Id*. at 598. "Thus, to evaluate compactness, the Court considers the dispersion of the relevant minority population, the shape of the proposed district (as measured by a visual evaluation and by statistical measures of compactness) and the causes underlying its shape, and the district's compliance with traditional redistricting principles (such as respect for communities of interest and traditional boundaries)." *Perez v. Abbott,* 274 F.Supp.3d 624, 639 (W.D. Tex. 2017), rev'd in part on other grounds, 138 S.Ct. 2305 (2018); see also, *Perez v. Abbott*, 253 F.Supp.3d 864, 911 (W.D. Tex. 2017) (same).

17. Traditional principles of "drawing districts and well-established demographic considerations" include the following: "First, districts should generally have equal total population. For municipalities, the population size of each district should not deviate from the others by more than 10%. Second, districts must comply with legal requirements, such as the Equal Protection Clause. And third, districts must be drawn consistent with existing official political boundaries (along city or county lines) and informed geographic boundaries, such as neighborhoods or communities that share a common interest." *Benavides v. City of Irving,* 638 F.Supp.2d 709, 714 (N.D. Tex. 2009); see also *Perez*, 253 F.Supp.3d at 911 (traditional districting principles include "contiguousness, population equality, maintaining communities of interest, respecting traditional boundaries, and providing protection to incumbents").

18. "The minority group must also demonstrate that it is 'politically cohesive' to pass the *Gingles* threshold inquiry." *LULAC v. Clements,* 986 F.2d 728, 743 (5th Cir. 1993). "The notion of political cohesiveness contemplates that a specified group of voters shares common beliefs, ideals, principles, agendas, concerns, and the like such that they generally unite behind or coalesce around particular candidates and issues." *Id.* at 744.

19. The third *Gingles* precondition requires a plaintiff show that the white majority votes sufficiently as a bloc to enable it "usually" to defeat the minority preferred candidate. *Clements,* 999 F.2d at 849. According to Webster's.com dictionary, "usually" is defined as "most often or as a rule." In analyzing the *Gingles* three part test, "the import of the word 'usually' cannot be underestimated." *Campos v. City of Houston*, 894 F.Supp. 1062, 1066 (S.D. Tex. 1995). The dictionary definition of "usually" means "according to the usual or ordinary course of things; most often; as a rule." http://www.Merriam-Webster.com/dictionary/usually. "Usually" is an adverb "used to describe what happens or exists most of the time or in most cases." http://www.learnersdictionary.com/definition/usually. Thus, if an event occurs 50% of the time, it does not occur "usually" because it does not occur "in most cases." *Campos*, 894 F.Supp. at 1066.

20. Critical to the Court's analysis of the third *Gingles* precondition and/or the totality of the circumstances in this case, "failures of a minority group to elect representatives of its choice that are attributable to 'partisan politics' provide no grounds for relief. Section 2 is a balm for racial minorities, not political ones – even though the two often coincide. …[A court errs] in finding dilution [when] [t]he undisputed facts indicate that partisan

affiliation, not race, caused the defeat of the minority-preferred candidate." *Clements,* 999 F.2d at 854, 891. See also *Johnson,* 512 U.S. at 1014 n. 11 ("[T]he ultimate right of §2 is equality of opportunity, not a guarantee of electoral success for minority-preferred candidates of whatever race."); *Lopez,* 339 F.Supp.3d at 604 ("In sum, the *LULAC* opinion calls upon the court to look at all of the evidence regarding each of the factors to determine whether racial bias or partisan politics better explains the voting patterns."). As the en banc court in *Clements* elaborated, "[a]bsent evidence that minorities have been excluded from the political process, a lack of success at the polls is not sufficient to trigger judicial intervention. Courts must undertake the additional inquiry into the reasons for, or causes of, these electoral losses in order to determine whether they were the product of partisan politics or racial vote dilution, political defeat or built-in bias." 999 F.3d at 853-54. "There is… a powerful argument supporting a rule that plaintiffs, to establish legally sufficient racial bloc voting, must prove that their failure to elect representatives of their choice cannot be characterized as a mere euphemism for political defeat at the polls, or the result of partisan politics.'" *LULAC v. Abbott,* 369 F.Supp.3d 768, 785 (W.D. Tex. 2019) (quoting *Clements,* 999 F.2d at 859).

21. According to the Fifth Circuit, "[i]n addition to the three *Gingles* factors, plaintiffs must survive an additional inquiry before reaching the totality of the circumstances test. Plaintiffs must now affirmatively prove that the minority group will have a "real" opportunity to elect representatives of its choice. *Perez,* 138 S.Ct. at 2333. So after *Perez,* it is no longer enough for plaintiffs to draw a proposed district that satisfies the *Gingles* factors. It must additionally prove that the proposed district will in fact perform as plaintiffs hope." *Harding v. County of Dallas*, 948 F.3d 302, 315-16 (5th Cir. 2020) (Ho, concurring and dissenting). See also *Fusilier v. Landry,* 963 F.3d 447, 462 (5th Cir. 2020).

22. In addition, in analyzing whether Plaintiff's proposed majority-minority district sufficiently enhances Hispanic voters' ability to elect the candidates of their choice, voter turnout "bears on the totality of the circumstances," and therefore the Court "must also consider voter turnout" as part of its analysis. *Fusilier,* 963 F.3d at 462.

23. Plaintiff did not carry her burden to prove the first *Gingles* precondition – compactness.

24. Plaintiff did not carry her burden to prove the second *Gingles* precondition – political cohesion.

25. Plaintiff did not carry her burden to prove the third *Gingles* precondition – white bloc voting that usually defeats the Hispanic preferred candidate in SBISD school board elections.

26. Plaintiff did not carry her burden to affirmatively prove that her sole proposed illustrative district will in fact provide Hispanics in SBISD a "real" opportunity to elect the school board members of their choice.

27. Plaintiff did not carry her burden to satisfy the totality of the circumstances test (i.e., the senate factors) that Hispanics in SBISD do not possess the same opportunities to

participate in the political process and elect representatives of their choice enjoyed by other voters in SBISD.

28. SBISD's at-large voting system does not violate section 2 of the Voting Rights Act.

29. Plaintiff is not entitled to declaratory relief.

30. Plaintiff is not entitled to a temporary or permanent injunction prohibiting SBISD from conducting any future elections for its school board trustees under an at-large voting system.

31. Plaintiff is not entitled to an order directing SBISD to devise an election plan and an implementation schedule that does not involve an at-large voting system.

32. Plaintiff is not entitled to an award of attorneys' fees.

33. Plaintiff is not entitled to an award of expert fees.

34. Plaintiff is not entitled to an award of other litigation expenses.

35. Plaintiff is not entitled to costs of court.

36. Defendants are entitled to costs of court.

Respectfully submitted,

**ABERNATHY, ROEDER, BOYD & HULLETT, P.C.**

*/s/Charles J. Crawford*
**Charles J. Crawford**
State Bar No. 05018900
**Lucas C. Henry**
State Bar No. 24101901
1700 Redbud Blvd., Suite 300
McKinney, Texas 75069
Telephone: (214) 544-4000
Facsimile: (214) 544-4040
ccrawford@abernathy-law.com
lhenry@abernathy-law.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Defendants' Proposed Findings of Fact and Conclusions of Law was served upon Plaintiff's counsel as an exhibit to the Joint Pretrial Order on October 6, 2023.

>  */s/Charles J. Crawford*
>  Charles J. Crawford