# EXHIBIT E



## *Hedwig Village, Texas Code of Ordinances Sec. 101*

CODE OF ORDINANCES City of HEDWIG VILLAGE, TEXAS Codified through Ordinance No. 794, enacted January 11, 2022. (Supp. No. 16)

*Texas Municipal Codes  >  Texas  >  Hedwig Village Code of Ordinances  >  - CODE OF ORDINANCES  > APPENDIX A - PLANNING AND ZONING CODE  >  ARTICLE I. TITLE, AUTHORITY, PURPOSE, POLICIES AND APPLICABILITY*

# § Sec. 101  Title.

This code shall be known as the Planning and Zoning Code of the City of Hedwig Village.

Texas Municipal Codes

Copyright 2024 Municipal Code Corporation All Rights Reserved

**End of Document**



## *Hedwig Village, Texas Code of Ordinances Sec. 103*

CODE OF ORDINANCES City of HEDWIG VILLAGE, TEXAS Codified through Ordinance No. 794, enacted January 11, 2022. (Supp. No. 16)

*Texas Municipal Codes  >  Texas  >  Hedwig Village Code of Ordinances  >  - CODE OF ORDINANCES  >  APPENDIX A - PLANNING AND ZONING CODE  >  ARTICLE I. TITLE, AUTHORITY, PURPOSE, POLICIES AND APPLICABILITY*

## § Sec. 103  General purposes and policies.

This code is adopted for the purposes of promoting and protecting the health, safety, morals and general welfare of the residents, citizens and inhabitants of the City of Hedwig Village and for the protection and preservation of places of historical and cultural importance and significance and the general welfare of the community. The provisions of this code are the requirements necessary to accomplish these purposes.

This code is further adopted in order to regulate the use of land within the City of Hedwig Village so as to promote orderly and healthful development, good government, peace and order of the city and the trade and commerce thereof, as may be necessary or proper to carry into effect the powers vested in the City of Hedwig Village by the constitution and laws of the State of Texas.

Texas Municipal Codes
Copyright 2024 Municipal Code Corporation All Rights Reserved

**End of Document**



## Hedwig Village, Texas Code of Ordinances Sec. 104

CODE OF ORDINANCES City of HEDWIG VILLAGE, TEXAS Codified through Ordinance No. 794, enacted January 11, 2022. (Supp. No. 16)

*Texas Municipal Codes > Texas > Hedwig Village Code of Ordinances > - CODE OF ORDINANCES > APPENDIX A - PLANNING AND ZONING CODE > ARTICLE I. TITLE, AUTHORITY, PURPOSE, POLICIES AND APPLICABILITY*

# § Sec. 104  Comprehensive plan.

A. *Purpose of comprehensive plan.* This comprehensive plan is adopted as a present statement of policy by the City of Hedwig Village and as a guide for future land use, capital improvements and other programs within the city including cooperative efforts with other governmental agencies and the private sector.

This plan should be periodically reviewed by the zoning commission if, in the opinion of the zoning commission or the city council, a review is called for by changing conditions within the city or in surrounding areas. Upon such review, the zoning commission will submit a report to the city council together with recommended changes to the plan, if any.

B. *Comprehensive plan.*

1. *General.* The City of Hedwig Village is a residential community with a complementing business community. One of its most important attributes is its ability to protect the integrity of its residential neighborhoods through its zoning power.

Residential zoning is to be designed to maintain and improve the health, safety, morals and general welfare of the residents, citizens and inhabitants of the City of Hedwig Village by limiting population density, land use, lot size, height and setbacks of buildings and other improvements and by regulating swimming pools, parking, fences and the use of signs, and by enacting such other regulations as may be permitted by law.

Zoning in the business districts is to be designed to promote business activity while minimizing any adverse effects of commercial developments on the residents, citizens and inhabitants of the City of Hedwig Village, and providing a buffer zone between the business districts and the residential districts. Zoning in the City of Hedwig Village is also appropriate for limiting visual pollution, land use, lot size, height and setbacks of buildings and other improvements, including but not limited to regulating swimming pools, parking, site drainage, fences, the use of signs, and the accumulation of refuse in the business districts. In addition, such other regulations as may be permitted by law should be enacted.

2. *Residential.* Existing residential neighborhoods and existing residences should be maintained, improved and protected through controls in the zoning and other ordinances on lot size, use of land and improvements, height and setbacks, swimming pools, parking, fences and the use of signs. These neighborhoods should be enhanced by public and private investments and improvements.

Development in the business districts along Interstate 10 should be designed and located so as to minimize any adverse effect on existing residential uses and to ensure that new development constitutes a benefit to the residential neighborhoods.

Ingress and egress to all development in the business districts should be designed so that traffic to and from the development which originates in or is destined to points outside the City of Hedwig Village will not pass through an existing residential neighborhood.

3. *Business.*

Sec. 104 Comprehensive plan.

a. *General provisions.* The area along Interstate 10 is affected by noise, visual pollution, air pollution and traffic and is therefore an area distinct from residential areas. The City of Hedwig Village should enact such ordinances and promote development within existing business areas to mitigate the effect of these factors on residential areas. Development along Interstate 10 in the existing business districts should be governed by its proximity to homes and not cause traffic, water, sewer, flood, or other conditions adverse to the community.

Regulations should be tailored to encourage property owners to utilize their property to the maximum extent possible in order to produce adequate revenue to amortize the cost to the city of providing necessary services.

Because of varying proximities of residential neighborhoods, traffic flow problems and character of existing development within the business area along Interstate 10, and to maintain and improve the health, safety, morals and general welfare of the residents, citizens, and inhabitants of the City of Hedwig Village, it is advisable to establish and maintain different controls of land use and height and setbacks of improvements within separate areas in this business area.

b. *Business district B-3.* This district shall include the area from the western city limits of the city to a line being the west line of a residual 12.055 acre target tract of land, described in a deed recorded in Volume 7422, Page 167, Real Property Records, Harris County, Texas. It has a minimal amount of retail sales activity and contains development which needs refurbishing. Use and height controls should be designed to encourage improvement. A planned development mechanism is appropriate for this area when the same can be designed to accomplish the objectives herein set out.

c. *Business district B-1.* This district shall include the area between business district B-3 and Echo Lane. Zoning regulations should be tailored to result in a constant upgrading of all retail business in existence in this district to provide constantly improving urban shopping facilities for the residents of the City of Hedwig Village and to result in aesthetically pleasing areas which are economically sound and which produce sufficient sales volume to allow amortization of the cost of providing city services through continually increasing sales tax revenues.

d. *Business district B-2.* This district shall include the area south of Gaylord and west of Brogden. Zoning regulations, including limitations on height, coverage and setbacks of improvements to create greater open spaces, should provide sufficient transitions between existing residential neighborhoods and office and mixed office and commercial uses. Sufficient transitions at all times be provided, and office buildings and structures should not create adverse impacts upon residential neighborhoods.

e. *Business district B-4.* This district shall include the area between Echo Lane and Voss and north of Gaylord, but not including business district B-2. This business area is uniquely situated in that it can be developed without direct relation to the residential neighborhoods since it does not abut or connect to any residential neighborhoods of the City of Hedwig Village. Thus, zoning regulations which recognize the geographic location of this district are appropriate. The purpose of zoning regulations in this district should be to allow maximum utilization of the commercial nature of the area. Regulations should be tailored to encourage property owners to the maximum extent possible to produce adequate revenue to amortize the cost to the city of providing necessary services.

4. *Public services.* Existing public services in the City of Hedwig Village are deemed adequate for all residential properties in the city. Expansion and/or upgrading of existing facilities serving residential neighborhoods is not deemed necessary, except for the periodic replacement of such facilities as become aged or otherwise in need of replacement. Present facilities in the business districts are appropriate for maintenance of adequate service levels to business and commercial interests presently existing in the business districts. Any new development, renovation or replacement of present businesses should be accomplished only if there is appropriate and adequate assurance that the proposed new development will provide sufficient upgrading, renovation or addition of appropriate facilities necessary to serve such new development and otherwise not adversely impact present residential development or existing business development.

The development of open green space contributes to the health, safety and well-being of the residents of the City of Hedwig Village. Therefore, the city's existing parks should be maintained and improved. Landscaped green area in each private development throughout the city should be encouraged. Additional hike and bike trails should be built and existing trails maintained. To these ends citizen participation should be sought.

Sec. 104 Comprehensive plan.

5. *Traffic.* Existing traffic circulation systems in the City of Hedwig Village should be maintained and be upgraded as needed with adequate repairs provided in order to insure good and serviceable streets. Every effort should be made to preserve the integrity of the residential neighborhoods within the city. No zoning ordinance should be adopted which encourages arterial street circulation within the residential neighborhoods of the city.

New commercial and business developments should be permitted where provisions are made for improving and upgrading traffic circulation routes in the area immediately adjacent to such development. Any proposed development should be staged and fully integrated with necessary street improvements.

6. *Implementation.* The city's land use regulations should provide for the rights and interests of neighboring landowners and the general public. These rights and interests should be protected by controlling development which could create or significantly increase glare, light, shade, traffic, noise, noxious fumes, trash accumulation, or rainwater runoff to other landowners.

Every effort should be made by the city to encourage active participation by all citizens, citizen groups, business owners and business organizations in the planning and development of the City of Hedwig Village.

**State Law Reference**

Compliance with comprehensive plan, V.T.C.A., Local Government Code  211.004.

Texas Municipal Codes
Copyright 2024 Municipal Code Corporation All Rights Reserved

---

**End of Document**



## *Hedwig Village, Texas Code of Ordinances Sec. 202*

CODE OF ORDINANCES City of HEDWIG VILLAGE, TEXAS Codified through Ordinance No. 794, enacted January 11, 2022. (Supp. No. 16)

*Texas Municipal Codes  >  Texas  >  Hedwig Village Code of Ordinances  >  - CODE OF ORDINANCES  >  APPENDIX A - PLANNING AND ZONING CODE  >  ARTICLE II. DEFINITIONS AND INTERPRETATION*

# § Sec. 202  Definitions.

The following definitions shall apply in the interpretation and the enforcement of this code:

(1) *Accessory building.* A subordinate building below, at or above grade, located in district A or C on the lot occupied by the main building, the use of which is customarily incidental to the uses permitted in section 505 of this code and which is in accordance with the provisions of this code for accessory use as herein set out.

(2) *Accessory use.* A structure or use which (a) is subordinate and incidental to and serves a principal building or a principal use; (b) is subordinate in area, extent and purpose to the principal structure or principal use; (c) contributes to the comfort, convenience, or necessity of the occupants in the principal structure; and (d) is located on the same lot as the principal structure.

(3) *Alter/alterations.* Any change, not including maintenance or renewal, in the foundation, slab, supporting members, roof rafters or joists, bearing walls, columns, beams, girders, trusses, electrical wiring, plumbing, air conditioning, heating, or ventilation systems of any in-ground, on-ground, or aboveground building, and any addition, modification, or remodeling of such components.

(4) *Average width.* The average width of a rectangular lot shall be its area divided by its longest dimension. The average width of other lots shall be the area divided by the length of a straight line drawn from the midpoint of the front property line to the most distant point on the rear property line.

