United States District Court
Southern District of Texas
**ENTERED**
August 06, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VIRGINIA ELIZONDO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-21-1997 |
| | § | |
| SPRING BRANCH INDEPENDENT | § | |
| SCHOOL DISTRICT, et al., | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

This is an action brought under § 2 of the Voting Rights Act ("VRA"), 52 U.S.C. § 10301, et seq., challenging the legality of the at-large method of electing members of the Spring Branch Independent School District ("SBISD") Board of Trustees. Plaintiff alleged that the at-large system of electing members to the SBISD Board of Trustees violates the federal voting rights of Hispanic voters because it interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by Hispanic and White, non-Hispanic (i.e., "Anglo") voters,[1] that dilutes Hispanic voters' ability to elect their preferred candidates to the school board.[2] Defendants answered by denying Plaintiff's allegations and

_____

[1]The parties have used the terms "White" and "Anglo" interchangeably to refer to White non-Hispanics (i.e., English speakers as opposed to Spanish speakers). For the sake of clarity, in discussing population statistics the court will use the term "Anglo" to refer to this group.

[2]See Plaintiff's First Amended Complaint for Declaratory
(continued...)

1

arguing that SBISD's at-large system for electing school board trustees, which is permissible under Texas law, does not violate the VRA.[3]

Following a five-day bench trial in September of 2024, the court issued a Memorandum Opinion and Order (Docket Entry No. 122), stating findings of facts and conclusions of law, declaring that "SBISD's current at-large system of electing school board trustees violates the VRA,"[4] and ordering SBISD to file

> a single member district plan providing for the election of school board trustees, with sufficient supporting expert analysis establishing that it complies with Section 2 of the VRA. SBISD's remedial plan may be either a seven district single-member system or a system with five single-member districts and two at-large trustee positions, so long as that system complies with § 2 of the VRA. <u>See</u> Tex. Educ. Code § 11.052(a) (allowing for both 7-0 and 5-2 systems). SBISD's remedial plan must (a) contain one or more geographically-compact single member districts in which the HCVAP [Hispanic Citizen Voting Age Population] constitutes a majority; (b) comply with the one person-one vote requirement; and (c) respect existing communities of interest, including but not limited to the integrity of areas of minority population concentrations.[5]

---

[2](...continued)
Judgment and Injunctive Relief, Docket Entry No. 3, p. 11 ¶¶ 78-79. <u>See also</u> Plaintiff's Contentions, Exhibit 1 to Joint Pretrial Order, Docket Entry No. 71-1, p. 1 ¶¶ 1-2. Page numbers for docket entries refer to the pagination inserted at the top of the page by the court's electronic filing system.

[3]Defendants' Contentions, Exhibit 2 to Joint Pretrial Order, Docket Entry No. 71-2, pp. 1-2.

[4]Memorandum Opinion and Order, Docket Entry No. 122, p. 113.

[5]<u>Id.</u>

The court also ordered that "Plaintiff may file objections to that plan, and, if desired, an alternative plan with supporting expert analysis,"[6] and that "SBISD may file a reply."[7]

On June 6, 2025, SBISD filed Defendant's Notice of Compliance with Court's Order [Dkt. 122] ("SBISD's Notice of Compliance") (Docket Entry No. 126), proposing a hybrid redistricting plan consisting of five single member district positions and two at-large positions.  Asserting that their proposed remedial plan complies with Texas law and with the VRA,[8] and that the court is required to adopt it if it remedies the § 2 violation,[9] Defendants urge the court to "issue an Order requiring SBISD to adopt Defendants' 5-2 Remedial Plan in the form set forth in Exhibit A to the Alford Report."[10]  Attached to SBISD's Notice of Compliance are:

> **Exhibit 1** — Dr. Alford's Expert Report in Support of Defendants' Proposed 5-2 Redistricting Plan [("Alford Report" (Docket Entry No. 26-1)], with the proposed 5-2 plan attached as Exhibit A thereto . . .

