United States District Court
Southern District of Texas
**ENTERED**
October 27, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VIRGINIA ELIZONDO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-21-1997 |
| | § | |
| SPRING BRANCH INDEPENDENT | § | |
| SCHOOL DISTRICT, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is Plaintiff's Motion for Attorneys Fees and Costs (Docket Entry No. 131), seeking over $1.4 million through trial, pursuant to Federal Rule of Civil Procedure 54(d), 28 U.S.C. § 1920, and the fee-shifting provision of the Voting Rights Act ("VRA"), 52 U.S.C. § 10310(e).[1]  Also pending are Defendants' Objections to Plaintiff's Motion for Attorney's Fees and Costs ("Defendants' Objections") (Docket Entry No. 147), urging the court to deny Plaintiff's motion or, alternatively, to exclude Dr. Tijerina's expert witness fees and costs, and Plaintiff's Reply to Defendants' Objections to Plaintiff's Motion for Attorney's Fees and Costs ("Plaintiff's Reply") (Docket Entry No. 149).  For the reasons stated below, Plaintiff's Motion for Attorneys Fees and Costs will be granted.

---

[1]Plaintiff's Motion for Attorneys Fees and Costs, Docket Entry No. 131, p. 16.  All page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing system.

1

## I. **Background**

This is an action brought under § 2 of the VRA, 52 U.S.C. § 10301, et seq., challenging the legality of the at-large method for electing members of the Spring Branch Independent School District ("SBISD") Board of Trustees. Following a five-day bench trial in September of 2024 the court issued a Memorandum Opinion and Order on April 28, 2025 (Docket Entry No. 122), stating findings of fact and conclusions of law, declaring that "SBISD's current at-large system of electing school board trustees violates the VRA,"[2] and finding that

> Plaintiff is the prevailing party . . . entitled to court costs and to an award of attorney's fees under Fed. R. Civ. P. 54(d). The Court will defer deciding the amount of attorney's fees to which Plaintiff is entitled until Plaintiff seeks such relief under Fed. R. Civ. P. 54(d).[3]

On August 6, 2025, the court entered a Memorandum Opinion and Order (Docket Entry No. 129) denying SBISD's proposed 5-2 hybrid remedial plan, and granting Plaintiff's proposed 7-0 single-member remedial plan. The court also entered Final Judgment (Docket Entry No. 130), ordering Defendants "to implement the seven single member district plan proposed in Plaintiff's Objections to Defendants' Proposed Remedial Plan and Plaintiff's Alternative Remedial Plan (Docket Entry No. 127) in time for SBISD's next regularly scheduled election in May of 2026."

---

[2] Memorandum Opinion and Order, Docket Entry No. 122, p. 113.

[3] Id. at 112 ¶ 55.

On August 15, 2025, Plaintiff filed her Motion for Attorney's Fees and Costs seeking over $ 1.4 million through trial.[4]

On August 25, 2025, Defendants filed a Notice of Appeal (Docket Entry No. 136), Defendants' Motion to Defer Consideration of Plaintiff's Motion for Attorneys' Fees and Costs Pending Appeal ("Defendants' Motion to Defer") (Docket Entry No. 132), and Defendants' Motion to Stay Final Judgment Pending Appeal ("Defendants' Motion to Stay")(Docket Entry No. 135).

On September 17, 2025, the court entered a Memorandum Opinion and Order (Docket Entry No. 143) granting Defendants' Motion to Stay, Denying Defendants' Motion to Defer, and ordering Defendants to respond to Plaintiff's Motion for Attorneys Fees and Costs.  On October 1, 2025, Defendants filed their response, and on October 8, 2025, Plaintiff filed her reply.