(5) *Block.* An area enclosed by streets and occupied by or intended for building; or if said word is used as a term of measurement, it shall mean a distance along a side of a street between the nearest two streets which intersect said street on said side.

(6) *Board of adjustment.* A board having powers and duties as provided in other sections of this code to hear matters on appeal concerning interpretation of the provisions of this code, to grant variances and special exceptions.

(7) *Building.* Any structure, below, at, or above natural grade, or part thereof, designed or suitable for the habitation or sheltering of human beings or animals, for the sheltering, storing, or displaying of property, or for the conduct of business or professional services of any kind.

(8) *Building area.* The building area shall include the area of all roofed buildings placed on a lot, but shall exclude open driveways, open patios without a roof, and swimming pools without a roof.

(9) *Building official.* Any person duly appointed by the City Council of the City of Hedwig Village, as provided in other ordinances of the city, without limitation, charged with the duty and obligation of issuing permits and certificates of occupancy and primarily charged with the responsibility of enforcing the provisions of this zoning code.

(10) *Building permit.* A permit issued by the building official under the terms and provisions of the ordinances of the City of Hedwig Village providing for the issuance of such permits.

Sec. 202 Definitions.

(11) *Business.* Any isolated or continuous activity or commercial enterprise conducted for compensation or profit.

(12) *Camper trailer.* A vehicular unit mounted on wheels and constructed with collapsible partial side walls which fold for towing by another vehicle and unfold at the campsite to provide temporary living quarters for recreational, camping or travel use.

(13) *Certificate of compliance.* Certification issued by signature of the planning and zoning official certifying that a proposed development complies with the terms and provisions of this zoning code; such certification shall constitute a statement as to compliance of proposed building with this code.

(14) *Certificate of occupancy.* A certificate issued by the building official which certifies that a structure has been erected in accordance with this zoning code and all other ordinances of the city, the effect of which shall permit the occupancy of a building.

(15) *City council.* The body established under and by the authority of the laws of the State of Texas for the enactment of ordinances and the enforcement thereof and having the ultimate authority for amendment or repeal of any provision of this code.

(15.5) *Coffee, bakery and dessert shop.* A building that contains facilities used primarily to sell a limited menu of foods and drinks such as coffee, ice cream, yogurt, custard, smoothies, cakes or cookies to the public. This type of business could include drive-through facilities or a take-out window or counter.

(16) *Commencement of construction.* Any work on the project site pertaining to the work of the project itself that is in addition to the preliminary work of locating signs and temporary construction buildings and the facilities on the site, and is in addition to clearing and grading the site.

(17) *Corner lot.* A lot having two adjacent sides which abut, respectively, two streets which intersect at the corner of such lot at an interior angle of 135 degrees or less.

(18) *Development.* The carrying out of any building operation which requires permits under the terms and provisions of this zoning code or the making of any material change in the use or appearance of any structure or land requiring a permit or other authority under this zoning code.

(19) *District.* See Zoning district.

(20) *Dwelling.* A building or a portion of a building which is arranged, occupied or intended to be occupied by one or more persons over the age of 18 years as living quarters and includes facilities for food preparation and sleep. The term dwelling does not include a hotel or motel.

(21) *Easement.* The lawful right one person or entity has to use the land of another for a specific or general purpose and for a definite or indefinite term.

(22) *Expansion of nonconforming use.* Enlargement by the addition of floor area, coverage, or addition of land where there is located a use or structure which, although it is lawful at the time of its inception, is now prohibited under this zoning code.

(23) *Family.* One or more persons related by blood, adoption, or marriage, living and cooking together as a single housekeeping unit, exclusive of household servants. Not more than three persons living and cooking together as a single housekeeping unit though not related by blood, adoption, or marriage shall be deemed to constitute a family.

(23.5) *Fast food restaurant.* A commercial business located in a freestanding building or leased portion of a retail complex that contains facilities for food preparation and service to the public, and could include drive-through facilities. Fast food is prepared in quantity by a standardized method and can be dispensed quickly at inexpensive restaurants for eating there or elsewhere.

(24) *Fence.* Any visible or tangible obstruction to sight interposed between two portions of land or which divides a piece of land into distinct portions. No fence may impede sight visibility triangles.

(25) *Floor area.* Gross enclosed building area.

(26) *Front of house.* The front of a house is that part of a house which faces the front yard.

Sec. 202 Definitions.

(27) *Front property line.* The front property line shall be the shortest property line contiguous to a street or access easement.

(28) *Front yard.* An open, unoccupied space on a lot facing a street, extending across the front of the lot between the side lot lines and from the outermost surface of the main building to the front lot line, with the minimum distance between the front lot line and the main building line as specified for the district in which the lot is located. In the case of a lot which borders upon more than one street, the front yard shall face the same as the front yard of the lot whose side yard is adjacent to such lot.

(28.5) *Gross floor area.* Gross floor area is the total floor area inside the building envelope, including the external walls, and any patio.

(29) *Home occupation.* A business, profession or trade conducted within or from a residential building or accessory structure for gain or support by a resident of the dwelling which is incidental and secondary to the residential use of the building and does not change the essential character of the use.

(30) *Identification sign.* A sign containing tenant information and/or the address of the situs.

(31) *Impervious (impermeable) surface.* Any material applied to the surface of land which does not permit natural infiltration or passage of water into the ground, except for the ground area of buildings.

(32) *Land.* The earth, water, and air above, below, or on the surface, including any improvements or structures customarily regarded as the land.

(33) *Lot.* A part of a platted and recorded subdivision which shall be readily identifiable upon a plat of such subdivision, which plat shall show the dimensions of its subdivision lots and dimensions of all streets, alleys, squares, parks, or other portions of the same intended to be dedicated to public use or for the use of purchasers or owners of lots fronting thereon or adjacent thereto.

(34) *Lot depth.* The minimum horizontal distance between the front and rear lot lines.

(34.5) *Medium density residential developments.* A residential development of single-family detached homes at a maximum density of ten dwelling units an acre.

(35) *Multifamily dwelling.* A building designed for occupancy by more than one family, or occupied by more than one family.

(36) *Nonconforming use.* Any use lawfully being made of any land prior to April 29, 1955, which, upon the adoption of this code or any amendment thereto, does not comply with all the regulations of this code or any amendment thereto, thus rendering such use nonconforming. A nonconforming use may relate to land, building, structure, or any parts thereof.

(37) *Official zoning district map.* A map adopted as a part of this zoning code having delineated thereon all of the zoning districts and the boundaries thereof within the City of Hedwig Village.

(38) *Open space.* An area of land or water set aside, open, and unobstructed to the sky.

(39) *Owner.* Any legal entity, person or otherwise who holds superior title to and can evidence superior title in real or personal property.

(40) *Parcel.* Any quantity of land capable of being described with such definiteness that its location and boundaries may be established.

(41) *Parking/traffic direction sign.* A sign containing information to aid the public in locating parking facilities or to aid traffic control on the site. A parking/traffic direction sign shall not exceed three feet in height above surrounding grade, may not exceed four feet in width or 20 inches in thickness, nor shall it be externally illuminated.

(42) *Patio.* As used by a restaurant, an inner courtyard open to the sky or a defined open area enclosed by a wall or fence, which may or may not be roofed, adjoining a restaurant for outside dining.

(43) *Paved.* Ground covered with stone, brick, concrete, asphalt, gravel, iron ore or other substantial matter making a firm, smooth and level surface.

Sec. 202 Definitions.

(44) *Person.* Any natural person or an entity created by law including, but not limited to, a corporation (profit or nonprofit), partnership or association.

(45) *Planning and zoning commission.* The planning and zoning commission of the City of Hedwig Village.

(46) *Premises.* Land and the improvements thereon.

(47) *Profession.* The use of specialized knowledge or attainments for compensation or profit.

(48) *Property building line.* The line drawn on the subdivision plat indicating the front or outermost line or point where a building may be erected. In case of conflict between the provisions of this code and the designated property line on the subdivision plat, the line providing the greatest setback distance shall control.

(49) *Rear yard.* An open, unoccupied space, except for accessory buildings as permitted, extending across the rear of a lot from one side lot line to the other side lot line and having a minimum depth between the main building and the rear lot line as specified for the district in which the lot is located.

(50) *Recreational vehicle.* A vehicular type unit primarily designed for temporary living quarters for recreational, camping or travel use, which either has its own motive power or is mounted on or drawn by another vehicle.

(50.5) *Restaurant.* A commercial business located in a freestanding building or leased portion of a retail complex that contains facilities for food preparation and service to the public, excluding drive-through service.

(50.75) *Restaurant serving alcohol.* A commercial business located in a freestanding building or leased portion of a retail complex that contains facilities for food or drink preparation and service to the public, excluding drive-through service.

(51) *Road/street.* A strip of land appropriated for and used by the public for the purpose of travel between different places.

(52) *Screened.* Obscured from public view.

(52.5) *Shared parking.* The use of the same off-street parking space or spaces to satisfy the off-street parking requirements for two or more individual use classifications.

(53) *Side yard.* An open space on each side of a building and on the same lot with the building situated between the building and the side line of the lot and extending between the front yard and the rear yard. Any lot line, other than the rear lot line and the front lot line, shall be deemed a side line.

(54) *Sign.* Any structure, part thereof, or device or inscription which is located upon, attached to, or painted or represented on any land, or on the outside of any building or structure, or on an awning, canopy, marquee or similar appendage, or permanently affixed to the glass on the outside of the building, or structure, and which displays or includes any numeral, letter, work, model, banner, emblem, insignia, symbol, device, monogram, heraldry, trademark, light or other representation used as, or in the nature of an announcement, advertisement, attention arrester, direction, warning, or designation of any person, firm, group, organization, corporation, association, place, commodity, product, service, business, profession, enterprise, industry, activity, or any combination thereof.

(55) *Single-family dwelling.* A building designed exclusively for residential occupancy and having accommodations for and occupied by only one family.

(56) *Site plan.* A two-dimensional graphic illustration setting forth minimum and maximum requirements for ingress to and egress from property, public or private streets or drives with adequate right-of-way, sidewalks, utility, drainage, maximum lot coverage, yards and open spaces, screening walls or fences, landscaping or other development and protective requirements, including maintenance considered necessary to create a reasonable transition and protection of adjacent property.

(57) *Structure.* Any form or arrangement of building or construction materials below, at or above grade involving the necessity or precaution of providing proper support, bracing, tying, anchoring or other protection against the pressure of the elements.

Sec. 202 Definitions.

(58) *Subdivision.* A tract of land identifiable upon a plat duly approved by the proper authority and filed for record in the office of the county clerk of Harris County, Texas.

(58.5) *Take-out restaurant.* A restaurant that provides very limited seating for on-premises consumption of food or beverages by the public and may include a drive-through facility or a take-out window or counter.

(59) *Trade.* Any buying, selling, or exchanging of property or services for profit.

(60) *Travel trailer.* A vehicular unit, mounted on wheels, designed to provide temporary living quarters for recreational, camping or travel use, and of such size or weight as not to require special highway movement permits when drawn by a motorized vehicle.