> **Exhibit 2** — Declaration of Christine Porter . . . provid[ing] that, assuming the Court approves the proposed 5-2 plan, SBISD will hold an election to elect a trustee from Defendants' proposed District 1 (containing a majority HCVAP) at the next regularly occurring election, which is currently scheduled for May of 2026.

---

[6]Id. at 113-14.

[7]Id. at 114.

[8]Defendants' Memorandum of Law in Support of Defendants' 5-2 Remedial Plan ("Defendants' Memorandum of Law"), Exhibit 3 to SBISD's Notice of Compliance, Docket Entry No. 126-3, pp. 2-5.

[9]Id. at 6.

[10]Id. at 7.

**Exhibit 3** — Defendant's Memorandum of Law in Support of Defendants' 5-2 Remedial Plan.[11]

On June 26, 2025, Plaintiff filed Plaintiff's Objections to Defendants' Proposed Remedial Plan and Plaintiff's Alternative Remedial Plan ("Plaintiff's Objections and Alternative Plan") (Docket Entry No. 127), attached to which is the Expert Report of Robert M. Stein, Ph.D. ("Stein Report") (Docket Entry No. 127-1). Plaintiff argues that Defendants' proposed 5-2 plan is legally unacceptable because it <u>inter alia</u> "perpetuates the use of at-large electoral districts, which the Court has held violate the [VRA]."[12] Plaintiff urges the court to "order that the District adopt an alternative proposed seven single member district plan."[13]

On July 7, 2025, Defendants filed Defendants' Reply to Plaintiff's Objections to Defendants' Proposed Remedial Plan and Plaintiff's Alternative Remedial Plan ("Defendants' Reply) (Docket Entry No. 128), attached to which is Dr. Alford's Rebuttal Expert Report in Response to Dr. Stein's June 26, 2025, Report on the 5-2 and 7-0 Remedial Plans ("Alford's Rebuttal Report") (Docket Entry No. 128-1). Asserting that they "are free to propose whatever type of system they consider appropriate, so long as it does not violate

---

[11]SBISD's Notice of Compliance, Docket Entry No. 136, pp. 1-2.

[12]Plaintiff's Objections and Alternative Plan, Docket Entry No. 127, p. 1.

[13]<u>Id.</u> at 3.

4

the [VRA],"[14] that the "court's authority to modify a proposed
system is limited to curing any statutory violations,"[15] and that
their "proposed single-member District 1[, which] provides an open
seat with a clear opportunity for Hispanic voters to elect their
preferred candidate . . . **is all the VRA requires**,"[16] Defendants
argue that because their "proposed 5-2 remedial plan satisfies § 2
of the VRA, the Court must accept this plan, overrule Plaintiff's
objections, and reject Plaintiff's proposed alternative remedial
plan.  To do otherwise would be an abuse of discretion."[17]


# I. <u>Standard of Review</u>

In <u>Wise v. Lipscomb</u>, 98 S. Ct. 2493, 2497 (1978), the Supreme
Court recognized that

> [w]hen a federal court declares an existing apportionment
> scheme unconstitutional, it is . . . appropriate . . . to
> afford a reasonable opportunity to the legislature to
> meet constitutional requirements by adopting a substitute
> measure rather than for the federal court to devise and
> order into effect its own plan.  The new legislative
> plan, if forthcoming, will then be the governing law
> unless, it, too, is challenged and found to violate the
> Constitution.

Acknowledging that these principles articulated in <u>Wise</u> "apply with
equal force to violations of the [VRA]," the Fifth Circuit "has

---

[14]Defendant's Reply, Docket Entry No. 128, p. 2.

[15]<u>Id.</u> at  2-3.

[16]<u>Id.</u> at 3 (emphasis in the original).