## II. Standard of Review

Plaintiff has timely moved under Federal Rule of Civil Procedure 54(d) for an award of reasonable attorney's fees and taxable costs which, pursuant to the VRA's fee-shifting provision, includes reasonable litigation expenses in addition to the categories of costs authorized by 28 U.S.C. § 1920.  Rule 54(d)(1) states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs — other than attorney's fees —

---

[4]Plaintiff's Motion for Attorneys Fees and Costs, Docket Entry No. 131, p. 16.

should be allowed to the prevailing party." Although taxation of costs under Rule 54(d)(1) is a matter within the court's discretion, Taniguchi v. Kan Pacific Saipan, Ltd., 132 S. Ct. 1997, 2001 (2012), courts "may neither deny nor reduce a prevailing party's request for cost[s] without first articulating some good reason for doing so." Pacheco v. Mineta, 448 F.3d 783, 794 (5th Cir.), cert. denied sub nom., Pacheco v. Cino, 127 S. Ct. 299 (2006). Unless expressly authorized by statute, courts may only tax as costs the expenses listed in 28 U.S.C. § 1920:

   (1)   Fees of the clerk and marshal;

   (2)   Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

   (3)   Fees and disbursements for printing and witnesses;

   (4)   Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

   (5)   Docket fees under [§] 1923 of this title; and

   (6)   Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services.

28 U.S.C. § 1920.

The VRA's fee-shifting provision expands the taxable costs available to prevailing plaintiffs. That provision states:

   In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs.

4

52 U.S.C. § 10310(e) (formerly 42 U.S.C. § 1973l(e)). The VRA's fee-shifting provision is interpreted under the same legal standard as the similar provision in 42 U.S.C. § 1988. See Craig v. Gregg County, Texas, 988 F.2d 18, 20 (5th Cir. 1993)("Because the phrase 'prevailing party' connotes the same general meaning under § [10310(e)] and 42 U.S.C. § 1988, cases under both Acts apply the same principles when determining plaintiff's entitlement to attorneys' fees."). Thus, a prevailing plaintiff in a VRA case "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Lefemine v. Wideman, 133 S. Ct. 9, 11 (2012)(per curiam) (quoting Hensley v. Eckerhart, 103 S. Ct. 1933, 1937 (1983) (quoting Newman v. Piggie Park Enterprises, Inc., 88 S. Ct. 964, 966 (1968)(per curiam))). "Given the strong policy behind § 1988 of awarding fees to prevailing plaintiffs, defendants must make an extremely strong showing of special circumstances to avoid paying attorneys' fees and . . . the discretion to deny § 1988 fees is extremely narrow." Shelton v. Louisiana State, 919 F.3d 325, 328 (5th Cir. 2019) (internal citation omitted). "A district court abuses its discretion if it applies an erroneous interpretation of special circumstances to justify denial of fees to an otherwise prevailing party." Id. (quoting Grisham v. City of Fort Worth, Texas, 837 F.3d 564, 567-68 (5th Cir. 2016)).

"If the party being taxed has not specifically objected to a cost, the presumption is that the costs being sought were

5

necessarily incurred for use in the case and will be taxed." Baisden v. I'm Ready Productions, Inc., 793 F. Supp. 2d 970, 973 (S.D. Tex. 2011). "However, once an objection has been raised, the party seeking costs bears the burden of verifying that the costs were necessarily incurred for use in the case rather than just spent in preparation and litigation of the case." Id. (citing Fogleman v. ARAMCO (Arabian American Oil Co.), 920 F.2d 278, 286 (5th Cir. 1991)). The court "may reduce or deny costs for many reasons . . . [but] must articulate its reasons for doing so." Edwards v. 4JLJ, L.L.C., 976 F.3d 463, 466 (5th Cir. 2020). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  Hensley, 103 S. Ct. at 1941.

### III. Analysis

Defendants urge the court to deny Plaintiff's motion for fees and costs arguing that they did not intentionally discriminate against Hispanic voters and that they provided Hispanic students with a quality education.[5]  Alternatively, Defendants argue that the court should exclude Dr. Tijerina's fees and costs because his expert testimony and report did not assist the court.[6]

---

[5] Defendants' Objections, Docket Entry No. 147, pp. 1-3 ¶¶ 2.1-2.4.

[6] Id. at 3-4 ¶ 4.1.