(61) *Truck camper.* A portable unit constructed to provide temporary living quarters for recreational, camping or travel use, consisting of a roof, floor and sides, designed to be loaded onto and unloaded from the bed of a pickup truck.

(62) *Use.* The particular type of function or purpose to which land and/or a structure is committed.

(63) *Utility trailer.* A vehicular unit, mounted on wheels, designed for towing by another vehicle to haul material or animals of any sort.

(64) *Variance.* Relief granted by order of the board of adjustment, not contrary to the public interest, where owing to special conditions, the literal enforcement of the regulations of the zoning code will result in unnecessary hardship.

(65) *Vehicle.* An instrument of conveyance, whether licensed or unlicensed under the provisions of the law of the State of Texas, excluding lawn maintenance equipment and go-carts having a rear axle width of no more than 3 feet. The term vehicle as used herein shall also include for the purpose of regulating parking within the city as herein provided, a camper trailer, recreational vehicle, travel trailer, truck camper, water craft and utility trailer.

(66) *Water craft.* A boat, houseboat, canoe, raft, surfboard or other apparatus designed for use on water, including trailers therefor, and motors or engines designed to propel such craft or apparatus.

(67) *Window.* Any opening in a wall or roof which functions or appears to function to admit light to a building or structure.

(68) *Yard.* An open space on a lot or parcel of land upon which a building is situated and which is unobstructed above the general ground level of the graded lot to the sky, except as provided for roof overhang and similar special architectural features and landscape features.

(69) *Zoning district.* Any district delineated on the official zoning district map under the terms and provisions of this code or which may hereinafter be created subsequent to the enactment of this code for which regulations governing the area, height, use of buildings and/or use of land, and other regulations relating to development or maintenance of existing uses or structures, are uniform.

**HISTORY NOTE:**

(Ord. No. 309,  1, 3-9-1989; Ord. No. 385,  2, 7-8-1993; Ord. No. 394,  1, 11-11-1993; Ord. No. 419,  2, 3, 4-11-1996; Ord. No. 544,  3, 12-11-2003; Ord. No.  , 2(App. A), 7-13-2017; Ord. No.  , 2(App. A), 10-15-2020; Ord. No.  , 2(App. A), 12-9-2021)

Texas Municipal Codes
Copyright 2024 Municipal Code Corporation All Rights Reserved



## *Hedwig Village, Texas Code of Ordinances Sec. 501*

CODE OF ORDINANCES City of HEDWIG VILLAGE, TEXAS Codified through Ordinance No. 794, enacted January 11, 2022. (Supp. No. 16)

*Texas Municipal Codes  >  Texas  >  Hedwig Village Code of Ordinances  >  - CODE OF ORDINANCES  >
APPENDIX A - PLANNING AND ZONING CODE  >  ARTICLE V. ZONING REGULATIONS*

# § Sec. 501  Districts established.

In order to carry out the goals and objectives of the comprehensive plan and for the purposes of this code, the following districts are hereby created:

(1) *Residential districts:*

Residential district A

Residential district C

(2) *Business districts:*

Business district B-1

Business district B-2

Business district B-3

Business district B-4.

Texas Municipal Codes
Copyright 2024 Municipal Code Corporation All Rights Reserved

**End of Document**



# *Hedwig Village, Texas Code of Ordinances Sec. 502*

CODE OF ORDINANCES City of HEDWIG VILLAGE, TEXAS Codified through Ordinance No. 794, enacted January 11, 2022. (Supp. No. 16)

*Texas Municipal Codes > Texas > Hedwig Village Code of Ordinances > - CODE OF ORDINANCES > APPENDIX A - PLANNING AND ZONING CODE > ARTICLE V. ZONING REGULATIONS*

## § Sec. 502  Permitted uses.

A. *Business districts.* No structure or land in a business district of the City of Hedwig Village shall hereafter be constructed, built, erected, moved, altered, remodeled by expanding the size thereof, reconstructed, used, or occupied except in accordance with the requirements of the zoning district and of this code in which the structure is located. However, a structure, use, or lot lawfully existing or permitted at the date of adoption of this zoning code may continue to be occupied as a nonconforming use under the provisions and requirements of this Code.

B. *Residential districts.* No structure or land in a residential district of the City of Hedwig Village shall hereafter be constructed, built, erected, moved, altered, remodeled by expanding the size thereof, reconstructed, used, or occupied except in accordance with the requirements of the zoning district and of this code in which the structure is located. However, a land use or structure lawfully permitted shall be allowed to be occupied, altered, remodeled or expanded given the proposed construction reduces or does not increase any existing nonconformity that is prohibited under section 505.D, section 505.E and section 505.F. Such allowance is subject to approval of the building official, whose discretion shall be guided by the following considerations:

(1) The extent of any existing nonconformity;

(2) The relation of any existing nonconformity to the potential allowance; and

(3) The feasibility and relative benefit to the neighborhood of the reduction or termination of any existing nonconformity.

**HISTORY NOTE:**

 (Ord. No.  ,  2(Exh. A), 1-17-2019

Texas Municipal Codes
Copyright 2024 Municipal Code Corporation All Rights Reserved

**End of Document**



*Hedwig Village, Texas Code of Ordinances Sec. 505*

CODE OF ORDINANCES City of HEDWIG VILLAGE, TEXAS Codified through Ordinance No. 794, enacted January 11, 2022. (Supp. No. 16)

*Texas Municipal Codes > Texas > Hedwig Village Code of Ordinances > - CODE OF ORDINANCES > APPENDIX A - PLANNING AND ZONING CODE > ARTICLE V. ZONING REGULATIONS*

## § Sec. 505  Residential districts A and C.

A. *Use regulations.* In residential districts A and C, no building, structure, land or premises shall be used, and no building or structure shall hereafter be erected, moved, constructed or altered except for one or more of the following uses:

(1) One single-family dwelling.

(2) Temporary buildings and materials for uses incidental to construction work on the premises. These temporary buildings and materials shall be allowed on the premises for a period not to exceed six months beginning with the issuance of a construction permit; provided, however, the building official may grant extensions for additional successive periods of not more than three months each if it is shown that, due to the nature and extent of the construction activity, such extension is necessary to accomplish completion of the project and the construction has proceeded with due diligence. In all events, these temporary buildings and materials shall be removed upon completion or abandonment of construction work.

(3) Accessory uses and buildings, including a private garage and servant's quarters, and such as is customarily incidental to any permitted use when located on the same premises, but such accessory building shall not involve the conduct of a business, trade or profession on the premises.

B. *Limitations.* The following limitations and restrictions shall apply to all of the above permitted uses:

1. *Garages.* No garage attached to the main building and which faces or opens toward any street shall be any closer to the street than the front of the house, and no garage or out building may be used as a residence or living quarters, except by persons employed on the premises, or except during the construction period of the main residence, and then only for a period not to exceed six months.

2. *Parking.* Off-street paved parking area shall be provided on the premises for all vehicles owned or used by the occupants of the dwelling. Parking of vehicles in the front yard and in a side yard which adjoins a street on any lot in any residential district shall be confined to such off-street paved parking areas.

3. *Swimming pools.* All swimming pools shall be enclosed by a structural fence to prevent entrance from without except by means of a self-closing and self-latching gate and shall be obscured from view from any public street. Backwash water shall be piped to the sanitary sewer.

   Notwithstanding other provisions of this code, the water edge of swimming pools may not be located closer than three feet from a rear or side ground utility easement or closer than five feet from a rear or side property line, whichever is greater. Both aboveground and belowground swimming pools are deemed to be structures for the purposes of all parts of this code.

4. *Recreational vehicles.* No vehicle which is or which customarily is equipped with living or sleeping facilities, whether self-propelled or designed to be used as a trailer or for use otherwise in conjunction with any vehicle, whether occupied or not, shall be kept in a front yard for a period longer than a total of 48 hours during any consecutive eight-day period, except where such vehicle or trailer is for use incidental to construction as provided under subsection 505.A.(2).

Sec. 505 Residential districts A and C.

5. *Watercraft.* No boat, houseboat, canoe, raft, surfboard, or other apparatus designed for use on water, including trailers therefor, and no motor or engine designed to propel such craft or apparatus, shall be kept in a front yard for a period totaling more than 48 hours during any consecutive eight-day period.

6. *Trucks.* No truck in excess of one-ton capacity nor any vehicle designed to transport more than 12 persons shall be parked within district A or C except for loading and unloading, but in no event shall such parking exceed a total period of 48 hours during any consecutive eight-day period.

7. *Other property.* No property not incidental to a permitted use in residential districts A and C, and no utility trailer shall be kept in a front yard for a period longer than a total of 48 hours during any consecutive eight-day period.

8. *Places of public assembly.* Places of assembly which were permitted prior to 1955 shall provide off-street parking area or areas on the premises of sufficient size to accommodate one parking space for each two seats in the place of assembly. Each parking space shall constitute an area of not less than 175 square feet. Adequate driveways and space for traffic movement, together with unblocked space for access by emergency vehicles, shall be provided on the site. Parking spaces, areas, driveways, and emergency lanes shall be marked and all of these shall be maintained. Parking spaces, areas, driveways, and emergency lanes shall be constructed to meet requirements for secondary streets as prescribed in Ordinance No. 52, section 2(e)(3), enacted March 29, 1961. Such off-street parking area or areas shall have sufficient grades and surface and/or underground drains with adequate sized drain pipe and number of clean-out facilities.

9. *Business.* No business shall be conducted in residential districts A or C.

10. *Fences.*

(a) Unless otherwise allowed by this subsection 8.10., no fence shall be more than eight feet in height measured from the elevation grade at the fence line; nor shall the fence extend five feet past the front of the residence's side elevation closest to the fence. All fences along a roadway must have a finished side facing the roadway.

(1) Exceptions:

a. Fences fronting Beinhorn Road, Echo Lane, Piney Point Road, and Taylorcrest Road. Front yard fences are allowed for residential properties fronting these roadways in the city. A front yard fence is limited to four feet tall from grade, must be 80 percent open and may have masonry columns and may include up to a one-foot-tall masonry base as part of the fence. Vehicle gates may be up to five feet in height. These fences must be decorative and utilize similar materials of the home and must complement the existing or proposed residence. Front yard fences must be located completely on the property and no portion shall be located on the right-of-way. A Knox box must be installed to ensure fire and emergency access for homes with vehicle gates.

1. Decorative lighting can be installed on top of a front-yard fence at driveway entrance(s). This decorative lighting can be gas lanterns, or low-level lighting 3k or less color temperature and compliant with dark-sky lighting standards.

2. All vehicle gates must be setback at least 22 feet back from the edge of pavement closest to the home.

b. Fences fronting Bunker Hill Road. A front-yard fence along Bunker Hill roadway may be up to a six-foot-tall solid fence. Front-yard fences must be located completely on the property and no portion shall be located on the right-of-way. A Knox box must be installed to ensure fire and emergency access for homes with vehicle gates.

1. Decorative lighting can be installed on top of the fence at the driveway entrance(s). This decorative lighting can be gas lanterns, or low-level lighting 3k or less color temperature that complies with dark-sky lighting standards.

c. A perimeter fence that faces a street may tie into the residence's side elevation closest to the fence at six and half feet in height.