[17]<u>Id.</u> at 5.

repeatedly held that it is appropriate to give affected political subdivisions at all levels of government the first opportunity to devise remedies for violations of the [VRA]." <u>Westwego Citizens for Better Government v. City of Westwego</u>, 946 F.2d 1109, 1124 (5th Cir. 1991). Courts must defer to a legislatively devised remedial plan "unless the newly enacted plan is itself unconstitutional or violates federal law." <u>Veasey v. Abbott</u>, 888 F.3d 792, 802 (5th Cir. 2018) (citing <u>Mississippi State Chapter, Operation PUSH, Inc. v. Mabus</u>, 932 F.2d 400, 407 (5th Cir. 1991)). "[A] federal court is 'precluded from substituting even what it considers to be an objectively superior plan for an otherwise constitutionally and legally valid plan that has been proposed and enacted by the appropriate state governmental unit.'" <u>Id.</u> (quoting <u>Operation PUSH</u>, 932 F.2d at 407). "[I]t is the duty of the plaintiff/objectors to challenge the superseding legislation, should [it] fail to correct [the VRA violation]." <u>Id.</u>

Absent a legislatively devised plan that remedies the § 2 violation, a district court must devise its own remedial pan. <u>See United States v. Brown</u>, 561 F.3d 420, 435 (5th Cir. 2009). "When devising a remedy to a § 2 violation, the district court's 'first and foremost obligation . . . is to correct the § 2 violation.'" <u>Id.</u> (citation omitted). "In doing so, the district court 'should exercise its traditional equitable powers to fashion the relief so that it completely remedies the prior dilution of minority voting strength.'" <u>Id.</u> (quoting S. Rep. No. 97-417, at 31, reprinted in

1982 U.S.C.C.A.N., at 208). <u>See also</u> <u>Kirksey v. Board of Supervisors of Hinds County, Mississippi</u>, 554 F.2d 139, 143 (5th Cir.) (en banc), <u>cert. denied</u>, 98 S. Ct. 512 (1977) (remedies that would perpetuate an existing VRA violation are not permitted). Court-devised plans are reviewed for abuse of discretion. <u>See Citizens for Good Government v. City of Quitman, Mississippi</u>, 148 F.3d 472, 476 (1998) (per curiam).

The usual remedy for at-large election systems that violate § 2 is the adoption of single-member districts. <u>See</u> <u>City of Quitman</u>, 148 F.3d at 476. Nevertheless, multimember, or at large, districts do not <u>per se</u> violate the VRA, and may be included in legislatively devised remedial plans as long as doing so does not create a new violation. <u>Id.</u> at 476-77 (citing <u>inter alia</u> <u>Westwego</u>, 872 F.2d at 1204). However, at-large districts may not be included in judicially devised remedial plans unless "the district court has identified a 'singular combination of unique factors,' . . . justifying the abandonment of the clear preference for single-member districts." <u>Id.</u> at 476 (quoting <u>Mahan v. Howell</u>, 93 S. Ct. 979, 989 (1973), and citing <u>Corder v. Kirksey</u>, 639 F.2d 1191, 1195 (5th Cir. 1981), <u>cert. denied</u>, 103 S. Ct. 1253 (1983)). <u>See also Corder v. Kirksey</u>, 585 F.2d 708, 713-14 (5th Cir. 1978) ("The Supreme Court has repeatedly admonished district courts required to draw apportionment plans to avoid the employment of at-large districts absent special circumstances.").

7

## II. **Defendants' Proposed Remedial Plan**

Asserting that their proposed remedial plan consisting of five single-member district positions and two at-large positions complies with Texas law and with the VRA,[18] Defendants urge the court to "issue an Order requiring SBISD to adopt Defendants' 5-2 Remedial Plan in the form set forth in Exhibit A to the Alford Report."[19]  Citing the Alford Report, Defendants argue that if approved by the court and not subject to other intervening cause, their proposed 5-2 remedial plan

> would remedy [SBISD]'s violation of § 2 by establishing a HCVAP-majority single member district with boundaries that are very similar to those of Plaintiff's demonstrative district submitted in support of the first Gingles factor and that will provide an open seat with a clear opportunity for Hispanic voters to elect their preferred candidate.[20]

Defendants argue that as long as their remedial plan remedies the § 2 violation, the court is required to adopt it.[21]

---

[18]Defendants' Memorandum of Law, Docket Entry No. 126-3, pp. 2-5 (citing Tex. Educ. Code § 11.051(b)(requiring an independent school district to be governed by a Board of Trustees comprised of the number of members the district had on September 1, 1995), and § 11.052(a) (allowing school districts like SBISD with an at-large election system to transition to a single-member system wherein "not fewer than 70 percent of the members of the board of trustees are to be elected from single-member trustee districts with the remaining trustees to be elected from the district at-large")).