**A.    Plaintiff is the Prevailing Party**

    1.    <u>Applicable Law</u>

A prevailing party is one who has obtained a "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." <u>Davis v. Abbott</u>, 781 F.3d 207, 214 (5th Cir.), <u>cert. denied</u>, 136 S. Ct. 534 (2015) (quoting <u>Sole v. Wyner</u>, 127 S. Ct. 2188, 2194 (2007)). <u>See also</u> <u>Lefemine</u>, 133 S. Ct. at 11 ("A plaintiff 'prevails' . . . when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.") (quoting <u>Farrar v. Hobby</u>, 113 S. Ct. 566, 573 (1992)). "[A]n injunction or declaratory judgment, like a damages award, will satisfy that test." <u>Lefemine</u>, 133 S. Ct. at 11.

    2.    <u>Application of the Law to the Facts</u>

The court found Plaintiff to be the "prevailing party . . . entitled to court costs and to an award of attorney's fees under Fed. R. Civ. P. 54(d)."[7] Nevertheless, citing <u>Lackey v. Stinnie</u>, 145 S. Ct. 659, 667 (2025), for holding that a "prevailing party" is "[t]he party ultimately prevailing when the matter is finally set at rest,"[8] and citing their previously filed and granted Motion to Stay, Defendants urge the court to deny Plaintiff's motion

---

[7]Memorandum Opinion and Order, Docket Entry No. 122, p. 113 ¶ 55.

[8]Defendants' Objections, Docket Entry No. 147, p. 3 ¶ 3.1.

because they are likely to prevail on appeal.[9]  In their Motion to Stay Defendants argued that they are likely to prevail on appeal because they intend to challenge the constitutionality of race-based redistricting, an issue now before the Supreme Court in Louisiana v. Callais, No. 24-109, and Robinson v. Callais, No. 24-110.[10]  Defendant's argument that they will likely succeed on appeal is not based on existing law but, instead, on their hope that the Supreme Court will change existing law and thereby undermine Plaintiff's status as the prevailing party.  That argument provides no basis for the court to deny Plaintiff's motion.  See Mallory v. Norfolk Southern Railway Co., 143 S. Ct. 2028, 2038 (2023)("If a precedent of this Court has direct application in a case, . . . a lower court should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.")(internal citation omitted).  Based on controlling law, the court held that "SBISD's current at-large system of electing school board trustees violates the VRA."[11]  Based on that holding and on the Final Judgment ordering Defendants "to implement the seven single member district plan proposed . . . [by Plaintiff],"[12] Plaintiff is the prevailing party.

---

[9]Id. (citing Defendants' Motion to Stay, Docket Entry No. 135, and Memorandum Opinion and Order, Docket Entry No. 143, pp. 6-14, granting Defendants' Motion to Stay).

[10]Defendants' Motion to Stay, Docket Entry No. 135, pp. 7-9.

[11]Memorandum Opinion and Order, Docket Entry No. 122, p. 113.

[12]Docket Entry No. 130.

**B.    Plaintiff is Entitled to an Award of Attorney's Fees and Costs**

Defendants argue that

> the Court should exercise its discretion and decline to award Plaintiff her requested fees and costs because two special circumstances would render such an award unjust: (1) the Court specifically found that [SBISD] did not engage in intentional discrimination but instead responded to the needs of Hispanic voters and students; and (2) [SBISD] is a public school district, and requiring it to pay over $1.4 million in fees and costs would hurt, rather than help, Hispanic students and voters.[13]

Defendants argue that "[b]ecause the Court found no evidence that SBISD failed to serve its Hispanic students and community despite the District's use of the challenged election system, it would be unjust to require [them] to pay an award of over $1.4 million."[14] Defendants also argue that requiring them "to pay $1.4 million from the public fisc would harm, rather than help, [SBISD]'s Hispanic students and voters."[15]  Defendants explain that "[t]he programs to help Hispanic students cited in the Court's memorandum and opinion are funded by the same public dollars that would be used to pay an award of fees and cots.  This would inevitably and unjustly reduce the services SBISD can provide to its students and community."[16]

Defendants fail to cite, and the court has not found, any authority supporting their arguments that because the

---

[13] Defendants' Objections, Docket Entry No. 147, p. 2 ¶ 2.2.

[14] Id. ¶ 2.3.