Sec. 505 Residential districts A and C.

    d. Rear and side yard fences within residential districts A and C adjacent to non-residential uses (such as schools, churches, and public uses). A residential rear or side-yard fence that abuts a non-residential use is permitted an increased height of ten feet. Any fence above eight feet must be designed by a licensed engineered to the standards of the currently adopted building code.

    e. Rear-yard fences within Residential District A neighboring the B-2 (Second Commercial District). A rear-yard or side-yard fence is permitted at an increased height of 14 feet at the rear or side property line neighboring B-2. Any fence above eight feet must be designed by a licensed engineered to the standards of the currently adopted building code.

(b) Fencing materials:

    (1) Finished masonry (not exposed CMU), stained or natural wood, wrought iron painted black fencing materials or combination thereof shall be used for fences, walls, or gates. Chain link fencing is not permitted. Synthetic materials may be used as approved by the building official.

    (2) Vine-covered walls shall be allowed.

    (3) No barbed or razor wire shall be used or maintained as part of any fence, wall, gate or hedge. No sharp point, including glass, shall project from the top of the fence or wall.

    (4) No salvaged materials, scrap wood, or recycled materials shall be used for fencing or walls. Fencing and walls shall be constructed with all new materials.

    (5) Existing legal nonconforming fences or walls shall be maintained or repaired.

    (6) All swinging gates shall be prohibited from encroaching into the public right-of-way.

    (7) No vinyl or plastic slats may be used as a screening material for residential fence.

(c) For the purposes of this subsection B.10., contiguous lots held under common ownership shall be considered as one lot for the purpose of establishing required yards. No fence shall be erected on a vacant lot unless such vacant lot is contiguous to a lot or lots containing the residence of the owner of the vacant lot or lots.

(d) This subsection B.10. does not apply to construction related fencing.

11. *Front of dwelling.* The front of a dwelling existing at the time this code is enacted shall be the front of any subsequent dwelling constructed on that lot.

12. *Aircraft.* Property in residential district A or C shall not be used for the takeoff, landing, parking or storage of helicopters, balloons or other aircraft of any sort. This prohibition shall not apply to the landing and takeoff of emergency or law enforcement helicopters while in the performance of official duties.

13. *Antennas.* Dish-type satellite receiving or transmitting antennas shall not be located in a front or side yard, and the highest point on any such antenna shall be not more than 12 feet above ground level.

14. *Accessory buildings.* No accessory building shall be located in a front yard.

15. *Windows above second stories.* No building or structure in residential district A or C shall have placed or constructed thereon any window above a second story unless such window faces the street to which such building or structure faces.

16. *Floor area above second stories.* No building or structure in residential district A or C shall contain more than 500 square feet of habitable floor area above the second story.

17. *Mechanical equipment and trashcan screening.* Mechanical equipment, whether ground\xAD mounted, roof-mounted, or otherwise attached to the building, shall be screened from view from the street by fencing, building design (such as a parapet), or landscaping. For new construction and additions or remodels greater than 50% screening of trashcans must be provided by either fencing, building design or landscaping after the adopted date of this ordinance.

C. *Required lot area and width.* Unless otherwise provided for on a subdivision plat duly approved by the City of Hedwig Village prior to the date of enactment of this code, the following minimum lot areas and widths shall apply:

Sec. 505 Residential districts A and C.

(1) A lot shall have an area of not less than 21,000 square feet in residential district A and not less than 15,000 square feet in residential district C, exclusive of public or private roads or either of them.

(2) The average width of a lot shall be not less than 110 feet, with a minimum of 90 feet at the front building line.

D. *Ground coverage and lot area covered by impermeable surfaces limitations.* The total ground coverage of all buildings on a lot shall not exceed 25 percent of the lot area. Furthermore, not more than a total of 40 percent of the lot area shall be covered by all buildings, driveways, sidewalks, patios, pool decks or other surfaces which are impermeable to water; provided, however, that the surface area of water in outdoor swimming pools shall not be considered a surface which is impermeable to water.

E. *Yard required.*

1. *General.* No building or accessory structure shall be constructed or erected within any required yard unless otherwise specifically authorized herein.

2. *Front yard.* The front yard depth shall be not less than 70 feet at any point from the center line of the public street or street access easement which established the front property line.

3. *Side yard.* There shall be two side yards, each side yard having a minimum width of 15 feet.

4. *Rear yard.* The rear yard shall be not less than 25 feet; provided, however, accessory structures may be constructed or erected within a required rear yard provided such accessory structure is located not less than 15 feet from any property line.

F. *Building height limit.* No building, structure, or device in residential district A or C including anything attached thereto or anything constructed for use in conjunction therewith, shall exceed 35 feet in height above the average mean ground level prior to construction. This limitation shall not apply to chimneys, which may exceed such maximum height by five feet. Notwithstanding the foregoing height limitation, no building or structure in residential district A or C shall exceed in height an imaginary line that is 63.5 degrees, with the horizontal, at the outer edge of the yard upon which such building or structure is located.

G. *Other structures.* Notwithstanding other provisions of this code, underground structures not visible at or above grade, other than swimming pools, may be built up to a property line, except that in no event shall they be closer than 30 feet to the centerline of any street.

H. *Exceptions to sections 505. C. and 505. E.*

(1) Exception for deed restrictions on lots platted prior to July 13, 1955. Upon application for a building permit for construction on only one lot lying within a subdivision for which a plat was recorded with the county clerk of Harris County, Texas, prior to July 13, 1955, and a showing by the applicant that such construction complies fully with the terms of currently valid deed restrictions on such lot, the limits on required lot area (section 505.C.) and yards and required yard depth (section 505.E.) shall not apply to such construction insofar as such limits are otherwise specified in such deed restrictions. If such deed restrictions have been changed subsequent to the enactment of this zoning code, then deed restrictions in effect on the date of enactment of this zoning code shall be those with which compliance must be shown by the applicant. Such lot and structures thereon shall be deemed to be permitted nonconforming uses. Nothing herein shall be construed as obligating or permitting the City of Hedwig Village to enforce or otherwise protect deed restrictions on any property to any degree or extent.

(2) Exception to side and rear yard requirements for additions to existing primary structures constructed before January 1, 1980. Upon application for a building permit for a structure to be added to an existing structure, the yards required will be no less than ten feet wide in the side yard and no less than 15 feet deep in the rear yard. A building permit shall be granted by the building official upon a showing that:

(a) The structure represents an addition to a portion of an existing primary structure constructed before January 1, 1980;

(b) The additional structure will not result in a violation of any coverage restrictions(s) for the lot;

(c) The additional structure will not result in a violation of the building height limit; and

(d) The additional structure conforms to all federal, state and local codes, ordinances and conditions.

Sec. 505 Residential districts A and C.

(3) Exception for new construction for the purpose of connection of an accessory building to a primary structure, the yards required will be no less than ten feet wide in the side yard and no less than 15 feet deep in the rear yard. A permit shall be granted by the building official upon a showing that:

(a) The connection is the result of the attachment of an accessory building constructed prior to March 31, 2004, to a primary structure constructed prior to January 1, 1980 and, except as permitted in subsection (3)(b) below, does not result in any new construction in the side or rear yard area;

(b) The connection consists only of an existing structure or an extension of such structure along its existing building line;

(c) The connection will not result in a violation of any coverage restriction(s) for the lot;

(d) The connection will not result in a violation of the building height limit; and

(e) The connection structure conforms to all federal, state and local codes, ordinances and conditions.

(4) Exception for the alteration or addition to a nonconforming primary structure that was constructed prior to January 1, 1980. Upon application, a building permit will be issued by the building official for the alteration or addition to a nonconforming primary structure that was constructed prior to January 1, 1980, upon showing that:

(a) Any permitted alteration or addition to a nonconforming primary structure will not result in a violation of any coverage restrictions for the lot;

(b) Any permitted alteration or addition to a nonconforming primary structure represents no more than 30 percent increase in the square footage of livable space in the existing nonconforming primary structure;

(c) Any permitted alteration or addition to a nonconforming primary structure will not result in an increase of the specific existing nonconformity; and

(d) Any permitted alteration or addition shall conform to all federal, state and local codes, ordinances and conditions.

**HISTORY NOTE:**

 (Ord. No. 310,  1, 3-9-1989; Ord. No. 311,  1, 3-9-1989; Ord. No. 344,  2, 4-11-1991; Ord. No. 373,  2, 11-12-1992; Ord. No. 394,  2, 3, 11-11-1993; Ord. No. 457,  2, 10-8-1998; Ord. No. 466,  2, 9-9-1999; Ord. No. 467,  2, 9-9-1999; Ord. No. 546,  2, 3-31-2004; Ord. No.  , 2(App. A), 9-20-2018; Ord. No.  , 2(Exh. B), 1-17-2019; Ord. No.  , 2(App. A), 12-9-2021)

Texas Municipal Codes
Copyright 2024 Municipal Code Corporation All Rights Reserved

End of Document



CODE OF ORDINANCES City of HEDWIG VILLAGE, TEXAS Codified through Ordinance No. 794, enacted January 11, 2022. (Supp. No. 16)

*Texas Municipal Codes > Texas > Hedwig Village Code of Ordinances > - CODE OF ORDINANCES > APPENDIX A - PLANNING AND ZONING CODE > ARTICLE V. ZONING REGULATIONS*

# § Sec. 506  Business district B.

A. *Use of property.*

  1. *Uses permitted:*

   a. *General.* In business district B, all business shall be conducted from, and all merchandise stored, kept or displayed within a conforming building except that restaurants may provide a patio for outside dining sales provided that such area shall be counted as part of the building area in calculating setback, coverage, parking or other incidental requirements. Allowed businesses are those permitted as provided in section A.1.(f) below and those that are not specifically prohibited in 506.A.2. (below or in the Code of Ordinances.) A business use is determined by whether 50 percent or more of the revenue of the business is derived by the sale of the designated goods or services. Incidental sales of goods (i.e. which comprise less than 50 percent of the revenue of the business) which are not prohibited below may be allowed with the approval of the building official. The building official shall maintain a more detailed list of specific approved business uses in the business districts.

   b. *Business district B-1.* No property shall be used and no building shall be hereafter used, erected, reconstructed, altered, or enlarged, unless otherwise provided in this code, except for one or more of the following uses or uses which are equivalent thereto as determined by the planning and zoning commission:

    (1) At least 85 percent of the aggregate net leasable space of the ground floor of a building or 85 percent of the aggregate net leasable space of the ground floors of buildings which comprise a retail center or business office complex shall be used for sales tax generating businesses;

    (2) Businesses on floors above the ground floor are not required to be sales tax generating businesses;

    (3) Healthcare, medical, and social assistance offices must not exceed 30 percent of overall square footage of the building.

   c. *Business districts B-2.* No property shall be used and no building shall be hereafter used, erected, reconstructed, altered, or enlarged unless otherwise provided in this code, except for one or more of the following uses or uses which are equivalent thereto as determined by the planning and zoning commission:

    (1) At least 50 percent of the aggregate net leasable space of the ground floor(s) of a building or 50 percent of the aggregate net leasable space of the ground floors of buildings.) which comprise a retail center or business office complex shall be used for sales tax generating businesses;

    (2) Businesses on floors above the ground floor are not required to be sales tax generating businesses;

    (3) Single-family homes on individually platted lots in a medium density development along a public or private street.