[19]Id. at 7.

[20]Id. at 6-7.

[21]Id. at 6.

Quoting <u>Corder</u>, 585 F.2d at 713-14, Plaintiff responds that "[t]here is a 'strong preference for single member remedial districting' absent 'special circumstances' not present here."[22]

Citing <u>inter alia</u> <u>City of Quitman</u>, 148 F.3d at 476, for holding that "[i]n contrast to 'court ordered plans,' reapportionment plans prepared by legislative bodies [here, SBISD's Board of Trustees] may employ multimember (or at-large) districts,"[23] and <u>James v. City of Sarasota, Florida</u>, 611 F. Supp. 25 (D.C. Fla. 1985), for approving the city's 3-2 hybrid single-member/at-large plan over plaintiff's five single-member district plan, Defendants reply that the court should accept their plan and overrule Plaintiff's objections.[24]

## A.   Is Defendants' Proposed Remedial Plan Legislative or Judicial?

Defendants' arguments that as long as their proposed plan remedies the § 2 violation, the court is required to adopt it,[25] and that plans prepared by legislative bodies such as SBISD's Board of Trustees, may employ multimember or at-large districts,[26] and

---

[22]Plaintiff's Objections and Alternative Plan, Docket Entry No. 127, p. 5.

[23]Defendants' Reply, Docket Entry No. 128, p. 2.

[24]<u>Id.</u> at 3-5.

[25]Defendants' Memorandum of Law, Docket Entry No. 126-3, p. 6.

[26]Defendants' Reply, Docket Entry No. 128, pp. 2-3.

Plaintiff's argument that "[t]here is a 'strong preference for single member remedial districting' absent 'special circumstances' not present here,"[27] raise the threshold issue of whether Defendants' proposed 5-2 plan is legislative or judicial. If Defendants' proposed plan is legislative, absent constitutional or statutory invalidity, it would be entitled to deference even though it includes at-large trustee positions. See City of Quitman, 148 F.3d at 476. But if Defendants' proposed plan is judicial, absent special circumstances not identified here, the court must prefer single-member districts. Id. (citing inter alia Connor v. Finch, 97 S. Ct. 1828, 1834 (1977), and East Carroll Parish School Board v. Marshall, 96 S. Ct. 1083, 1085 (1976) (per curiam)).

Defendants cite several cases recognizing and applying the principle articulated in Wise, 98 S. Ct. at 2497, that when a federal court declares an existing apportionment scheme invalid, the court should afford the appropriate legislative body a reasonable opportunity to "adopt[] a substitute measure rather than for the federal court to devise and order into effect its own plan." For example, Defendants cite In re Landry, 83 F.4th 300, 306-07 (5th Cir. 2023) for stating that "a court must afford the legislative body that becomes liable for a [§] 2 violation, the first opportunity to accomplish the difficult and politically

---

[27]Plaintiff's Objections and Alternative Plan, Docket Entry No. 127, p. 5.