[15] Id. at 3 ¶ 2.4

[16] Id.

discrimination at issue was not intentional or that because an award of fees and costs would be paid from the public fisc special circumstances render an award of attorney's fees and costs unjust. To the contrary, regarding prevailing plaintiffs' entitlement to attorneys' fees and costs in civil rights cases brought against public defendants, the Fifth Circuit has long held that "[t]here need be no finding of bad faith, . . . nor must the defendants be guilty of intentional discrimination for liability to exist." Morrow v. Dillard, 580 F.2d 1284, 1300 (5th Cir. 1978) (citing Gates v. Collier, 559 F.2d 241, 242 (5th Cir. 1977), and Brown v. Culpepper, 559 F.2d 274, 278 (5th Cir. 1977)). The Fifth Circuit has rejected arguments like those made by SBISD holding that

> [t]he defendant's conduct, be it negligent or intentional, in good faith or bad, is irrelevant to an award of attorney's fees [under § 1988]. . . The district court therefore erred when it denied plaintiffs' request for attorneys' fees because defendants had not acted intentionally.

Brown, 559 F.2d at 278. In Riddell v. National Democratic Party, 624 F.2d 539, 545 (5th Cir. 1980), the court similarly held that

> [s]tate officials cannot show special circumstances sufficient to prevent an award of fees merely because the officials enforced [a] statute in good faith compliance with their official duty, or because any award of attorneys' fees would ultimately be satisfied by the state taxpayers.

Because Defendants have failed to show that special circumstances would render an award of attorney's fees and costs unjust, the court concludes that Plaintiff is entitled to such an award.

**C.     Plaintiff's Requests for Attorney's Fees and Costs**

   1.   Plaintiff's Request for Attorney's Fees Will Be Granted

Having determined that Plaintiff is the prevailing party and that she is entitled to receive an award of attorney's fees, the court must determine what fee is reasonable. See Hensley, 103 S. Ct. at 1940. When attorney's fees are authorized by statute, including the VRA, courts in the Fifth Circuit apply the "lodestar" method and apply the twelve factors enumerated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated in part on other grounds, Blanchard v. Bergeron, 109 S. Ct. 939 (1989), for determining reasonableness of the fees. See Veasey v. Abbott, No. 2:13-CV-193, 2020 WL 9888360, at *7 (S.D. Tex. May 27, 2020)(referencing lodestar method in a VRA case). See also OCA Greater Houston v. Texas, No. 1:15-cv-679-RP, 2017 WL 401275, at *3-*4 (W.D. Tex. January 30, 2017) (applying lodestar method in a VRA case).

Under the lodestar method courts first determine the amount of reasonable attorney's fees by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." Hensley, 103 S. Ct. at 1939. Once the court determines the amount of reasonable attorney's fees, the court evaluates whether that amount should be adjusted upward or downward based on the twelve factors laid out in Johnson: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the

11

preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the [reasonable] fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  488 F.2d at 717-19.

"There is a strong presumption of the reasonableness of the lodestar amount." Black v. SettlePou, P.C., 732 F.3d 492, 502 (5th Cir. 2013) (citing Perdue v. Kenny A., 130 S. Ct. 1662, 1673 (2010)).  The lodestar calculation does not end the inquiry, however, and the court should consider other factors that would warrant an upward or downward adjustment of the fee. See Hensley, 103 S. Ct. at 1939-40 & n. 9.  The court should exclude from the initial fee calculation hours that were not reasonably expended, and counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. Id.