    (4) Healthcare, medical, and social assistance offices must not exceed 30 percent of overall square footage of the building.

Sec. 506 Business district B.

d. *Business districts B-3.* No property shall be used and no building shall be hereafter used, erected, reconstructed, altered, or enlarged unless otherwise provided in this code, except for one or more of the following uses or uses which are equivalent thereto as determined by the planning and zoning commission:

(1) At least 85 percent of the aggregate net leasable space of the ground floor of a building or 85 percent of the aggregate net leasable space of the ground floors of buildings constituting a retail center or business office complex shall be used for sales tax generating businesses;

(2) Businesses on floors above the ground floor are not required to be sales tax generating businesses;

(3) A planned unit development, subject to limits specifically defined for business district B-3, may be developed.

(4) Healthcare, medical, and social assistance offices must not exceed 30 percent of overall square footage of the building.

e. *Business districts B-4.* No property shall be used and no building shall be hereafter used, erected, reconstructed, altered, or enlarged unless otherwise provided in this code, except for one or more of the following uses or uses which are equivalent thereto as determined by the planning and zoning commission:

(1) At least 75 percent of the aggregate net leasable space of the ground floor of a building or 75 percent of the aggregate net leasable space of the ground floors of. of buildings which constitute a retail center or business office complex shall be used for sales tax generating businesses;

(2) Businesses on floors above the ground floor are not required to be sales tax generating businesses;

(3) A planned unit development, subject to limits specifically defined for business district B-4, may be developed.

(4) Social assistance offices must not exceed 30 percent of overall square footage of the building.

f. *Permitted uses list.*

*Business districts B-1, B-2, B-3, B-4.* No property shall be used and no building shall be hereafter used, erected, reconstructed, altered, or enlarged unless otherwise provided in this code, except for one or more of the following uses or uses which are equivalent thereto as determined by the planning and zoning commission:

NOTE:(RS) denotes "retail sales" tax generating businesses. (NRS) denotes "non-retail sales" which generates no sales tax revenues for the city.

(1) Administrative and support services; (NRS).

(2) Antique stores; (RS).

(3) Art supplies or galleries; (RS).

(4) Banks, financial, and insurance service institutions; (NRS).

(5) Bar: first class for consuming alcohol on premise; (RS).

(6) Book stores; (RS).

(7) Beauty store, salon or spa; (RS).

(8) Building contractors, office only, no materials or equipment on premises; (RS).

(9) Cigar, tobacco shops; (RS).

(10) Cleaners, tailors and laundries, retail; (RS).

(11) Clothing stores: men's, women's, children's and/or babies'; (RS).

(12) Computer, and electronics stores; (RS).

(13) Dancing studios, exercise classes; (RS).

Sec. 506 Business district B.

(14) Department stores, except discount department stores; (RS).

(15) Drug stores and pharmacies; (RS/NRS).

(16) Educational services and learning centers; (NRS).

(17) Florist and flower shops; (RS).

(18) Gas station with no automotive repair; (RS).

(19) Greeting cards and stationery stores;(RS).

(20) Hardware store including tools; (RS).

(21) Healthcare, medical, and social assistance offices; (NRS).

(22) Hobby, model shops; (RS).

(23) Home good stores; (RS).

(24) Hotels; high-end, boutique only; (RS).

(25) Jewelers; jewelry stores; (RS).

(26) Libraries; (NRS).

(27) Liquor stores, excluding drive up or pickup services; (RS).

(28) Museums; (NRS).

(29) Musical instruments and supply stores; (RS).

(30) Numismatic, money and precious metal stores; (RS).

(31) Other services (except public administration); (NRS/RS).

(32) Office supplies; (RS).

(33) Optical goods; (RS).

(34) Parking garages in connection with permitted on-site office or retail buildings; (RS).

(35) Pet and pet supply stores; (RS).

(36) Pool service stores; (RS/NRS).

(37) Professional, scientific and technical services; (NRS).

(38) Public administration services; serving the City of Hedwig Village performing municipal responsibilities (NRS).

(39) Real estate and rental and leasing offices; (NRS).

(40) Restaurants, full service and limited service, delicatessens; (RS).

(41) Retail sale of automotive fuels, lubricants and related products; (RS).

(42) Specialty food stores;(RS/NRS).

(43) Sporting goods sales, not including boats, boat motors, mopeds, recreational vehicles, ATVs, golf carts, motorcycles, or motor bikes; (RS).

(44) Supermarkets; (NRS/RS).

(45) Toy sales; (RS).

(46) Veterinarian services.

2. *Uses specifically prohibited.* Except to the extent specifically permitted in section 506.A.1 of this code, property in business district B shall not be used for the following:

## Sec. 506 Business district B.

(a) Manufacturing, which includes the production of one or more articles from scrap, salvage, or junk material, as well as from new or raw material, by processing, formulating, manipulating, or changing the form of an article or by combining or assembling two or more articles.

(b) The storage or keeping of equipment, earth, signs, vehicles, trailers, tanks, supplies, or other property outside an enclosed building approved by the planning and zoning commission, except to the extent that such items may be necessary in connection with construction on the property and then only during such construction.

(c) The take-off, landing, parking, or storage of helicopters or other aircraft of any sort other than emergency or law enforcement craft.

(d) The keeping or displaying of automobiles, trucks or other vehicles on site, with the intent of selling or marketing the same.

(e) The storing or selling of used or secondhand merchandise excluding antiques or collectibles, requiring more than 20 percent of the floor area of the business. Further, the listing of any retail business in section 506.A.1 of this code is not intended to include or permit the sale of such used or secondhand merchandise.

(f) Discount stores which advertise and sell goods below a certain price;

(g) Drive-through facilities; however, subject to the approval by the building official, drive-through facilities may be constructed in district B4 upon corner tracts abutting two roadways for use in the sale of food provided that such facility is required to be attached to the business's building, be architecturally consistent with the business's building, be aesthetically landscaped, and traffic control "islands" are required to be established to guide traffic flow and ensure safety for adjacent vehicular traffic and pedestrians. The building official shall require a traffic study specific to the proposed drive-through facility, which must demonstrate that traffic safety, traffic flow, traffic "stacking," TxDot requirements, and other appropriate criteria have been satisfied by the proposed design in order to ensure public safety.

(h) Credit access businesses that obtain credit for a consumer from an independent third-party lender in the form of a deferred presentment transaction or a motor vehicle title loan, more commonly referred to as "payday loans" or "title loans."

B. *Height of improvements to property.*

1. *Parking surfaces.* Parking surfaces shall be allowed to the maximum height permitted in section 506.B.3 in business district B-1, 506.B.4 in business district B-2, and 506.B.5 in business districts B-3 and B-4 provided that in such buildings automobiles and interior lighting are screened from public view with building materials used in the main building. The appearance of the parking facility shall also be compatible with the main building.

2. *Attachments to buildings.* Nothing attached to a building nor anything constructed for use in conjunction therewith nor any other structure or device of any sort shall exceed ten feet above the roof of a building not including its parapet. Except for a parapet not to exceed four feet in height above the roof of a building, nothing attached to a building nor anything constructed for use in conjunction therewith nor any other structure or device of any sort shall exceed in height the maximum building height specified in sections 506.B.3, 506.B.4, and 506.B.5 of this code.

3. *District B-1.* No building in district B-1, including anything attached thereto, except a parapet not to exceed four feet in height, nor anything constructed for use in conjunction therewith, nor any other structure or device of any sort, shall exceed 35 feet in height above average natural grade.

4. *District B-2.* No building in district B-2, including anything attached thereto, except a parapet not to exceed four feet in height, nor anything constructed for use in conjunction therewith, nor any other structure or device of any sort, shall exceed 35 feet in height above average natural grade.

5. *Districts B-3 and B-4.* No building in district B-3 or district B-4, including anything attached thereto, except a parapet not to exceed four feet in height, nor anything constructed for use in conjunction therewith, nor any other structure or device of any sort, shall exceed the following height:

Sec. 506 Business district B.

(a) Forty-two feet above average natural grade within 200 feet of the nearest point of any residential lot in district A or C; and

(b) Fifty-six feet above average natural grade at distances greater than 200 feet from the nearest point of any residential lot in district A or C; or

(c) Seventy feet above average natural grade at distances greater than 300 feet from the nearest point of any residential lot in district A or C, provided at least 20 percent of the total floor area of all buildings except parking garages in each single development is permanently devoted to one or more of the uses permitted in section 506.A.1.(b) of this code.

C. *Setbacks.* All buildings above average natural grade, including anything attached thereto or anything constructed for use in conjunction therewith and all other structures or devices of any sort above average natural grade, except uncovered ground level parking surfaces, shall meet at least the following property line setbacks:

1. *Districts B-1 and B-2.* The depth of the front and rear yards shall each be a minimum of 25 feet from the property line. The width of each side yard abutting on a dedicated public street or a street easement shall be a minimum of 25 feet, otherwise there shall be no minimum side yard depth.

2. *District B-3.* The depth of the front and rear yards shall each be a minimum of 25 feet from the property line. The width of each side yard abutting on a dedicated public street or a street easement shall be a minimum of 25 feet, otherwise there shall be no minimum side yard depth.

   Minimum front, rear, and side yard depths thus established shall be increased by six inches for each foot any part of the building exceeds 35 feet in height above average natural grade. These required additional setbacks shall be reduced to three inches for each foot the building exceeds 35 feet in height above average natural grade provided at least 20 percent of the total floor area of all buildings except parking garages in each single development is permanently devoted to one or more of the uses permitted in section 506.A.1.(b) of this code.

3. *District B-4.* The depth of the front and rear yards shall each be a minimum of 25 feet from the property line. The width of each side yard abutting on a dedicated public street or street easement shall be a minimum of 25 feet, otherwise there shall be no minimum side yard depth.

   Minimum front and side yard depths thus established shall each be increased by six inches for each foot any part of the building exceeds 35 feet in height above average natural grade unless at least 20 percent of the total floor area of all buildings except parking garages in each single development is permanently devoted to one or more of the uses permitted in section 506.A.1.(b) of this code.

4. *Underground structures.* Notwithstanding other provisions of this code, underground structures in district B, other than swimming pools, may be built to a property line except that in no event shall they be closer than 30 feet to the centerline of any street or street easement.

5. *Adjustment of setbacks.* It is provided for by law that the board of adjustment shall have jurisdiction to hear any case involving the adjustment or request to vary from the required building setback line. The board of adjustment may and is encouraged to consider such factors including, but not limited to, the platted shape of the subject property, and the shape, size, and location of adjoining property and adjacent development in its consideration of request to adjust or vary building setback lines.

D. *Parking.*

1. *General.* Parking requirements in this code are stated as a minimum number of off-street parking spaces, exclusive of spaces available on streets, roads, and driveways. Each parking space shall constitute an area of not less than 184.5 square feet. Minimum parking space width shall be nine feet and these spaces shall utilize round-ended striping. Adequate driveways and space for traffic movement, together with unblocked space for access by emergency vehicles, shall be provided on the site. Parking spaces, areas, driveways, emergency lanes, and loading and unloading space shall be marked and maintained in a manner approved by the planning and zoning commission and shall be constructed to meet the requirements for secondary streets as provided in Ordinance No. 52, section 2(e)(3), enacted on March 29, 1961. As used herein the term "floor area" shall mean gross enclosed building area.