10

fraught task of redistricting;" and <u>Veasey v. Abbott</u>, 830 F.3d 216, 269 (5th Cir. 2016)(en banc), <u>cert. denied</u>, 137 S. Ct. 612 (2017) for stating that "[t]here are times when a court might give a [legislative body] an opportunity to cure the infirmities in the statute before permitting the district court to fashion a remedy."[28] Moreover, Defendants Reply quotes <u>Wise</u>, 98 S. Ct. at 2497-255, for upholding "an at-large plan **enacted** by a local district body,"[29] and <u>Corder</u>, 585 F.2d at 715 n. 13, for stating that "[w]here the local body [here, SBISD] **drafts and enacts a reapportionment plan containing at-large seats**, its actions are not governed by the strict 'special circumstances' standards applicable to federal district courts fashioning like plans."[30]

The cases that Defendants cite make clear that the opportunity courts are to afford governmental bodies found to have violated § 2 is the opportunity to legislatively devise a remedy for the § 2 violation; not merely the opportunity to suggest a plan that the governmental body then asks the court to order implemented. Writing with respect to § 5 of the VRA, the Supreme Court has said that "the essential characteristic of a legislative plan is the exercise of legislative judgment," <u>McDaniel v. Sanchez</u>, 101 S. Ct.

---

[28]Defendants' Memorandum of Law, Docket Entry No. 126-3, p. 6 ¶ D.5.

[29]Defendants' Reply, Docket Entry No. 128, p. 2 n. 2.

[30]<u>Id.</u> (emphasis added).

2224, 2237-38 (1981), and that a key factor for determining if a plan is legislative is whether the plan reflects "policy choices of the elected representatives of the people." Id. at 2238.

Defendants argue that "reapportionment plans prepared by legislative bodies [here SBISD's Board of Trustees] may employ multimember (or at-large districts),"[31] but make no showing that the proposed 5-2 plan was prepared by SBISD's Board of Trustees. Nor do Defendants make any showing that SBISD's Board of Trustees has exercised legislative power to enact or adopt the proposed plan, or that SBISD intends to do so in the future. To the contrary, as evidence that "the violation of the [VRA] found in the Court's Order [Dkt. 122] will be remedied at the first available opportunity,"[32] Defendants cite the Declaration of Christine Porter ("Porter Declaration"), SBISD's Assistant Superintendent for Finance, who states that

> subject to approval by this court and barring any intervening cause, such as a stay of this Court's Order [Dkt. 122], a successful appeal by Defendants, or any other cause that would defer or relieve Defendants' compliance with this Court's Order [Dkt. 122], SBISD will hold an election to elect a trustee from Defendants' Proposed District 1 (containing a majority HCVAP) at the next available regularly occurring election, which is currently scheduled for May of 2026.[33]

---

[31]Id. at 2.

[32]Defendants' Memorandum of Law, Docket Entry No. 126-3, p. 5.

[33]Porter Declaration, Exhibit 2 to SBISD's Notice of Compliance, Docket Entry No. 126-2, p. 2 ¶ 3.

Porter's Declaration makes clear that if the court grants
Defendants' request to "issue an Order requiring SBISD to adopt
[their proposed] Remedial Plan,"[34] SBISD will implement that order
only as long as there is no "intervening cause . . . that would
defer or relieve Defendants' compliance with this Court's Order."[35]

SBISD's proposed 5-2 plan is not a legislative exercise by
SBISD's Board of Trustees intended to remedy the § 2 violation as
contemplated by the authorities that Defendants cite. See In re
Landry, 83 F.4th at 306-07 ("[A] court must afford the legislative
body that becomes liable for a [§] 2 violation, the first
opportunity to accomplish the difficult and politically fraught
task of redistricting."); Veasey, 830 F.3d at 269 ("There are times
when a court might give a state legislature an opportunity to cure
the infirmities in the statute before permitting the district court
to fashion a remedy."). The proposed 5-2 plan is merely an
expression of Defendants' preference for a hybrid plan that
Defendants ask the court to adopt and order SBISD to implement.
Because Defendants fail to present evidence showing that the
proposed plan reflects the exercise of legislative judgment by
SBISD's Board of Trustees intended to cure SBISD's § 2 violation,
and because Defendants ask the court to "issue an Order requiring

---

[34]Defendants' Memorandum of Law, Docket Entry No. 126-3, p. 7.

[35]Porter Declaration, Docket Entry No. 126-2, p. 2 ¶ 3.