The lodestar calculation is addressed in Plaintiff's motion and supported by the Declaration of Barry Abrams ("Abrams Declaration") and the billing records attached thereto.[17] Although Mr. Abrams opines that the standard rates for each of the attorneys

---

[17] Docket Entry No. 131-1, pp. 6-16 ¶¶ 11-20, and Exhibits A2-A17, Docket Entry Nos. 131-3 through 131-18, attached thereto.

on Plaintiff's legal team are reasonable, as a matter of billing judgment and discretion, he opines that "it would be appropriate in a case of this sort involving a public entity, to discount the standard billing rates of the Blank Rome members of the legal team by 25%."[18]  Based on his experience Mr. Abrams concludes it "appropriate to reduce the total number of hours the [l]egal [t]eam billed and for which compensation is requested, by 10%."[19] Mr. Abrams also states that "[a]s an additional fee concession, no request is being made for additional time expended after July 31, 2025."[20]  Thus, Mr. Abrams urges the following lodestar calculation as "a reasonable and appropriate fee for the services of Dr. Elizondo's [l]egal [t]eam . . .:"[21]

| Lodestar Calculation | | | |
|---|---|---|---|
| **Timekeeper:** | **Hours** | **Rates** | **Total** |
| Barry Abrams | 1072.53 | $873.75 | $937,123.09 |
| Robert P. Scott | 114.93 | $873.75 | $100,420.09 |
| Domingo Llagostera | 159.30 | $768.75 | $122,461.88 |
| Joshua A. Huber | 35.55 | $660.00 | $23,463.00 |
| M'Liss Hindman | 71.91 | $236.25 | $16,988.74 |
| Martin Golando | 109.35 | $480.00 | $52,488.00 |
| **Lodestar Total:** | | | **$1,252,944.80** |

---

[18] Id. at 11 ¶ 15.

[19] Id. at 15 ¶ 19.

[20] Id. at 16 ¶ 19.

[21] Id. ¶ 20.  Although the total in the Abrams Declaration is one cent less than the total reflected here, the other amounts are the same.

Mr. Abrams has also addressed the Johnson factors that courts consider to determine whether the lodestar amount should be revised up or down, and opines that those factors "weigh heavily in favor of awarding at least the full amount of Dr. Elizondo's requested fee award."[22] Significantly, Defendants do not contest the reasonableness of the rates, hours, or total amount of attorneys' fees that Plaintiff seeks. See Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 328 (5th Cir.) (per curiam), cert denied sub nom. L.K. Comstock & Co, Inc. v. Louisiana Power & Light Co., 116 S. Ct. 173 (1995) (recognizing that where "a rate is not contested, it is prima facie reasonable").

The court is very familiar with the work of the attorneys for which fees are sought. The hourly rates are supported and are reasonable. The number of hours expended are reasonable for the litigation. There is no unnecessary duplication, and there was an appropriate delegation of work to associates with less experience and lower rates. Moreover, in an exercise of billing judgment, Plaintiff's attorneys seek fees based on hourly rates that are 25% less than their standard rates, and the total number of hours for which they seek fees is 10% less than the total number of hours actually devoted to Plaintiff's representation. Because the court finds that the attorney's fees that Plaintiff seeks are reasonable, and because defendants do not contest the reasonableness of those fees, Plaintiff's request for attorney's fees totaling $1,252,944.80 will be granted.

---

[22] Id. at 16-17 ¶ 21.

14

2.  <u>Plaintiff's Request for Costs Will Be Granted</u>

Mr. Abrams states in his declaration that the amount of reasonable and necessary litigation costs and expenses incurred and paid through entry of final judgment was $184,358.14.[23] Mr. Abrams itemizes these costs as follows:[24]

| | Litigation Expense: | Amount | Source |
|---|---|---|---|
| 1 | Clerk's Fees | $402.00 | Ex. A9; DE 131-10 |
| 2 | Expert Expenses (Stein) | $79,075.00 | Ex. A10; DE 131-11 |
| 3 | Expert Expenses (Tijerina) | $61,371.67 | Ex. A11; DE 131-12 |
| 4 | Trial Presentation and Graphics Expenses | $20,030.75 | Ex. A12; DE 131-13 |
| 5 | Court Reporter Expenses | $12,265.52 | Ex. A13; DE 131-14 |
| 6 | Witness Fees | $200.00 | Ex. A14; DE 131-15 |
| 7 | Trial/Hearing Transcripts | $5,688.45 | Ex. A15; DE 131-16 |
| 8 | Co-Counsel Retainer | $5,000.00 | Ex. A16; DE 131-17 |
| 9 | Database Hosting Expenses | $324.75 | Ex. A17; DE 131-18 |
| **Total** | | **$184,358.14** | |