Sec. 506 Business district B.

2. *Parking spaces.*

| USE | Number of Parking Spaces Required |
|-----|-----------------------------------|
| OFFICE | |
| Office | 3.5 spaces/1,000 sq. ft. of GFA |
| Financial | 4.0 spaces/1,000 sq. ft of GFA |
| RESIDENTIAL/Multi-family Dwelling | |
| Apt. - Efficiency | 2.0 spaces per unit |
| Apt. - 1 bedroom | 2.0 spaces per unit |
| Apt. - 2 bedroom | 2.0 spaces per unit |
| | |
| MOTEL/HOTEL | |
| Motel/Hotel (additional for restaurants, auditoriums, etc. shall be provided in accordance with the parking requirements for that use) | 1.0 space per unit |
| | |
| HEALTH CARE | |
| Clinic/Medical or Dental | 5.0 spaces/1,000 sq. ft of GFA |
| Veterinary | 5.0 spaces/1,000 sq. ft of GFA |
| | |
| RELIGIOUS AND EDUCATIONAL | |
| Church | 1 space for every 3 sanctuary seats |
| Public, Denominational or Private Schools: See Below | |
| Elementary | 1 space for each 12 occupants |
| Jr. High/Middle | 1 space for each 7 occupants |
| High School | 1 space for each 3 occupants |
| | |
| LIBRARY | |
| Library | 3.0/1,000 sq. ft. of GFA |
| | |
| RECREATION AND ENTERTAINMENT | |
| Park Pavilion | 1 space for each picnic table |
| | |
| RETAIL SERVICES | |
| All Retail Services | 5.0/1,000 sq. ft. of GFA |
| Shopping Centers: | |
| 25,000 sq. ft. or less | Under 25,000 - 4.0/1,000 |
| 25,001 - 100,000 GFA | Over 25,000 - 5.0/1,000 |
| | |
| "OTHER USES IN DISTRICT B" | 5/1,000 square feet |
| | |
| PLACES OF PUBLIC ASSEMBLY | 1 per 3 seats |
| Restaurants and other dining establishments | |

| Use Classification | | Required Number of Parking Spaces | |
|--------------------|---|---|---|
| a. | | Take Out Restaurant | 7.0 parking spaces for every 1,000 square feet of GFA |
| b. | | Coffee, Bakery and Dessert | 10.0 parking spaces for every 1,000 square feet of GFA |
| c. | | Fast Food Restaurant | 12.0 parking spaces for every 1,000 square feet of GFA |

Sec. 506 Business district B.

| | | | |
|---|---|---|---|
| d. | | Restaurant (without alcohol) | 13.0 parking spaces for every 1,000 square feet of GFA |
| e. | | Restaurant (with alcohol) | 15.0 parking spaces for every 1,000 square feet of GFA |

2.5. *Bicycle parking reduction.*

    a. The total number of required parking spaces for a property may be reduced by one parking space for each bicycle space provided on the property.

    b. The maximum parking space reduction under this subsection 2.5 for a property shall be the lessor of ten percent of the number of required parking spaces or 24 parking spaces.

    c. Bicycle racks must be installed with a minimum of four bicycle spaces.

3. *Loading and unloading space.* In addition to parking spaces required by section 506.D.2 of this code, a minimum of one ten-foot by 25-foot loading and unloading space shall be provided for each 10,000 square feet or fraction thereof of floor area in each establishment in district B. No more than two such spaces shall be required. Loading and unloading space shall not occupy the front yard space or drive space required elsewhere in this code.

4. *Shared parking.* In commercial districts, a shared parking calculation may be used for any commercial property, vacant commercial property or shopping center with two or more distinguishable uses. Offsite parking may be used for up to 40 percent of the required parking spaces. This parking lot must be within 500 feet of the property or within 1,000 feet if a valet or shuttle service is utilized.

    a. *Computation.* The number of shared parking spaces for two or more distinguishable land uses on the same property may be determined by the following procedure:

        i. Multiply the minimum parking required for each individual use, as set forth in the minimum parking required in section 506 D.2., by the appropriate percentage indicated in 505 D.4.b., shared parking calculations, for each of the six designated time periods;

        ii. Add the resulting sums for each of the six time periods; and

        iii. The minimum parking requirement shall be the highest sum among the six designed time periods.

    b. *Shared parking calculation.*

| General Land Use Classification | Weekdays 1:00 AM, 7:00 AM | Weekdays 7:00 AM, 6:00 PM | Weekdays 6:00 PM, 1:00 AM | Weekends 1:00 AM, 7:00 AM | Weekends 7:00 AM, 6:00 PM | Weekends 6:00 PM, 1:00 AM |
|---|---|---|---|---|---|---|
| Educational | 10% | 100% | 25% | 25% | 0% | 25% |
| Entertainment/Theatres/Recreation | 10% | 60% | 100% | 10% | 80% | 100% |
| Healthcare | 0% | 100% | 0% | | | |

Sec. 506 Business district B.

| Use | | | | | |
|---|---|---|---|---|---|
| | | | 25% | 0% | 25% |
| Health spas and exercise studios | 50% | 25% | | | 25% |
| | | | 100% | 25% | 50% |
| Hotels | 100% | 55% | | | |
| | | | 100% | 100% | 55% | 100% |
| Offices | 5% | 100% | | | 0% |
| | | | 5% | 0% | 15% |
| Religious/Church | 0% | 25% | | | 50% |
| | | | 50% | 0% | 100% |
| Restaurants | 20% | 70% | | | |
| | | | 100% | 30% | 75% | 100% |
| Retail Services | 0% | 100% | | | 60% |
| | | | 80% | 0% | 100% |

*c.* Process. A shared parking calculation or offsite parking lease within the requirements of this section 505 D.4. shall be submitted during the certificate of occupancy process for a tenant or property owner if the tenant or property owner intend to use the parking calculation or offsite parking lease to satisfy the tenant or property owner's parking requirements.

d. *Offsite parking lease.* An offsite parking lease must be submitted to the City of Hedwig Village for any offsite property being utilized for required parking. This lease must contain the minimum requirements outlined below;

    i. Lessor;

    ii. Lessee;

    iii. Effective date;

    iv. End date (must be a minimum of one-year);

    v. Number of spaces being leased or whether the lot will be utilized for shared parking;

    vi. Times parking will be available, if applicable; and

    vii. Site plans with parking calculations for both properties.

e. *Notification of offsite parking lease cancellation.*

    i. In the event that an offsite parking lease is used by the lessee to satisfy the parking requirements of this Zoning Code for the lessee's property or use, the lessee shall immediately notify the city if the offsite parking lease is no longer valid and present the city's building official with the lessee's plan to satisfy the parking requirements for the lessee's property or use. A failure to notify the city shall be considered a separate violation of the zoning code for each day that lessee does not have the required parking in compliance with this zoning code and the city was not aware of the lack of compliance due to the failure of the lessee to notify the city.

Sec. 506 Business district B.

  ii. If the offsite parking lease necessary to satisfy the parking requirements is cancelled, the lessee may be found in violation of this zoning code for failing to meet the minimum parking requirements. Each day shall be considered a separate violation.

f. A sign must be posted on the leased property, notifying customers that this parking is available. This non-illuminated wayfinding sign shall be installed with a maximum size of six square feet, and must include the following information;

  i. of business(es), or shopping center that is utilizing the property for off-street parking; and

  ii. Hours available, if applicable.

5. *Valet or shuttle service.*

  a. In commercial districts, a valet or shuttle service may be used for any commercial property. This parking lot must be within 1,000 feet of the property.

  b. Permit requirements for valet or shuttle service permit:

    i. Applicants name, telephone number, mailing address, street address, name of valet company, and contact information for valet or shuttle service;

    ii. The valet or shuttle service operator shall provide proof of liability insurance for valet or shuttle parking services for a minimum of $500,000.00 garage liability insurance (each occurrence);

    iii. Offsite parking lease as outlined in section 506 4.(c), if applicable, or proof of ownership of the property to be used for the parked cars;

    iv. Site plan showing where valet or shuttle service pickup and drop-off occurs. No valet or shuttle pickup/drop-off areas will be allowed in public rights-of-ways; and

    v. Required fees as determined by the city's fee schedule.

      (1) Valet or shuttle service permits must be renewed every year by December 6, or the following Monday if this date falls on a weekend.

      (2) Renewal will provide the same information as for a regular permit, including annual fees according to the City of Hedwig Village's fee schedule.

  c. Pickup/drop-off location.

    i. *Valet.* A podium with the valet company identification, including phone number must be placed at the pickup and drop-off site. This is the only sign that can advertise the name of the valet or shuttle company on the subject property(s).

    ii. *Shuttle.* The pickup and drop-off locations for the shuttle service must be properly identified by a small sign and/or other notification as permitted by the building official.

E. *Miscellaneous provisions.*

  1. *Lot width.* The width of lots in district B shall be a minimum of 50 feet.

  2. *Lot coverage and landscaping.* In district B, structures, including parking and loading and unloading areas, driveways and covered walkways, shall not exceed the following percentage of total land area:

    Existing multi-family dwellings (in percentage)66⅔

    Motels and hotels (in percentage)75

    All others (in percentage)90

    The remaining land area shall be landscaped and maintained for use as a non-commercial green area.

  3. *Existing multi-family dwellings.* Each dwelling unit of a multi-family dwelling in district B shall contain not less than 1,250 square feet of living area within such dwelling unit.

Sec. 506 Business district B.

4. *Site drainage.* Site drainage for the entire site including parking and driveway areas shall be designed and installed with sufficient grades, and underground drains with adequately sized pipe and number of clean-out facilities. Such underground drainage shall be provided to adequately drain the site of storm water into the nearest publicly provided storm drainage system.

5. *Construction.* All construction, including new construction, enlargements, and alterations shall conform to the following minimum requirements:

   a. *Conforming to code.* All new construction, enlargements, and alterations shall conform to the City of Hedwig Village building, electrical, fire, heating, air conditioning, plumbing, and other applicable codes, regulations, and ordinances of the City of Hedwig Village.

   b. *Recreational areas.* Privately owned swimming pools and recreational or playground areas shall be obscured from view from any public street.

6. *Trash.* Trash and garbage collection facilities shall be provided at the rear of the property, shall be obscured from public view, and shall be protected from scattering by wind or animals by a suitably gated fence; provided, however, if existing improvements make construction of a fence impossible, the applicant may substitute a receptacle if shown to the building official to be of sufficient strength and construction to accomplish the same protection as afforded by a fence as described above.

   Businesses having regular accumulation of trash, waste materials, junk, or other discarded materials shall arrange for private regular collection of such accumulated materials. Such collections shall be at least twice a month and shall be more frequently if accumulations exceed storage capacity. Such collections shall be as frequent as necessary to prevent objectionable odors.

   Incineration of trash or garbage shall not be permitted except where facilities are designed specifically for incineration service and are approved by the fire chief for the City of Hedwig Village. The emissions from such a system shall not be visible and shall not have undesirable emissions or odor.

7. *Fences.* No fence of any type, nonbearing wall, or any other similar structural barrier, shall be erected or maintained on any lot, tract, or parcel of land in business district B within any required front or side yard so as to prevent or deter immediate access to the main building by emergency vehicles from a public street abutting such lot, tract, or parcel of land, or which would have the effect of eliminating or severely restricting a clear and full view of such main building from such abutting street by emergency personnel.

   *Maximum height:* Fences shall be a maximum of eight feet tall within commercial districts of the City, unless an increase in height is necessary to screen equipment, trash containers, or provide additional screening of non-residential uses from Residential Districts A and C.

   *Prohibited locations:* Fencing for commercial properties shall not prohibit the public from accessing required parking spaces for the intended use. No fencing may block sight visibility triangles.

   *Temporary construction fencing:* Temporary construction fencing is allowed if there is an active building permit, unless as required by the building official. Major construction sites are required to have temporary construction fencing to prevent access from the public.

   *Temporary security fencing:* Temporary security fencing on vacant lots may be permitted if approved by the building official. All temporary fencing must be maintained and kept clear of graffiti.

   *Permitted materials:*

   (1) Finished masonry (not exposed CMU), stained or natural wood, wrought iron painted black fencing materials, or combination thereof shall be used for fences, walls, or gates. Chain link fencing is not permitted. Synthetic materials may be used as approved by the building official.

   (2) Vine-covered walls shall be allowed.

   (3) No barbed or razor wire shall be used or maintained as part of any fence, wall, gate, or hedge. No sharp point, including glass, shall project from the top of the fence or wall.

   (4) All fence materials must be up to the standards for new construction, except for reclaimed wood.

Sec. 506 Business district B.

(5) All swinging gates shall be prohibited from encroaching into the public right-of-way.

(6) No vinyl or plastic slats may be used as a screening material.

*Mechanical equipment screening:* Mechanical equipment, whether ground-mounted, roof\xAD mounted, or otherwise attached to the building, shall be screened from view from the street by fencing, building design (such as a parapet), or landscaping.

F. *Requirement for a permit.* A building permit will not be issued until all plans and specifications have been approved by the building official. No permit shall be issued for any structure not in full compliance with all ordinances, rules, and regulations of the City of Hedwig Village. For construction that the building official determines could affect existing traffic patterns, a traffic study, conducted at the expense of the applicant, shall be required. Based on the results of the traffic study, a mitigation plan shall be adopted as appropriate.

G. *Buffer zone.* There is hereby established a buffer zone between development in business districts B-2 and B-3 and residential districts A and C, consisting of a 100-foot building setback in business districts B-2 and B-3 from the common line of these districts and districts A or C to the nearest wall of a building in business districts B-2 or B-3.

**HISTORY NOTE:**

 (Ord. No. 312,  1, 3-9-1989; Ord. No. 313,  1, 2, 3-9-1989; Ord. No. 314,  1, 3-9-1989; Ord. No. 315,  1, 3-9-1989; Ord. No. 316,  1, 3-9-1989; Ord. No. 330,  1, 3, 11-9-1989; Ord. No. 344,  3, 4-11-1991; Ord. No. 372,  2, 11-12-1992; Ord. No. 497,  3, 8-3-2001; Ord. No. 518,  2, 8-8-2002; Ord. No. 544,  2, 12-11-2003; Ord. No. 549,  2, 3-31-2004; Ord. No. 558,  2, 3, 12-9-2004; Ord. No. 566,  2, 7-8-2005; Ord. No. , 1(App. A), 12-12-2013; Ord. No. , 2(App. A), 12-11-2014; Ord. No. , 2(App. A), 7-13-2017; Ord. No. , 2(App. A), 8-10-2017; Ord. No. , 1(App. A), 10-2-2017; Ord. No. , 2(App. A), 9-20-2018; Ord. No. , 2(App. A), 8-15-2019; Ord. No. , 2(App. B), 10-15-2020; Ord. No. , 2(App. A), 12-17-2020; Ord. No. , 2(App. A), 12-17-2020; Ord. No. , 2(App. A), 12-9-2021)

Texas Municipal Codes
Copyright 2024 Municipal Code Corporation All Rights Reserved

**End of Document**



*Hedwig Village, Texas Code of Ordinances Sec. 509*

CODE OF ORDINANCES City of HEDWIG VILLAGE, TEXAS Codified through Ordinance No. 794, enacted January 11, 2022. (Supp. No. 16)

*Texas Municipal Codes  >  Texas  >  Hedwig Village Code of Ordinances  >  - CODE OF ORDINANCES  >  APPENDIX A - PLANNING AND ZONING CODE  >  ARTICLE V. ZONING REGULATIONS*

# § Sec. 509  Planned unit developments.

A. *General provisions*

1. Business Districts:

    a. *Purpose.* A planned unit development (PUD) is intended to provide for combining and mixing uses into integral land use units such as office, commercial, and retail centers and to provide flexibility in develop regulations; or any appropriate combination of uses which may be planned, developed or operated as integral land use units, whether by single owner or a combination of owners in substantial compliance with the city's comprehensive plan.

    b. *Location.* A PUD may be established within the business districts in accordance with the procedures and requirements of this section.

2. Residential Districts:

    a. *Purpose.* A planned unit development (PUD) is intended to allow for schools on twenty-five (25) acres or more to harmoniously exist within the residential areas of the City in substantial compliance with the city's comprehensive plan.

    b. *Location.* A PUD may be established within the Residential A Zoning District in accordance with the procedures and requirements of this section.

B. *Specific provisions*

1. Business Districts:

    a. *Generally.* The PUD is an overlay in the business district in which it is approved. The underlying business district zoning continues to the extent not specifically modified by the provisions of the PUD.

    b. *Permitted uses.* The uses to be permitted in any specific PUD shall be those permitted in the business district in which the PUD is located as well as such uses enumerated in the ordinance which creates such PUD, provided, however, that those uses prohibited by section 506.A.2. of the Code shall not be permitted. Any proposed amendment to the uses permitted within a specific PUD shall be submitted for approval in the same manner as the original PUD.

    c. *Size and numbers.* In order to encourage the development of property as harmonious units, a minimum of three acres shall be required to be included with a PUD and no more than four PUDs may be established within each business district.

    d. *Building height.* No building within the PUD, except a parapet not to exceed four feet in height, and any additional screening, within the rooftop footprint necessary for plumbing, mechanical equipment, or elevator overruns, shall exceed the height permitted for the business district in which the PUD is located except that, within business districts B3 and B4 the following building height may be permitted:

Sec. 509 Planned unit developments.

    i. Forty-two feet above average natural grade within 200 feet of the nearest point of any residential lot in district A or C; or

    ii. Fifty-six feet above average natural grade at distances greater than 200 feet from the nearest point of any residential lot in district A or C; or

    iii. Eighty-one feet above average natural grade at distances greater than 300 feet from the nearest point of any residential lot in district A or C.

  e. *Green Space:* At least ten percent of the PUD site shall be dedicated to green space and outdoor site amenities.

  f. *Design Guide:* Development within the PUD shall conform to the provisions of the City's Design Guide for PUD Development.

2. Residential District A:

  a. *Generally.* The PUD is an overlay in which it is approved. The underlying residential zoning continues to the extent not specifically modified by the provisions of the PUD.

  b. *Permitted Uses.* A PUD application may be made for primary and/or secondary school uses, as long as the minimum size is satisfied.

  c. *Size.* A minimum of 25 contiguous acres is required to apply for a PUD within the Residential A Zoning District. The PUD site shall comprise the entire platted lot or lots, i.e. no portions of a platted lot unless the plat is amended or the lot replatted.

  d. *Building height.* No newly constructed building within the PUD, except any additional screening, within the rooftop footprint necessary for plumbing, mechanical equipment, or elevator overruns, shall exceed the height permitted for the Residential District in which the PUD is located, except that for buildings used as a cafeteria, classroom, laboratory or for other educational purposes, excluding athletic facilities or parking garages, the following building height may be permitted:

    i. At distances greater than 375 feet from the nearest point of any residential lot in zoning districts A or C, a maximum of 65 feet above finished floor height with a slab reveal of no greater than two feet above adjacent natural grade within five feet of the perimeter of the building,

  e. *Windows Above 35 Feet.* No building or structure shall have placed or constructed thereon any windows above 35 feet unless such window faces a public street abutting the PUD site or unless a variance is granted by the City Council.

  f. *Tall Building Coverage.* Notwithstanding the foregoing, the total coverage of all buildings which exceed 35 feet in height on the PUD site shall not exceed 12 percent coverage of the PUD site.

  g. *Green Space.* At least 20 percent of the PUD site shall be dedicated to green space and outdoor site amenities.

  h. *Driveways.* No new driveway shall be constructed closer than a distance as approved by the City Council from the nearest point of any residential lot in zoning districts A or C.

  i. *Additional PUD submittal information requirements:*

    i. Residential Protection. The PUD application shall provide information from the applicant on the proposed protection for the adjacent single-family residences including, but not limited to, increased school traffic in the adjacent neighborhoods, lighting, security, and noise;

    ii. Traffic Impact Study: A Traffic Impact Study performed by a licensed engineer shall be required. The Traffic Impact Study shall include any change to traffic routing on adjacent streets, proposed mitigation for all roadways and major intersections within one-half mile of the PUD site, peak hours of nearby businesses, schools and religious institutions, any proposed addition of a curb-cut to the tract, or the modification or elimination of any existing curb-cut;

    iii. Fencing plan;

Sec. 509 Planned unit developments.

    iv. Parking plan, provided such plan shall not otherwise reduce the required number of parking spaces for schools as provided in Section 506 of this Code as if the property is in a commercial district, unless a variance is granted by the City Council;

    v. Site Plan, showing lot coverage;

    vi. Phasing Plan, if applicable;

    vii. Conceptual landscaping plan, tree survey, tree disposition and protection plan, and justification for any tree removal or potential tree damage; and

    viii. Elevations and Building Materials: In the event of a partial renovation of a school campus, the building materials should be harmonious with the building materials used for the existing improvements. In addition, any parking garage constructed on the PUD Site shall be constructed with building materials similar to any adjacent buildings so as to be harmonious with the other buildings on the Site.

C. *Application requirements/procedure.*

    1. *General.* The steps necessary for creation of a PUD are as follows:

        a. Pre-application conference between the applicant and the city administrator or his or her designee.

        b. Submission of the formal application with all required material.

        c. Public hearings held in accordance with the requirements of this Code.

    2. *Pre-application conference.* An applicant for a PUD shall schedule a pre-application conference with the city administrator or his or her designated representative prior to the formal submission of the application materials.

    At the pre-application conference, the applicant shall provide a preliminary drawing that includes, but is not limited to the following:

    a. Delineation of site boundaries;

    b. General site layout and conditions indicating relationship of proposed land uses, parking, and street layout(s);

    c. Project renderings, project description and/or narrative demonstrating compliance with the design guide; and

    d. A traffic study as requested by the city.

        Based on the information provided by the applicant, the city administrator or his or her designee shall provide initial comments to the applicant concerning the merits of the proposed development and provided any other information necessary to process the application.

    3. *Application submission.* Any person, group of persons, or corporation having a legal or equitable interest in any property may file an application for a PUD. Such application shall be submitted and processed in accordance with the procedures of this section and shall include as a minimum:

    a. An application fee of $10,000.00 or as set forth in the city's schedule of fees;

    b. Proof of ownership. If all land to be included with the PUD is not under common ownership, applicant must provide an agreement executed by all owners consenting to the creation of the PUD and agreeing to abide by the terms of creation;

    c. A legal description of the PUD prepared by a Texas licensed surveyor including a map of the PUD area suitable for reproduction and a digital file of same;

    d. A site plan showing the layout of proposed building, lighting, parking, streets, walkways, site amenities, green space and landscaping;

    e. Utility information detailing the projected utility needs of the PUD and the anticipated source for such utilities;

    f. A drainage plan showing the anticipated drainage needs of the PUD and the proposed mitigation for such drainage;

    g. A parking plan for the PUD;

Sec. 509 Planned unit developments.

h. A traffic study, unless waived by the city, detailing traffic impacts, including during peak hours of nearby businesses, schools, and religious institutions, and proposed mitigation for all roadways and major intersections within one-half mile of the project; and

i. A development schedule for completion of all construction.

j. A list of variances requested from current city zoning ordinances and the design guide.

4. *Formal public hearing.* The PUD application must be preliminarily approved by the Hedwig Village Building Official and shall be presented by the PUD applicant to the planning and zoning commission at either a regular or special called meeting prior to any hearing on the application.

The planning and zoning commission and the city council shall hold an advertised joint public hearing in accordance with the procedures set forth in article VII, of this Code for zoning amendments. At the public hearing the PUD applicant shall present an overview of the project to the public prior to citizen comments. This presentation should include the general site layout and conditions indicating relationship of proposed land uses, parking, and street layout(s) and a project rendering with a project description and/or narrative. In addition to the publication of notice required by article VII, notice of the joint public hearing shall be mailed to all property owners of the city at least ten days before the date of the hearing.

Following the conclusion of the public hearing, the planning and zoning commission shall make its recommendation to the city council in accordance with the standard procedures for a change of zoning. The planning and zoning commission may recommend, and the city council may approve the request for a PUD as submitted or with modifications thereto; any such approval, however, is at the sole discretion of the city council.

5. *Approval.* If approved by city council, the ordinance establishing a PUD shall specify such height, floor area, density, site coverage, set back, landscaping, off-street parking, signage, drainage and all other standards as are appropriate for the development which are considered necessary to protect the health, safety and general welfare, and to create a reasonable transition to, and protection from, property adjacent to the PUD. The city council shall have authority to adjust the city's standard storm water requirements with appropriate mitigation.

Every PUD approved under the provisions of this section shall be considered an amendment to the Hedwig Village Planning and Zoning Code and applicable only to the property that comprises the PUD.

D. *Development schedule.*

1. A development schedule shall be submitted by the applicant indicating the approximate date on which construction is expected to begin and the rate of anticipated development to completion. The development schedule shall, if adopted and approved by the city council, become part of the ordinance creating such PUD, and shall be adhered to by the owner, developer, and successors in interest.

In carrying out the development of a PUD, the development conditions and the development schedule shall be complied with. Such conditions as are specified for the development of a PUD shall not be construed as conditions precedent to the approval of the zoning amendment, but shall be construed as conditions precedent to the granting of a certificate of occupancy.

2. The planning and zoning commission or the city council may, if in their opinion, the owner or owners of the property are failing or have failed to meet the approved schedule, and such failure continues for another 90 days after receipt of written notice, initiate proceeding to amend or repeal the ordinance creating the PUD. Such action shall occur in accordance with the procedures of the City's Zoning Code. Upon the recommendation of the commission, and for good cause shown by the owner or developer, the city council may extend the development schedule or adopt such new development schedule as may be indicated by the facts and conditions of the case.

E. *Amendment to planned unit development.* Any major amendment, supplement, deletion or modification to a PUD may be granted upon application by any person, group of persons or corporation having a legal or equitable interest therein. Any application for such amendment, supplement, deletion, or modification shall contain the information specified in the section and shall be processed in accordance with the procedures set forth herein for new applications. The city administrator or his or her designee may authorize minor modifications that:

a. Do not alter the basic relationship of the proposed development to adjacent property;

Sec. 509 Planned unit developments.

b. Do not alter the uses permitted;

c. Do not increase the maximum density, floor area, height, or site coverage;

d. Do not decrease the amount of off-street parking; and

e. Do not reduce the minimum yards or setbacks.

An applicant may appeal the decision of the city administrator or his or her designee to the commission for review and decision.

**HISTORY NOTE:**

(Ord. No. , 2(App. A), 10-12-2017; Ord. No. , 2(App. A), 7-12-2018; Ord. No. , 2(App. A), 10-18-2018; Ord. No. , 2(App. A), 5-16-2019)

Texas Municipal Codes
Copyright 2024 Municipal Code Corporation All Rights Reserved

---

End of Document



## *Hedwig Village, Texas Code of Ordinances Sec. 816*

CODE OF ORDINANCES City of HEDWIG VILLAGE, TEXAS Codified through Ordinance No. 794, enacted January 11, 2022. (Supp. No. 16)

*Texas Municipal Codes  >  Texas  >  Hedwig Village Code of Ordinances  >  - CODE OF ORDINANCES  > APPENDIX A - PLANNING AND ZONING CODE  >  ARTICLE VIII. - VARIANCES, APPEALS AND NONCONFORMITIES  >  DIVISION III. APPEALS*

## § Sec. 816  Action of the board.

The board of adjustment shall hold a hearing on an appeal as soon as practical after a notice of appeal is filed. The failure of the board to act within a reasonable time shall not deprive it of jurisdiction of the matter. The board may reverse, affirm or modify the decision, determination or interpretation appealed from, and in so modifying such decision, determination or interpretation, the board shall be deemed to have all the powers of the officer from whom the appeal is taken, including the power to impose reasonable conditions to be complied with by the applicant.



OFFICIAL ZONING DISTRICT MAP

MAP INDEX

Map Sheet No.

Business District B-1                                     1, 3

Sec. 816 Action of the board.

| | |
|---|---|
| Business District B-2 | 7, 8 |
| Business District B-3 | 1 |
| Business District B-4 | 3, 5, 7, 8 |
| City Hall | 5 |
| City Park | 7 |
| County Library | 7 |
| Fire Station | 5 |
| Memorial Church of Christ | 3 |
| Memorial High School | 1, 3, 5 |
| Police Station | 7 |
| Residential District A | 1, 2, 3, 4, 5, 6, 7, 8 |
| Residential District C | 1 |
| St. Cecilia Church and School | 1, 2 |
| Spring Branch Junior High School | 5 |

Streets:

| | |
|---|---|
| Beinhorn | 5, 6, 7, 8 |
| Brogden | 8 |
| Bunker Hill Road | 1, 2 |
| Campbell Road | 5, 7 |
| Capri | 7 |
| Cawdor Way | 2 |
| Chatten Way | 5, 6 |
| Chowning Road | 7 |
| Clifford Road | 7 |
| Constance | 1, 2 |
| Corbindale Road | 5, 7 |
| Deepwell | 1 |
| Denise | 1 |
| Duart Drive | 2 |
| Dunbeath | 3, 5, 6 |
| Echo Hollow | 4 |
| Echo Lane | 3,4 |
| Echo Wood | 4 |
| Falling Leaf | 7 |
| Frandora | 2 |
| Gaylord Drive | 1, 3, 5, 7, 8 |
| Glen Echo Lane | 4 |
| Heathcliff Court | 5, 6 |
| Heather Court | 5, 6 |
| Hedwig Circle | 7, 8 |
| Hedwig Way | 7 |
| Hickorywood Lane | 5 |
| Holidan Way | 6 |

Sec. 816 Action of the board.

| | |
|---|---|
| Hunters Branch Drive | 7 |
| Joan-of-Arc | 1, 2 |
| Karos | 1 |
| Lochtyne | 3, 4 |
| Lochtyne Circle | 3, 5 |
| Lochtyne Way | 3, 5, 6 |
| Lou-Al Court | 3, 4 |
| Magdalene | 1, 2 |
| Merridel Road | 3, 4 |
| Millgrove | 1 |
| Monticello | 7 |
| Moss Spring | 1 |
| N. Blalock | 4 |
| N. Chestwood Way | 5, 6 |
| N. Lou-Al | 1, 2, 3, 4 |
| Pecanwood Lane | 5 |
| Piney Point Road | 5, 6 |
| Robinwood Lane | 5 |
| Saybrook Lane | 5, 6 |
| Skene Way | 2 |
| S. Chestwood Lane | 6 |
| S. Lou-Al | 3, 4 |
| Spriggs Way | 1, 2 |
| Sprucewood Lane | 5 |
| Stonegate Drive | 4 |
| Taylorcrest Road | 2, 4, 6 |
| Tiber | 7 |
| Timber Hill Drive | 2 |
| Voss Road | 8 |
| Whipporwill | 4, 6 |
| Woodsage | 1 |

Subdivisions:

| | |
|---|---|
| Allen Acres | 7 |
| Beinhorn Manor | 7 |
| Brogden Court | 8 |
| Brogden Place | 8 |
| Chestwood I | 5, 6 |
| Chestwood II | 6 |
| Echo Hollow | 4 |
| Echo Place | 4, 6 |
| Echo Shadows | 4, 6 |
| Echo Wood | 4 |
| Edwin Sitti | 1 |

Sec. 816 Action of the board.

| | |
|---|---|
| Falling Leaf | 7 |
| Glen Echo | 4,6 |
| Glengary Wood | 2 |
| Grove Cienaga | 1 |
| Hartfield | 7 |
| Heathcliff | 5, 6 |
| Hedwig Circle | 7, 8 |
| Lochtyne Circle | 3, 4, 5, 6 |
| Loma Linda | 1 |
| Lou-Al Courts | 1, 2, 3, 4 |
| Marian Oaks | 1, 2 |
| Memorial Village Estates | 1 |
| Montebello | 7 |
| Parkland Acres | 7 |
| Pecan Meadow | 1 |
| Piney Point Oaks | 5 |
| Quail Hollow | 4 |
| Robinwood | 5 |
| Saybrook | 5, 6, 7 |
| Stonegate | 4 |
| Sycamore Circle | 7 |
| Teca Piney Point | 5, 6 |
| Timberhill Manor | 1 |
| Villa Pecan | 1 |
| Williamsburg Village | 7 |

Sec. 816 Action of the board.



District A, 1

Sec. 816 Action of the board.



District A, 2

Sec. 816 Action of the board.



District A, 3

Sec. 816 Action of the board.



District A, 4

Sec. 816 Action of the board.



District A, 5

Sec. 816 Action of the board.



97

Scale

District A, 6

Sec. 816 Action of the board.



District A, 7

Sec. 816 Action of the board.



District A, 8

Texas Municipal Codes
Copyright 2024 Municipal Code Corporation All Rights Reserved

Sec. 816 Action of the board.

**End of Document**