13

SBISD to adopt [their proposed] Remedial Plan,"[36] the court concludes that the proposed 5-2 plan is not a legislative plan, but a plan that Defendants' urge the court to adopt as its own.

Because the proposed 5-2 plan is not a legislative plan, the court's discretion to grant Defendants' request to "issue an Order requiring SBISD to adopt Defendants' Remedial Plan in the form set forth in Exhibit A to the Alford Report,"[37] is limited by the long-standing rule that absent special circumstances not evident here, single-member districts are to be used in judicially crafted redistricting plans. See City of Quitman, 148 F.3d at 476 (citing inter alia Connor, 97 S. Ct. at 1834, and East Carroll Parish, 96 S. Ct. at 1085 & n. 6). Alternatively, for the reasons stated below, even if the proposed 5-2 plan were a legislative plan, the court concludes that it may not be ordered because it does not remedy SBISD's § 2 violation.

**B.    Does Defendants' Proposed Plan Remedy the § 2 Violation?**

For Defendants' proposed plan to remedy the § 2 violation, it must afford Hispanics an "equal opportunity to participate in the political processes and to elect candidates of their choice." Thornburg v. Gingles, 106 S. Ct. 2752, 2763 (1986) (quoting S. Rep. No. 97-417, 97th Cong. 2nd Sess. 28 (1982), reprinted in 1982

---

[36]Defendants' Memorandum of Law, Docket Entry No. 126-3, p. 7.

[37]Id.

U.S.C.C.A.N. 177, 206 (1982)).  The plan need not guarantee electoral success, but it must provide a genuine opportunity for Hispanics to exercise an electoral power commensurate with their population.  See Johnson v. DeGrandy, 114 S. Ct. 2647, 2658 n. 11 (1994) ("[T]he ultimate right of § 2 is equality of opportunity, not a guarantee of electoral success for minority-preferred candidates of whatever race.").  In addition to correcting the § 2 violation, Brown, 561 F.3d at 435, SBISD's remedial plan must "(a) contain one or more geographically-compact single member districts in which the HCVAP constitutes a majority; (b) comply with the [Fourteenth Amendment's] one-person, one-vote requirement; and (c) respect existing communities of interest."[38]

Citing the Alford Report, Defendants argue that the proposed plan complies with the requirement to include a majority-minority district because proposed District 1 has a total Hispanic population of 73.2% and a HCVAP of 51.4% according to 2020 Census data, and 54.4% according to 2018-2022 Census ACS estimate.[39] Defendants argue that the proposed plan complies with the one-person, one-vote requirement because

> [e]ach district contains relatively equal total population. . . . [T]he least populous proposed district contains 35,154 people, and the most populous proposed district contains 37,808 people, a differential of only

---

[38]Memorandum Opinion and Order, Docket Entry No. 122, p. 113.

[39]Defendants' Memorandum of Law, Docket Entry No. 126-3, p. 3 (citing Alford Report, Docket Entry No. 126-1, pp. 5-6).

7.5%. Moreover, the average population of the proposed
districts is 36,667 and the median population is 36,545.
None of the proposed districts deviate significantly from
this average or median.[40]

Defendants argue that the proposed plan respects communities of
interest because each proposed district is contiguous and
"regularly shaped, with boundaries following major roadways,
neighborhoods, natural landmarks, census blocks, and SBISD's
boundaries."[41]

Plaintiff responds that Defendants' proposed 5-2 plan is
legally unacceptable because it "perpetuates the use of at-large
electoral districts, which the Court has held violate the [VRA]
because, among other things, Anglo bloc voting in the District
systematically defeats the Hispanic voters' preferred candidates,"[42]
and because "the [VRA] does not authorize the District to
perpetuate the illegality in its existing at-large electoral system
merely be confining that illegal practice to two out of seven
elected trustee positions."[43] Quoting Jones v. City of Lubbock, 727
F.2d 364, 383 (5th Cir. 1984), Plaintiff argues that "[m]aintenance
of even a partial 'at-large system aggravates the political

---

[40]Id. (quoting Alford Report, Docket Entry No. 126-1, p. 6).

[41]Id. (quoting Alford Report, Docket Entry No. 126-1, p. 6).

[42]Plaintiff's Objections and Alternative Plan, Docket Entry
No. 127, p. 1.

[43]Id. at 2.

disadvantage' of the District's Hispanic voters."[44]  The requirement
that court ordered remedial plans must prefer single-member
districts is a reflection of the Supreme Court's recognition that
"the practice of multimember districting can contribute to voter
confusion, make legislative representatives more remote from their
constituents, and tend to submerge electoral minorities and over-
represent electoral majorities."  Connor, 97 S. Ct. at 1834.
Plaintiff argues that allowing SBISD

> to maintain at-large voting for two trustee positions
> (thereby assuring that cohesive Anglo bloc voting will be
> determinative of who fills those places), . . . would
> continue to violate the [VRA], by preventing Hispanic
> voters from having the same opportunities to elect
> representatives of their choice enjoyed by other
> voters.[45]

Defendants reply that the "proposed single-member District 1,
provides an open seat with a clear opportunity for Hispanic voters
to elect their preferred candidate[, and that] **. . . is all the VRA
requires**."[46]  Defendants argue that their "proposed 5-2 plan fully
comports with the requirements of this Court's Memorandum Opinion
and Order and the VRA."[47]  Defendants cite several cases
acknowledging that hybrid plans prepared by legislative bodies do

---

[44]Id.

[45]Id. at 3.

[46]Defendants' Reply, Docket Entry No. 128, p. 3 (emphasis in
original).

[47]Id.

not per se violate § 2,[48] but cite only one case in which a court found that an existing at-large system violated § 2 and then approved as a remedy a hybrid plan consisting of three single-member district positions and two at-large positions: James, 611 F. Supp. at 25.

But James does not support Defendants' argument that Defendants' proposed 5-2 plan complies with § 2. In James the plaintiffs sought declaratory judgment that the at-large election of Sarasota's five city commissioners diluted black voting strength in violation of the Constitution and the VRA. Plaintiffs sought an order requiring the commissioners to be elected from single-member districts. Id. at 26. On the eve of trial, the city commissioners admitted that the at-large election system violated the VRA and agreed to devise a new method. After the parties were unable to reach an agreement, the plaintiffs and the city each submitted a proposed plan to the court. The plaintiffs' plan called for five single-members districts. The defendant's plan divided the city into three districts, and called for three commissioners to be elected by a plurality of the voters in each district, and for two commissioners to be elected at-large by a plurality vote. The city submitted both the plaintiff's 5-0 plan and its 3-2 plan to the voters who selected the city's plan. Id. at 27. The court held that "[t]he city's 3/2 proposal is a legislative plan since it was

[48] Id. at 2-3.

18

approved by a voter referendum as an amendment to the city charter." Id. Because unlike in the present case, the city's proposed plan was a legislative plan, the court's discretion was not limited by the long-standing rule that absent special circumstances single-member districts are to be used in judicially crafted redistricting plans. Id. (citing inter alia Connor, 97 S. Ct. at 1834, and East Carroll Parish, 96 S. Ct. at 1085). See also City of Quitman, 148 F.3d at 476 ("The district court's discretion to depart from the longstanding general rule that single-member districts are to be used in judicially crafted redistricting plans . . . is quite limited.").

Moreover, in James, 611 F. Supp. at 29, the court found that the city's plan would remedy the VRA violation because it would not only provide black voters an equal opportunity to elect a commissioner from one of the single-member districts, but also would provide black voters a chance to elect a commissioner from one of the two at-large seats thanks, in part, to the city's decision to allow single-shot voting for the at-large positions. James, 611 F. Supp. at 29. While Defendants argue that their proposed 5-2 plan would provide SBISD's Hispanic voters an equal opportunity to elect a trustee from one of the single-member districts, they fail to argue that Hispanic voters would have an equal opportunity to elect a trustee to one of the two at-large positions. To the contrary, Defendants do not reply to Plaintiff's

19

argument that the 5-2 plan "perpetuates the use of at-large electoral districts, which the Court has held violate the [VRA] because, among other things, Anglo bloc voting in the District systematically defeats the Hispanic voters' preferred candidates."[49] Because SBISD's VRA violation cannot be remedied by limiting its illegal practice to two of seven trustee positions, Defendants' request that the court "issue an Order requiring SBISD to adopt [their proposed] Remedial Plan,"[50] will be denied.

### III. **Plaintiff's Proposed Remedial Plan**

As evidenced by the Stein Report, Plaintiff's alternative plan for seven single-member district trustee positions remedies SBISD's § 2 violation by eliminating at-large elections and including one geographically-compact single member district with a majority HCVAP population of 60%.[51]  "Under the one-person, one vote principle, jurisdictions must design legislative districts with equal populations." Evenwel v. Abbott, 136 S. Ct. 1120, 1124 (2016). Plaintiff's alternative plan complies with the one-person, one-vote requirement because the population variances among the districts is

---

[49]Plaintiff's Objections and Alternative Plan, Docket Entry No. 127, p. 1.

[50]Defendants' Memorandum of Law, Docket Entry No. 126-3, p. 7.

[51]Plaintiff's Objections and Alternative Plan, Docket Entry No. 127, p. 8.  See also Stein Report, Docket Entry No. 127-1, pp. 4 and 7).

within the 10% differential allowed by the Supreme Court.[52]  Id.
("Where the maximum population deviation between the largest and
smallest district is less than 10%, a state or local legislative
map presumptively complies with the one-person, one-vote rule.").
Plaintiff's alternative plan respects communities of interest and
neither fractures the Hispanic Voting Age Population nor condenses
the Hispanic community into a single district to limit Hispanic
opportunities in other proposed districts because, like the
Illustrative Plan discussed at trial, it has north side residents
zoned to north side districts, with the exception of areas that
fall within the boundaries of heavily segregated Anglo populations
in Spring Valley Village and Hilshire Village.[53]  For these reasons
the court concludes that Plaintiff's alternative plan for seven
single-member districts will remedy SBISD's § 2 violation and
bringing SBISD into compliance with the VRA.    Therefore,
Plaintiff's request that the court "adopt and order Defendants to
implement the seven single member district plan developed by
Dr. Stein,"[54] will be granted.

---

[52]Plaintiff's Objections and Alternative Plan, Docket Entry
No. 127, p. 9.  See also Stein Report, Docket Entry No. 127-1, p. 5
n. 1.

[53]Plaintiff's Objections and Alternative Plan, Docket Entry
No. 127, p. 9 & n. 11.

[54]Id. at 10.

21

## IV. **Conclusions and Order**

The conclusions reached in this Memorandum Opinion and Order are based on the court's conscientious application of § 2 of the VRA, appellate decisions applying § 2, and caselaw cited by the parties, to the facts of this case. As the court's opinion should make clear, the court's authority to modify SBISD's election system is limited to curing the violation of § 2 found in the court's previous Memorandum Opinion and Order (Docket Entry No. 122). The court has no authority to decide, and did not consider, which of the two proposed plans would better further the educational goals of SBISD and its students.

For the reasons stated in § II, above, Defendants' request that the court order SBISD to adopt their proposed hybrid remedial plan advanced in SBISD's Notice of Compliance with Court's Order, Docket Entry No. 126, is **DENIED**.

For the reasons stated in § III, above, Plaintiff's request that the court order SBISD to adopt and implement the seven single member district plan developed by Dr. Stein and proposed in Plaintiff's Objections to Defendants' Proposed Remedial Plan and Plaintiff's Alternative Remedial Plan, Docket Entry No. 127, is **GRANTED**.

**SIGNED** at Houston, Texas, on this 6th day of August, 2025.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

22