Defendants object to only one item of costs: the expert expenses attributed to Dr. Andres Tijerina. Defendants argue that

> the Court should reduce Plaintiff's fees award by $61,371.67, the fees charged by Plaintiff's expert historian, Andres Tijerina. Dr. Tijerina testified about the history of discrimination against Hispanics in Texas. The Court appropriately noted that the discrimination about which Dr. Tijerina testified occurred "in the distant past." See, e.g., Dkt. 122, ¶¶ 179-180. The Court therefore specifically found that "[a]lthough

---

[23] <u>Id.</u> at pp. 19-20 ¶ 25, and 21 ¶ 27.

[24] <u>Id.</u> at 19-20 ¶ 25.

15

> Dr. Tijerina presented evidence of historic discrimination against Hispanics in Texas and Harris County, he presented little evidence of recent discrimination against Hispanics, and no evidence of discrimination against Hispanics by the SBISD." Id., ¶ 184. The Court should exclude the $61,371.67 allocated for Dr. Tijerina's expenses because his testimony failed to speak to the relevant liability factors, and provided no furtherance of Plaintiff's case.[25]

Defendants' objection shifts the burden to Plaintiff to show that otherwise authorized costs were necessary. See Baisden, 793 F. Supp. 2d at 973 (citing Fogleman, 920 F.2d at 286).

Plaintiff replies that

> Defendants are in error when they argue that [Dr. Tijerina's] testimony did not address "relevant liability factors," because it plainly did. . . .
>
> Dr. Tijerina testified about the history of past discrimination against Hispanics in Texas and Harris County (where Plaintiff resides and SBISD is located) and provided relevant background information for the Court's consideration concerning both the history of past discrimination affecting Texas Hispanics' abilities to participate in the democratic process in Houston and Harris County, and how the legacy and effects of that discrimination continue to hinder the ability of Hispanic voters to participate effectively in the political process — Senate Factors 1 and 5.[26]

Although the court was primarily concerned with narrowing Dr. Tijerina's testimony to the recent time in this area, i.e., Harris County in general and Spring Branch in particular, the Fifth

---

[25] Defendants' Objections, Docket Entry No. 147, pp. 3-4 ¶ 4.1.

[26] Plaintiff's Reply, Docket Entry No. 149, pp. 16-17 (citing Trial Transcript Volume 2, September 10, 2024, Docket Entry No. 113, p. 69:5-8 (referencing Senate Factor 1) and lines 12-16 (referencing Senate Factor 5).

16

Circuit has recognized that "even 'long-ago history' provides context to modern events." Veasey v. Abbott, 830 F.3d 216, 232 n. 14 (5th Cir. 2016). The court recognized Dr. Tijerina as an expert witness qualified to testify, and heard his testimony regarding Senate Factors 1 and 5, factors that the court was required to consider. Therefore, the court is not persuaded that Dr. Tijerina's testimony failed to speak to the relevant liability factors or failed to further Plaintiff's case. Since, moreover, Defendants have not objected to Dr. Tijerina's hourly rate, to the number of hours he has billed, or to his expenses as unreasonable or unnecessary, the court finds no basis on which to exclude the $61,371.67 sought for his expenses. Therefore, Plaintiff's request for costs totaling $184,358.14 will be granted.

### IV. Conclusions and Order

For the reasons stated in § III.A, above, the court concludes that Plaintiff is the prevailing party. For the reasons stated in § III.B, above, the court concludes that Defendants have failed to show that special circumstances would render an award of attorney's fees and costs to Plaintiff unjust and that Plaintiff is entitled to such an award. For the reasons stated in § III.C, above, the court concludes that Plaintiff is entitled to an award of attorney's fees in the amount of $1,252,944.80, and to an award of costs in the amount of $184,358.14, for a total amount of

$1,437,302.94. Therefore, Plaintiff's Motion for Attorneys Fees and Costs, Docket Entry No. 131, seeking $1,437,302.94 through trial, is **GRANTED**.

**SIGNED** at Houston, Texas, on this 27th day of October, 2025.

------------------------------
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE